(215) 241-8832

aepstein@lawsgr.com

June 4, 2002

Clerk
U.S. District Court of the
Eastern District of Pennsylvania
601 Market Street
Room 2609
Philadelphia, PA 19106

   *Re:* ***Collier v. SEI Investments, et al.***

Dear Sir/Madam:

   Enclosed is one original and one copy of the Complaint in the above-captioned matter.  Kindly time-stamp and return the copy in the self-addressed, stamped envelope which has been provided for your convenience.

      Very truly yours,

      ALAN B. EPSTEIN

ABE/tr

Enclosure

F:\85193\001\Plead\Complaint Filing.wpd

### UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA -- DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 126 Fairfax Court, Phoenixville, PA 19460

Address of Defendant: One Freedom Valley Drive, Oaks, PA 19456

Place of Accident, Incident or Transaction: One Freedom Valley Drive
Oaks, PA 19456
*(Use Reverse Side for Additional Space)*

| Does this case have multidistrict litigation possibilities? | Yes | No **X** |
|---|---|---|

*RELATED CASE IF ANY*          NONE

Case Number: _____        ~~Judge~~ _____        Date Terminated _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court:                Yes        No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?                Yes        No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                Yes        No X

CIVIL: (Place in *ONE CATEGORY ONLY*)

A. *Federal Question Cases:*

1.  Indemnity Contract, Marine Contract, and All Other Contracts
2.  FELA
3.  Jones Act-Personal Injury
4.  Antitrust
5.  Patent
6.  Labor-Management Relations
7. X  Civil Rights
8.  Habeas Corpus
9.  Securities Act(s) Cases
10.  Social Security Review Cases
11.  All other Federal Question Cases (please specify)

**Constitutionality of State Statutes**

B. *Diversity Jurisdiction Cases:*

1.  Insurance Contract and Other Contracts
2.  Airplane Personal Injury
3.  Assault, Defamation
4.  Marine Personal Injury
5.  Motor Vehicle Personal Injury
6.  Other Personal Injury (Please specify)
7.  Products Liability
8.  Products Liability - Asbestos
9.  All other Diversity Cases (Please specify)

### ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I,        Alan B. Epstein                                        , counsel of record do hereby certify:

X        Pursuant to Local Civil Rule 8, Section 4(a)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

X        Relief other than monetary damages is sought.

Date:        June 4, 2002

*Attorney at Law*
NOTE:  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

Date:        June 4, 2002

*Attorney at Law*

F:\85193\001\Plead\Complaint Filing.wpd_____

UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA -- DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 126 Fairfax Court, Phoenixville, PA 19460

Address of Defendant: One Freedom Valley Drive, Oaks, PA 19456

Place of Accident, Incident or Transaction: One Freedom Valley Drive
Oaks, PA 19456
*(Use Reverse Side for Additional Space)*

| | | |
|---|---|---|
| Does this case have multidistrict litigation possibilities? | Yes | No **X** |

*RELATED CASE IF ANY*        NONE

| | | |
|---|---|---|
| Case Number: | Judge | Date Terminated |

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court:  Yes    No X

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes    No X

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes    No X

CIVIL: (Place  in *ONE CATEGORY ONLY*)

A.  *Federal Question Cases:*
1.   Indemnity Contract, Marine Contract, and All Other Contracts
2.   FELA
3.   Jones Act-Personal Injury
4.   Antitrust
5.   Patent
6.   Labor-Management Relations
7.  X   Civil Rights
8.   Habeas Corpus
9.   Securities Act(s) Cases
10.   Social Security Review Cases
11.   All other Federal Question Cases
   (please specify)
**Constitutionality of State Statutes**

B.  *Diversity Jurisdiction Cases:*
1.   Insurance Contract and Other Contracts
2.   Airplane Personal Injury
3.   Assault, Defamation
4.   Marine Personal Injury
5.   Motor Vehicle Personal Injury
6.   Other Personal Injury (Please specify)
7.   Products Liability
8.   Products Liability - Asbestos
9.   All other Diversity Cases
   (Please specify)

ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I,        Alan B. Epstein                                                           , counsel of record do hereby certify:

   X        Pursuant to Local Civil Rule 8, Section 4(a)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

   X        Relief other than monetary damages is sought.

Date:        June 4, 2002

*Attorney at Law*
NOTE:  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

# CIVIL COVER SHEET

The JS44 civil cover sheet and the information contained herein neither replace neither replace nor supplement the filing and service of pleadings as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September, 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF FORM.)

## I. (a) PLAINTIFFS

S. Courtney Collier
126 Fairfax Court
Phoenixville, PA 19460

## DEFENDANTS

SEI Investments
and
Todd Cipperman
and
Edward Loughlin
and
Richard Lieb
and
Kevin Johnston
and
Mark Nagle
One Freedom Valley Drive
Oaks, PA 19456

**(b)** County of Resident of First Listed Plaintiff   Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Montgomery
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME AND TELEPHONE NUMBER)
**See attached list**

ATTORNEYS IF KNOWN:

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

1 U.S. Government
   Plaintiff

**X** 3 Federal Question
   (U.S. Government Not a Party)

2 U.S. Government
   Defendant

4 Diversity
   (Indicate Citizenship of
   Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One box for
(For Diversity Cases Only)                      Plaintiff and one Box for Defendant)

|  | DEF |  |  | DEF |
|---|---|---|---|---|
| Citizen of This State | X 1 | Incorporated or Principal Place of Business In This State | | X 4 |
| Citizen of Another State | 2 2 | Incorporated and Principal of Business in Another State | | 5 5 |
| Citizen or Subject of a Foreign Country | 3 3 | Foreign Nation | 6 6 | |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|

| PERSONAL INJURY | PERSONAL INJURY | | |
|---|---|---|---|
| 110 Insurance | 310 Airplane | 362 Personal Injury-- | 610 Agriculture |
| 120 Marine | 315 Airplane Product | Med. Malpractice | 620 Other Food & Drug |
| 130 Miller Act | Liability | 365 Personal Injury-- | 625 Drug Related Seizure |
| 140 Negotiable Instrument | 320 Assault, Libel & | Product Liability | of Property 21 USC |
| 150 Recovery of Overpayment | Slander | 368 Asbestos Personal | 630 Liquor Laws |
| & Enforcement of | 330 Federal Employers' | Injury Product | 640 R.R. & Truck |
| Judgment | Liability | Liability | 650 Airline Regs. |
| 152 Recovery of Defaulted | 340 Marine | **PERSONAL PROPERTY** | 660 Occupational |
| Student Loans | 345 Marine Product | 370 Other Fraud | Safety/Health |
| (Excl. Veterans) | Liability | 371 Truth in Lending | 690 Other |
| 153 Recovery of Overpayment | 350 Motor Vehicle | 380 Other Personal | |
| of Veteran's Benefits | 355 Motor Vehicle | Property Damage | |
| 160 Stockholders' Suits | Product Liability | 385 Property Damage | |
| 190 Other Contract | 360 Other Personal Injury | Product Liability | |
| 195 Contract Product Liability | | | |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate |
| 220 Foreclosure | X 442 Employment | Sentence |
| 230 Rent Lease & Ejectment | 443 Housing/ | Habeas Corpus: |
| 240 Torts to Land | Accommodations | 530 General |
| 245 Tort Product Liability | 444 Welfare | 535 Death Penalty |
| 290 All Other Real Property | 440 Other Civil Rights | 540 Mandamus & Other |
| | | 550 Civil Rights |
| | | 555 Prison Condition |

| BANKRUPTCY | |
|---|---|
| 422 Appeal 28 USC 158 | |
| 423 Withdrawal | |
| 28 USC 157 | |

| PROPERTY RIGHTS |
|---|
| 820 Copyrights |
| 830 Patent |
| 840 Trademark |

LABOR

710 Fair Labor Standards
Act

720 Labor/Mgmt. Relations

730 Labor/Mgmt. Reporting
& Disclosure Act

740 Railway Labor Act

790 Other Labor Litigation

791 Empl. Ret. Inc.
Security Act

| SOCIAL SECURITY |
|---|
| 861 HIA (1395ff) |
| 862 Black Lung (923) |
| 863 DIWC/DIWW (405(g)) |
| 864 SSID Title XVI |
| 865 RSI (405(g)) |

FEDERAL TAX SUITS

870 Taxes (U.S. Plaintiff)
or Defendant

871 IRS--Third Party
26 USC 7609

| | |
|---|---|
| 400 State Reapportionment | |
| 410 Antitrust | |
| 430 Banks and Banking | |
| 450 Commerce/ICC Rates/etc. | |
| 460 Deportation | |
| 470 Racketeer Influenced and | |
| Corrupt Organizations | |
| 810 Selective Services | |
| 850 Securities/Commodities/ | |
| Exchange | |
| 875 Customer Challenge | |
| 12 USC 3410 | |
| 891 Agricultural Acts | |
| 892 Economic Stabilization Act | |
| 893 Environmental Matters | |
| 894 Energy Allocation Act | |
| 895 Freedom of | |
| Information Act | |
| 900 Appeal of Fee | |
| Determination Under | |
| Equal Access to | |
| Justice | |
| X 950 Constitutionality of | |
| State Statutes | |
| 890 Other Statutory Actions | |

**V. ORIGIN** (Place an "X" in One Box Only)

| X 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 (specify) Transferred from another district | 6 Multidistrict Litigation | 7 Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Employment discrimination - 4 ESC § 2000e, 42 USC § 1981

**VII. REQUESTED IN
COMPLAINT:**

CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

Declaratory and injunctive relief

CHECK YES only if demanded in complaint:

**JURY DEMAND:** Yes X No

**VIII. RELATED CASE(S) IF ANY** (See instructions): NONE

JUDGE_____  DOCKET NUMBER_____

DATE                SIGNATURE OF ATTORNEY OF RECORD

June 4, 2002                                          ALAN B. EPSTEIN

FOR OFFICE USE ONLY

Receipt #_____ Amount _____ Applying IFP_____ Judge_____ Mag. Judge_____

F:\85193\001\Plead\Complaint Filing.wpd**Attorneys for Plaintiff,**

Alan B. Epstein
Brooke Madonna
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888 - Telephone
(215) 241-8844 - Facsimile

**Attorneys for Defendant,**

Michael Banks, Esquire
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103
(215) 963- 5387 - Telephone
(215) 963- 5299 - Facsimile

**SUMMONS IN A CIVIL ACTION**

| **UNITED STATES DISTRICT COURT** | Eastern District of Pennsylvania |
|---|---|

S. Courtney E. Collier      126 Fairfax

Court

Phoenixville, PA 19460

Docket No.

_____

To: (Name and Address of Defendant(s))

SEI INVESTMENTS COMPANY

    and

TODD CIPPERMAN

    and

EDWARD LOUGHLIN

RICHARD LIEB

    and

KEVIN JOHNSTON

    and

KEVIN ROBINS

    and

MARK NAGLE

One Freedom Valley Drive

Oaks, PA  19456

_____

## YOU ARE HEREBY SUMMONED and required to serve upon

Alan B. Epstein, Esquire

1635 Market Street, 7th Floor

Philadelphia, PA 19103

an answer to the complaint which is herewith served upon you within twenty (20) days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Clerk | Date |
|---|---|
| Michael E. Kunz | |
| _____ | |
| (By) Deputy Clerk | |

F:\85193\001\Plead\Complaint Filing.wpd

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

S. COURTNEY E. COLLIER : CIVIL ACTION
126 Fairfax Court :
Phoenixville, PA  19460 :
:
       v. :
:
SEI INVESTMENTS COMPANY :
   and :
TODD CIPPERMAN :
   and :
EDWARD LOUGHLIN :
   and :
RICHARD LIEB : NO:
   and :
KEVIN JOHNSTON :
   and :
KEVIN ROBINS :
   and :
MARK NAGLE :
:
   One Freedom Valley Drive :
   Oaks, PA  19456 :

## COMPLAINT
## Jury Trial Demanded

1.     This is an action brought by plaintiff S. Courtney E. Collier ("plaintiff" or "Collier") against SEI Investments Company ("SEI"), Todd Cipperman, Edward Loughlin, Richard Lieb, Kevin Johnston, and Kevin Robins, (collectively, "defendants") based upon discriminatory and retaliatory treatment she has suffered because of her race and her gender in the terms and conditions of her employment, including being treated differently from white and male employees of equal status, experience, and qualifications regarding, *inter alia*, salary, benefits, performance evaluations, promotions, and merit increases, and the termination of her employment on or about April 26, 2002 all in violation of various state and federal statutes including TitleVII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*, as amended by the Civil Rights Act of 1991, the Civil Rights Act of 1870, 42 U.S.C. § 1981, the Pennsylvania Human Relations Act, 43 Pa. Con. Stat. Ann. § 955, *et seq*, and the common law of Pennsylvania.

## JURISDICTION AND VENUE

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 2000e-5(f)(3), all of which provide for original jurisdiction of plaintiff's claims arising under the laws of the

3.      This Court has jurisdiction over plaintiff's claims under the statutes and common law of Pennsylvania pursuant to its supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4.      Pursuant to Local Rule of Civil Procedure 5.1.1 of the United States District Court for the Eastern District of Pennsylvania, which prohibits the averment of specific monetary damages, plaintiff avers only that the amount in controversy exceeds the jurisdictional amount of One Hundred Fifty Thousand Dollars ($150,000), exclusive of interest and costs.

5.      Plaintiff has exhausted all administrative remedies, having filed timely complaints of race and gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), from which she has received the mandatory Notice of Right to Sue, and the Pennsylvania Human Relations Commission ("PHRC"), pursuant to the Worksharing Agreement between that agency and the EEOC, as required by the individual statutes, and has taken all other action necessary to bring the present matter before this Court.

6.      SEI engages in substantial business in the nine county area comprising the Eastern District of Pennsylvania and is a company deemed to reside within the jurisdictional limits of the United States District Court for the Eastern District of Pennsylvania.

7.      Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §§ 1391(b) and 1391(c).

**PARTIES**

8.      Plaintiff S. Courtney E. Collier is a resident of the Commonwealth of Pennsylvania, with her mailing address at 126 Fairfax Court, Phoenixville, Pennsylvania 19460.  She is an African-American female citizen of the United States whose racial classification for all applicable statutes is black or African American.

9.      At all applicable times hereto, plaintiff was an employee whose rights are protected by the laws and statutes cited herein.

10.     Defendant SEI is a corporation incorporated in Pennsylvania in 1968 and maintains its principal place of business at One Freedom Valley Drive, Oaks, Pennsylvania and, at all times applicable hereto was an employer as defined in all controlling state and federal statutes.

11. Defendant SEI is a leading global provider of technology, financial fund and asset management services to institutions, professional investment advisors, and affluent families.

12. Defendant SEI currently employs approximately 1,620 people. In 2001, SEI's gross revenue was in excess of $658 million and its income before interest and taxes was in excess of $183 million. As of December 31, 2001, SEI processed over $1.5 trillion of investments transactions daily, administered more than $257 billion in mutual fund and pooled assets, managed more than $77 billion in assets and operated 25 offices in 11 countries.

13. At all times applicable hereto, Defendant Todd Cipperman ("Cipperman") was SEI General Counsel and SEI Senior Vice President and maintained his business address located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

14. At all times applicable hereto, Defendant Edward Loughlin ("Loughlin") was an Executive Vice President of SEI and maintained his business address located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

15. At all times applicable hereto, Defendant Richard Lieb ("Lieb") was an Executive Vice President of SEI and maintained his business address located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

16. At all times applicable hereto, Defendant Kevin Johnston ("Johnson") was the person at SEI charged with the responsibility for personnel and benefits matters and maintained his business address located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

17. At all times applicable hereto, Defendant Kevin Robins ("Robins") was a Senior Vice President of SEI's Family Wealth Unit and maintained his business address located at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

**FACTUAL ALLEGATIONS**

18. At all times applicable hereto, defendant Mark Nagle ("Nagle") was an Executive Vice President and maintained his business address at One Freedom Valley Drive, Oaks, Pennsylvania 19456.

19. Plaintiff S. Courtney E. Collier received her J.D. degree from Catholic University of America, Columbus School of Law in Washington, DC in 1989.

20.      Prior to her employment with SEI, plaintiff served as Legal Intern to the Criminal Justice Council (1989-February 1990);  Law Clerk to Chief Judge Robert B. Thompson of the State of Delaware Family Court (February 1990-May 1990); a Judicial officer (Master) of the State of Delaware presiding over criminal and civil hearings (statewide) and issuing orders in Domestic Relations and Juvenile Delinquency cases in New Castle County (1990-1994);  General Counsel/Director, Public Affairs of The Access Group a not-for-profit enterprise providing graduate and professional student loan financing (and the nation's leading provider of loans to law students) (1994-1997); and Acting Associate General Counsel, Contract Administrator of the Amerisource Corp. the third largest pharmaceutical distributor in the United States engaging in  contract negotiation, drafting and review, Intellectual Property and litigation management and preparation (1997-1998).

21.      Collier joined SEI as a contract attorney on February 1, 1998 and was elevated to the status of a direct employee on June 1, 1998.  She began her employment with SEI as an SEC/NASD marketing compliance attorney and quickly was given additional responsibilities involving employment and immigration law.

22.      Throughout the early segments of her employment, Collier was provided increased responsibilities, substantial bonuses, and excellent evaluations and praise for her work as an attorney in the SEI Legal Department chaired by then General Counsel, Defendant, Robins.

23.      While employed in the SEI Legal Department, Collier, *inter alia*, worked with the Investment Advisor Group to create, review and enforce due diligence processes and procedures, approve new investment advisors and review and approve related contracts; developed a process for the facilitation of immigration  and emigration matters that ensured a high level of accuracy and efficiency; obtained the knowledge needed to service foreign offices regarding all immigration/emigration and employment issues; aided in drafting Company policies and procedures and developed a website where domestic and foreign managers and employees could have full access to those policies and procedures (the website also includes several sections for the exclusive purpose of advising managers of key employment issues); was instrumental in the drafting of all employment contracts for SEI's foreign offices; coached managers on how to effectively handle personnel issues in order to strengthen their teams and to avoid litigation; developed a

make more informed investment decisions; developed policies and procedures under anti-terrorism laws.

24.      Collier's accomplishments led to her appointment as Vice President/Assistant Secretary - Legal Department and generally gained her the respect of her peers throughout those sections of the company where she provided services.

25.      In March, 2000, Defendant Robins assumed a promotional position in the Family Wealth Unit and Cipperman became the SEI General Counsel.  Despite her excellent credentials, Collier was not considered or selected for that promotional position.   More specifically, prior to Defendant Cipperman's promotion that position was never "posted" as available, as it should have been pursuant to SEI's own policies and its Affirmative Action Plan.

26.      From the inception of his installment as legal counsel, Defendant Cipperman began a pattern and practice of discrimination against Collier based on her race  (black) and gender (female) in the terms and conditions of her employment, including job assignments, approval of training, approval of continuing education courses and mistreatment of her in connection with her duties in front of her peers and co-workers.

27.      Despite Defendant Cipperman's constant unlawful treatment which created a clearly hostile environment in which she was forced to work, Collier maintained the highest degree of excellence in her work, providing her internal clients with excellent legal advice and service.

28.      Throughout the inceptional period of discriminatory misconduct by Defendant Cipperman, Collier attempted to discuss the discriminatory actions based on race and gender to Defendant Robins who repeatedly and consistently rejected her requests for intercession and relief.

29.      In or about April, 2000, Collier made her first complaint to Defendant Johnston, the designated personnel administrator of SEI, regarding the unfair and harassing treatment she was receiving from Defendant Cipperman.  That complaint was summarily dismissed without any investigation.

30.      In or about June, 2000, Collier brought her second complaint of unfair treatment and hostile work environment to the attention of Defendant Johnston stating that she believed "the treatment was discriminatory, based on race and gender."

31.    Defendant John Corr's attempts at unmediated resolution of Collier's complaints of race and gender-based discrimination were not calculated to cure the underlying systemic problem of race and gender based discrimination at SEI and were totally unsuccessful in causing Defendant Cipperman to cease his unlawful behavior.  Instead, Collier became the target of further harassment and retaliation based on her charges of discrimination, including, *inter alia*, the suggestion by Defendants Cipperman and Robins that she resign her position and leave the Company.

32.    Based upon Defendant Robins' insistence that she inform him of her "resignation" after he was informed of Collier's complaint, Collier reported her concerns to Defendant Lieb, (SEI Executive Vice President and member of the Earnings Per Share committee which makes all of the decisions which affect the Company as a whole)  requesting: a) relief from the discrimination and retaliation she was experiencing; b) promotion to the promotional position for which she had applied to permit her to leave the direct supervision of Defendant Cipperman; and c) a cessation of the entreaties of Defendants Cipperman and Robbins that she voluntarily terminate her employment.

33.    On July 18, 2000, just two days after her report to Defendant Lieb, Collier was advised of her reassignment (effective 7/24/00) from the Legal Department as a Vice President/Assistant Secretary - Legal Department to a position managing vendor programs for the Mutual Fund Services division of IS&S, a position newly created to permit her immediate demotion which: 1) was to an entry level position, reporting to a manager with substantially less experience and credentials than Collier's; 2) required a BS/BA in Finance, Marketing, Business Administration or related field with a minimum of seven (7) years  business experience and a Series 6 or a Series 7 insurance or brokerage license - credentials Collier did not possess; and 3) represented a clear demotion including reassignment out of corporate headquarters to a smaller administrative building miles away from the company's principal place of business, isolating her from her manager and colleagues in a cubicle in a remote area of this building with no windows in the immediate location of her cubicle.

34.    The actions of the Defendants in removing Collier from her position as a Vice President serving in the office of General Counsel and placing her in a non-lawyer demotional position has severely damaged her ability to secure employment as an attorney in a corporate law department outside of SEI.

35.     Collier was the further victim of unlawful discrimination and retaliation thereafter when she was denied the position of "Director of Workforce Development" for which she was  well-qualified and when the position was awarded to a white female who was an accountant/business manager with no educational background or work history to support such an appointment.

36.     Following the events as set forth in paragraphs 33 and 34 above, Collier again complained of unlawful retaliation to Defendant, Lieb who refused to take any corrective action regarding the underlying discrimination or the subsequent retaliation.

37.     Collier's demands for rectification of these matters were also rejected by Loughlin who without any effective investigation of the issues raised by Collier declared that "the company considers this issue to be closed."

38.     Collier was also denied the position of the Head of Operations-Mutual Funds Services for which she applied and was exceptionally well qualified.  The position was awarded to James Foggo (a white male), who was actually assured promotion to that position at least six weeks prior to the time the position was formally posted.

39.     The actions of SEI herein above are part of a pattern and practice of discrimination based on race, gender and retaliation for pursuing internal complaints of discrimination at SEI as evidenced by, *inter alia*: similar experiences of other women and black employees; the underemployment of women and minorities; and the failure of SEI to compensate women and minorities at the same level of their male and white counterparts for equivalent work.

40.     At all times applicable to her employment, Collier was not paid equally to her male and white counterparts and the failure to equally compensate women and minorities was systemic throughout the company.

41.     The systemic nature of the discrimination against women and minorities at SEI is further evidenced by:  (1)  a workplace analysis undertaken in 1998, demonstrating under-utilization of women and minorities in the SEI workplace; and (2) a comparative compensation analysis showing the lack of equal compensation to women and minorities.

42.     After her filing of formal charges of discrimination and retaliation with the with this EEOC and

PHRC, Collier initiated and attended a mediation in order to see if complaints before a disinterested third party could aid in the resolution of her claims.

43.    Following that unsuccessful attempt at resolution, the defendants continued their discriminatory and retaliatory actions towards plaintiff.

44.    In April, 2002 SEI announced that Market conditions required layoffs of a limited number of persons employed by SEI.

45.    As a direct result of the discriminatory and retaliatory animus of defendants, on April 25, 2002 and at the direction of defendant Nagle. plaintiff was notified that her employment with SEI was terminated on April 26, 2002.

46.    Individual Defendants Cipperman, Lieb, Johnston, Loughlin, and Robins, acting in their corporate and individual capacities aided and abetted the unfair, improper and unlawful discrimination and retaliation of SEI by their actions as set forth above.

47.    As a direct result of deliberate, unlawful and malicious actions of defendants, Collier has suffered in the past, and will suffer in the future, losses of promotions, raises, benefits, earnings, and earnings potential.

48.    As a direct result of the deliberate, unlawful and malicious actions of defendants, Collier has suffered harm to her reputation in the community of her peers.

49.    As a direct result of the deliberate, unlawful and malicious actions of defendants, Collier has suffered emotional distress, humiliation, the loss of self-esteem, physical illness, a loss of life's pleasures, and painful diminution of her ability to provide herself with the earned rewards of excellence in her chosen profession.

50.    The actions of defendants were affected with malice and in reckless disregard of her rights under the applicable statutes.

### COUNT I

**Defendant, SEI Violated the Civil Rights Act of 1964,
42 U.S.C. §§ 2000e, *et. seq.*, as Amended by the Civil
Rights Act of 1991  Race Discrimination and Retaliation**

51.    Plaintiff repeats and realleges paragraphs 1 through 50 above as though fully set forth herein.

52.      Defendants violated the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.*, in that they discriminated against plaintiff on account of her race (black) and retaliated against her for raising the issue of unlawful race discrimination as evidenced by, *inter alia*:

(a)      its failure to promote plaintiff despite her exemplary qualifications and years of excellent work performance;

(b)      its failure to promote other black employees in the same manner and frequency as white employees with similar job performance, education, experience, and background;

(c)      its failure to permit plaintiff and other black employees the opportunity to apply and be considered for promotions within SEI;

(d)      its failure to pay plaintiff and other black employees the same wage/salary as the white employees of similar education, experience, skill, and background;

(e)      its failure to give plaintiff and other black employees merit raises/salary increases and bonuses in the same manner and frequency as white employees with similar job performance, education, experience, and background;

(f)      its failure to provide reasonable and necessary work-related training;

(g)      its failure to adequately investigate, respond to, and remedy internal complaints of racial discrimination made by plaintiff and other black employees;  and

(h)      the involuntary transfer of plaintiff to a lower-level position which required plaintiff to be relocated out of corporate headquarters to a remote area of a smaller administrative building where she would be isolated from her manager and colleagues.

## COUNT II

### Defendants Violated the Provisions of 42 U.S.C. §1981
### Race Discrimination and Retaliation

53.      Plaintiff repeats and realleges paragraphs 1 through 52 above as though fully set forth herein.

54.      Defendants violated the provisions of 42 U.S.C. § 1981 in that they discriminated against plaintiff on account of her race (black) and interfered with plaintiff's right to practice in her chosen profession, based on her race and unlawful retaliation as evidenced by, *inter alia*:

(a)      defendants' failure to promote plaintiff despite her exemplary qualifications and

     (b)    defendants' failure to promote other black employees in the same manner and frequency as white employees with similar job performance, education, experience, and background;

     (c)    defendants' failure to permit plaintiff and other black employees the opportunity to apply and be considered for promotions within SEI;

     (d)    defendants' failure to pay plaintiff and other black employees the same wage/salary as the white employees of similar education, experience, skill, and background;

     (e)    defendants' failure to give plaintiff and other black employees merit raises/salary increases and bonuses in the same manner and frequency as white employees with similar job performance, education, experience, and background;

     (f)    defendants' failure to provide reasonable and necessary work-related training;

     (g)    defendants' failure to adequately investigate, respond to, and remedy internal complaints of racial discrimination made by plaintiff and other black employees;

     (h)    the involuntary transfer of plaintiff to a lower-level position which required plaintiff to be relocated out of corporate headquarters to a remote area of a smaller administrative building where she would be isolated from her manager and colleagues; and

     (i)    defendants' selection of plaintiff for termination on or about April 26, 2002.

### COUNT III

### Defendants Violated the Pennsylvania Human Relations
### Act, 43 P.S. §§ 955, *et. seq.*,  Race Discrimination and Retaliation

55.    Plaintiff repeats and realleges paragraphs 1 through 54 above as though fully set forth herein.

56.    Defendants violated the provisions of the Pennsylvania Human Relations Act, 43 P.S. §§ 955, *et. seq.*, in that they discriminated against plaintiff on account of her race (black) and retaliated against her for raising the issue of unlawful race discrimination as evidenced by, *inter alia*:

     (a)    defendants' failure to promote plaintiff despite her exemplary qualifications and years of excellent work performance;

     (b)    defendants' failure to promote other black employees in the same manner and frequency as white employees with similar job performance, education, experience, and background;

defendants' failure to permit plaintiff and other black employees the opportunity to apply and be considered for promotions within SEI;

(d)     defendants' failure to pay plaintiff and other black employees the same wage/salary as the white employees of similar education, experience, skill, and background;

(e)     defendants' failure to give plaintiff and other black employees merit raises/salary increases and bonuses in the same manner and frequency as white employees with similar job performance, education, experience, and background;

(f)     defendants' failure to provide reasonable and necessary work-related training;

(g)     defendants' failure to adequately investigate, respond to, and remedy internal complaints of racial discrimination made by plaintiff and other black employees;

(h)     the involuntary transfer of plaintiff to a lower-level position which required plaintiff to be relocated out of corporate headquarters to a remote area of a smaller administrative building where she would be isolated from her manager and colleagues; and

(i)     defendants' selection of plaintiff for termination on or about April 26, 2002.

### COUNT IV

**Defendant Violated the Civil Rights Act of 1964**
**42 U.S.C. §2000e, *et. seq.*  Sex Discrimination and Retaliation**

57.     Plaintiff repeats and realleges paragraphs 1 through 56 above as though fully set forth herein.

58.     Defendant SEI violated the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et. seq.*, in that they discriminated against plaintiff because of her gender and retaliated against her (in violation of 42 U.S.C. §2000e-3(a)) for having opposed defendants' practice of gender discrimination, as evidenced by, *inter alia*:

(a)     its failure to promote plaintiff despite her exemplary qualifications and years of excellent work performance;

(b)     its failure to promote other female employees in the same manner and frequency as male employees with similar job performance, education, experience, and background;

(c)     its failure to permit plaintiff and other female employees the opportunity to apply and be considered for promotions within SEI;

the male employees of similar education, experience, skill, and background;

       (e)    its failure to give plaintiff and other female employees merit raises/salary increases and bonuses in the same manner and frequency as male employees with similar job performance, education, experience, and background;

       (f)    its failure to provide reasonable and necessary work-related training;

       (g)    its failure to adequately investigate, respond to, and remedy internal complaints of gender discrimination made by plaintiff and other female employees;

       (h)    the involuntary transfer of plaintiff to a lower-level position which required plaintiff to be relocated out of corporate headquarters to a remote area of a smaller administrative building where she would be isolated from her manager and colleagues; and

       (i)    its selection of plaintiff for termination on or about April 26, 2002.

## COUNT V

### Defendants Violated the Provisions of
### the Pennsylvania Human Relations Act
### 43 P.S. §951, *et. seq.*  Sex Discrimination and Retaliation

59.    Plaintiff repeats and realleges paragraphs 1 through 58 above as though fully set forth herein.

60.    Defendants violated the Provisions of the Pennsylvania Human Relations Act [43 P.S. §951, *et. seq.*, in that they discriminated against plaintiff because of her gender, and retaliated against her (in violation of 43 P.S. §955(d)) for having opposed defendants' practice of gender discrimination, as evidenced by, *inter alia*:

       (a)    defendants' failure to promote plaintiff despite her exemplary qualifications and years of excellent work performance;

       (b)    defendants' failure to promote other female employees in the same manner and frequency as male employees with similar job performance, education, experience, and background;

       (c)    defendants' failure to permit plaintiff and other female employees the opportunity to apply and be considered for promotions within SEI;

       (d)    defendants' failure to pay plaintiff and other female employees the same

(e)     defendants' failure to give plaintiff and other female employees merit raises/salary increases and bonuses in the same manner and frequency as male employees with similar job performance, education, experience, and background;

(f)     its failure to provide reasonable and necessary work-related training;

(g)     defendants' failure to adequately investigate, respond to, and remedy internal complaints of gender discrimination made by plaintiff and other female employees;

(h)     the involuntary transfer of plaintiff to a lower-level position which required plaintiff to be relocated out of corporate headquarters to a remote area of a smaller administrative building where she would be isolated from her manager and colleagues; and

(i)     its selection of plaintiff for termination on or about April 26, 2002.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(a)     enter a declaratory judgment that defendants' acts complained of herein violated and continue to violate the rights of plaintiff as secured to her by federal and state legislative enactments;

(b)     award to plaintiff compensatory damages including past and future loss of earnings and benefits and loss of professional growth opportunities in a proper and adequate monetary amount;

(c)     reinstate plaintiff to her former position as Vice-President, Legal or an appropriate promotional management position for which she is fully qualified and which will enhance her future career at SEI or elsewhere.

(d)     award to plaintiff damages for emotional distress, humiliation and loss of self-esteem, the loss of life's pleasures, and loss of her ability to provide herself and her family with the earned rewards of excellence in her chosen profession;

(e)     award to plaintiff punitive and exemplary damages against defendants in a proper and adequate monetary amount;

(f)     grant to plaintiff pre-judgment interest in an appropriate amount;

(g)     grant to plaintiff costs, disbursements and reasonable attorney's fees; and

(h)     grant to plaintiff such other additional relief as this Court deems just and proper under the circumstances of this case.

_____
Alan B. Epstein, Esquire
Brooke C. Madonna, Esquire

SPECTOR GADON & ROSEN, PC
Seven Penn Center
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
Attorneys for Plaintiff

Dated:  May 22, 2002

F:\85193\001\Plead\Complaint Filing.wpd