## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

S. COURTNEY E. COLLIER,

                        **Plaintiff,**

        v.

SEI INVESTMENTS COMPANY, TODD
CIPPERMAN, EDWARD LOUGHLIN,
RICHARD LIEB, KEVIN JOHNSTON,
KEVIN ROBINS and MARK NAGLE,

                        **Defendants.**

Civil Action No. 02-3574

## <u>ORDER</u>

**AND NOW,** this _____ day of _____, 2003, upon consideration

of Defendants' Motion for Summary Judgment, their supporting Memorandum of Law,

and Plaintiff's response thereto, it is hereby **ORDERED** and **DECREED** that said

Motion is **GRANTED.** Accordingly, Plaintiff's Complaint is hereby dismissed with

prejudice.


AND IT IS SO ORDERED.


                                      _____

                                      SAVAGE, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

S. COURTNEY E. COLLIER,

                 **Plaintiff,**

       **v.**                              **Civil Action No. 02-3574**

**SEI INVESTMENTS COMPANY, TODD
CIPPERMAN, EDWARD LOUGHLIN,
RICHARD LIEB, KEVIN JOHNSTON,
KEVIN ROBINS and MARK NAGLE,**

                 **Defendants.**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants SEI Investments Company ("SEI"), Todd Cipperman, Edward

Loughlin, Richard Lieb, Kevin Johnston, Kevin Robins and Mark Nagle (collectively

"Defendants"), by their attorneys, hereby move the Court for an Order pursuant to Rule

56 of the Federal Rules of Civil Procedure granting Summary Judgment in their favor on

all counts of Plaintiff's Complaint. The grounds for this motion are as follows:

        1.   There are no genuine issues of fact which are material to the issues

raised by this Motion.

        2.   In her Complaint, Plaintiff contends that Defendants discriminatorily

denied her fair compensation and promotional opportunities and subjected her to a hostile

work environment. Further, Plaintiff claims that after she complained about this

discrimination, Defendants retaliated against her by reassigning her to a position as a

vendor manager and later terminating her employment. However, Plaintiff has failed to

establish, and cannot establish, that Defendants discriminated against her because of her

race or sex or retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") or the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. Tit. 43, § 951 et seq.

      3.  Plaintiff's claims for hostile work environment are precluded because the conduct she complained of can in no way be characterized as "severe or pervasive" conduct and she was subject to *because of* her race or gender.  To the contrary, Plaintiff's complaints regarding her working conditions in the legal department amount to little more than dispute over performance.

      4.  Plaintiff's claim regarding unequal pay are precluded by her own admission that her compensation was appropriate for her experience and skills, and by her inability to identify any similarly situated individuals who were provided with more compensation.

      5.  Similarly, Plaintiff cannot sustain her promotions claims because of own admissions regarding her qualifications and the qualifications of the individuals whom SEI chose to fill those positions.

      6.  Plaintiff cannot maintain a claim for retaliation relating to her reassignment to a position as a vendor manager because, as she has admitted, the position was not a demotion.  Accordingly Plaintiff cannot make out a *prima facie* case of retaliation because she did not suffer an adverse employment action in connection with her reasssignment to a position that provided her with equal pay, benefits and status as her previous position.  Moreover, even if Plaintiff could establish that she suffered an adverse employment action, she cannot establish that Defendants' legitimate non discriminatory reasons for the transfer – her own repeated requests to be transferred from

the legal department are a pretext for intentional discrimination.

7.    Finally, Plaintiff cannot sustain her claims for retaliatory discharge because Plaintiff has failed to demonstrate that Defendants' legitimate, non-discriminatory business reasons for the decision to terminate Plaintiff's employment are a pretext for intentional discrimination.  To the contrary, as Plaintiff admits, she was terminated as part of a reduction in force, which resulted in the elimination of her department.

8.    In support of their Motion, Defendants submit herewith their Statement of Undisputed Facts, with attached exhibits, Memorandum of Law, and proposed form of Order.

**WHEREFORE**, Defendants SEI Investments Company, Todd Cipperman, Edward Loughlin, Richard Lieb, Kevin Johnston, Kevin Robins and Mark Nagle request that the Court grant their Motion for Summary Judgment in its entirety and dismiss the Complaint with prejudice.

Respectfully submitted,

MICHAEL L. BANKS
JENNIFER CALABRESE BELL
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
215.963.5387/5186

Dated:  May 19, 2003

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

S. COURTNEY E. COLLIER,

                                 Plaintiff,

            v.

SEI INVESTMENTS COMPANY, TODD
CIPPERMAN, EDWARD LOUGHLIN,
RICHARD LIEB, KEVIN JOHNSTON,
KEVIN ROBINS and MARK NAGLE,

                              Defendants.

Civil Action No.  02-3574

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## <u>OF THEIR MOTION FOR SUMMARY JUDGMENT</u>

Michael L. Banks (PA ID No. 35052)
Jennifer C. Bell (PA ID No. 81045)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215.963.5387/5186

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ............................ 2

III. ARGUMENT ..................................................................................... 2

    A.   The Standard For Summary Judgment ....................................... 2

    B.   Plaintiff Cannot Sustain A Hostile Work Environment Claim .............. 4

    C.   Defendants Are Entitled To Summary Judgment On Plaintiff's Pay,
Promotion, Transfer and Discharge Claims ....................................... 8

        1.   The Applicable Legal Standard For Establishing A Claim Of
Intentional Sex Or Race Discrimination Or Retaliation Under Title
VII, Section 1981 And The PHRA. ....................................... 8

        2.   Plaintiff Cannot Maintain A Claim For Unequal Pay ............. 10

        3.   Plaintiff Cannot Maintain A Failure To Promote Claim ......... 12

            a.   The Workforce Development Director Position ............ 13

            b.   Head Of Operations, Mutual Fund Services Position. ............ 14

        4.   Plaintiff Cannot Maintain Her Retaliation Claims ................. 15

            a.   Plaintiff Cannot Establish A *Prima Facie* Case Of
Retaliation Because Her Reassignment To A Vendor
Manager Position Was Not A Demotion. ...................... 15

            b.   Plaintiff Cannot Establish A *Prima Facie* Case Of
Retaliatory Discharge Because There Was No Causal
Connection Between The Alleged Protected Activity And
The Alleged Retaliation. ........................................... 18

            c.   Plaintiff Cannot Establish That Defendants' Legitimate
Nondiscriminatory Reason For Her Termination Was A
Pretext For Discrimination. ....................................... 19

IV.  CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

**Pages**

Aman v. Cort Furniture Rental Corp.,
    85 F.3d 1074 (3d Cir. 1996) .................................................................10

Amro v. The Boeing Co.,
    232 F.3d 790 (10th Cir. 2000) ..............................................................10

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ...............................................................................3

Billet v. CIGNA Corp.,
    940 F.2d 812 (3d Cir. 1991) ..................................................................8

Bonora v. UGI Utils., Inc.,
    No. CIV. A. 99-5539, 2000 WL 1539077 (E.D. Pa. Oct. 18, 2000) ............7

Boykins v. Lucent Tech., Inc.,
    78 F.Supp.2d 402 (E.D. Pa. 2000) ........................................................3

Bunis v. Runyon,
    No. 94 Civ. 2063, 1997 WL 639241 (S.D.N.Y. Oct. 16, 1997) .................17

Buwana v. Regents of University of Colo.,
    No. 98-1325, 1999 WL 436267 (10th Cir. June 29, 1999) ......................5

Cardenas v. Massey,
    269 F.3d 251 (3d Cir. 2001) ..................................................................6

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ...........................................................................2, 3

Ezold v. Wolf, Block, Schorr and Solis-Cohen,
    983 F.2d 509 (3d Cir. 1992), cert. denied, 510 U.S. 826 (1993) ..........12, 20

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998) ...............................................................................4

Farrell v. Planters Lifesavers Co.,
    206 F.3d 271 (3d Cir. 2000) ..............................................................15, 18

Fuentes v. Perskie,
    32 F.3d 759 (3d Cir. 1994) ..................................................................20

**Pages**

Garber v. New York City Police Department,
    No. 95 Civ 2516, 1997 WL 525396 (S.D.N.Y. Aug. 22, 1997) ................................17

Gharzouzi v. Northwestern Human Services,
    225 F.Supp.2d 514 (E.D. Pa. 2002) ...............................................................................6

Harden v. Southwark,
    No. 99-4666, 2002 WL 31194220, 7 (E.D. Pa. Oct. 2, 2002) ....................................12

Hazen Paper Co. v. Biggins,
    507 U.S. 604 (1993) ..............................................................................................8, 19

Jalil v. Avdel Corp.,
    873 F.2d 701 (3d Cir. 1989), cert. denied, 493 U.S. 1023 (1990) ..............................9

Johnson v. Radio Shack,
    No. 98-1588, 1999 WL 125723 (4th Cir. Mar. 10, 1999) ...........................................7

Kachmar v. SunGard Data System, Inc.,
    109 F.3d 173 (3d Cir. 1997) ................................................................................15, 19

Kantner v. U.S. Postal Service,
    No. 88-2526, 1988 WL 100804 (E.D.Pa. Sept. 26, 1988) .........................................16

Keller v. Orix Credit Alliance, Inc.,
    130 F.3d 1101 (3d Cir. 1998) ...................................................................................20

Kelly v. Drexel University,
    94 F.3d 102 (3d Cir. 1996) .......................................................................................20

Lawrence v. National Westminster Bank N.J.,
    98 F.3d 61 (3d Cir. 1996) ...........................................................................................3

Lemke v. International Total Services, Inc.,
    56 F.Supp.2d 472, (D. N.J. 1999), aff'd, 225 F.3d 649 (3d Cir. 2000),
    cert. denied, 531 U.S. 1152 (2001) ...........................................................................12

Little v. Republic Refining Co.,
    924 F.2d 93 (5th Cir. 1991) ......................................................................................13

Martin v. General Electric Co.,
    891 F. Supp. 1052 (E.D. Pa. 1995) ...........................................................................21

**Pages**

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ...................................................................9, 12, 15, 21

Miller v. CIGNA Corp.,
    47 F.3d 586 (3d Cir. 1995) .................................................................8, 19

Miller v. Delaware, Dept of Probation and Parole,
    158 F. Supp.2d 406 (D. Del. 2001) ........................................................10

Montgomery v. City of Birmingham,
    No. 98-AR-2100-5, 2000 WL 1608620 (N.D. Ala. Jan. 20, 2000) ..............5

Murray-Dahnir v. Loews Corp.,
    No. 99 Civ 9057, 1999 WL 639699 (S.D.N.Y. Aug. 23, 1999) ..................5

Narvarte v. Chase Manhattan Bank,
    No. 96 Civ 8133, 2000 WL 547031 (S.D.N.Y. May 4, 2000) .....................6

Ogden v. Keystone Residence,
    226 F.Supp.2d 588, 603 (M.D. Pa. 2002) ................................................11

Oncale v. Sundowner Offshore Services, Inc.,
    523 U.S. 75 (1998) ...............................................................................4

Pamintuan v. Nanticoke Memorial Hospital,
    192 F.3d 378 (3d Cir. 1999) ...................................................................4

Payne v. Milwaukee County,
    146 F.3d 430 (7th Cir. 1998) ..................................................................7

Reeves v. Sanderson Plumbing Products, Inc.,
    530 U.S. 133 (2000) ............................................................................19

Riding v. Kauffmann's Department Stores,
    220 F.Supp.2d 442 (W.D. Pa. 2002) ......................................................16

Robinson v. City of Pittsburgh,
    120 F.3d 1286 (3d Cir. 1997) .........................................................16, 19

Schoch v. First Fidelity Bancorporation,
    912 F.2d 654 (3d Cir. 1990) ...................................................................3

**Pages**

Sherrod v. Philadelphia Gas Works,
   209 F.Supp.2d 443 (E.D. Pa. 2002) ........................................................17, 18

Singh v. Wal-Mart Stores, Inc.,
   No. Civ. A. 98-1613, 1999 WL 374184 (E.D. Pa. June 10, 1999),
   aff'd, 225 F.3d 650 (3d Cir. 2000) .............................................................10

Storti v. First Fidelity Bank,
   No. Civ. A. 97-5283, 1998 WL 404814 (E.D. Pa. July 16, 1998)...............21

St. Mary's Honor Center v. Hicks,
   509 U.S. 502 (1993) .....................................................................................9

Texas Department of Community Affairs v. Burdine,
   450 U.S. 248 (1981) .....................................................................................8

Tumolo v. Triangle Pacific Corp.,
   46 F.Supp.2d 410 (E.D. Pa. 1999) ...............................................................4

Vogel v. Honeywell,
   No. 88-4612, 1989 WL 48074 (E.D.Pa. May 5, 1989) ...............................16

Waldron v. S.L. Industrial, Inc.,
   56 F.3d 491 (3d Cir. 1995) .........................................................................13

Weston v. Commonwealth of Pennsylvania,
   251 F.3d 420 (3d Cir. 2001) ............................................................7, 15, 17

Williams v. Bristol-Myers Squibb Co.,
   85 F.3d 270 (7th Cir. 1996) ........................................................................16

Williams v. Cerberonics, Inc.,
   871 F.2d 452 (4th Cir. 1989) ......................................................................13

Williams v. Pennsylvania State Police,
   108 F.Supp.2d 460 (E.D. Pa. 2000) .............................................................6

Woods v. Bentsen,
   889 F. Supp. 179 (E.D. Pa. 1995) ...............................................................19

## STATUTES

**Pages**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq</u>..................................4

42 U.S.C. § 1981..................................................................................................................4

Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, § 951 <u>et seq</u>. ..........................4

## RULES

Fed.R.Civ.P. 56(c) ...............................................................................................................2

## I.    **INTRODUCTION**

Plaintiff alleges that she was subjected to a hostile work environment and denied promotions because of her race (African-American) and gender.  Plaintiff also claims that she was demoted and later terminated from her employment at SEI in retaliation for complaining about alleged discrimination.

The record that has been established in discovery, however, belies Plaintiff's claims. Plaintiff's conclusory descriptions of events during her tenure in SEI's legal department do not even approximate a legitimate claim for a hostile work environment.  Indeed, Plaintiff has offered no *evidence* that the conduct about which she complains targeted her race or gender.  At most,  Plaintiff has voiced displeasure with justifiable criticisms that she received as a result of her acknowledged failures to perform her job as an in-house attorney in a satisfactory manner. Moreover, Plaintiff's accusations that she was discriminatorily denied various promotions are untenable, because the individuals chosen for the positions were better qualified than Plaintiff to assume those roles.  Plaintiff's claims of retaliation are also fatally flawed.  Although Plaintiff contends that her transfer from the legal department to a position managing vendor relationships was in retaliation for her internal complaint of discrimination, she cannot deny that the move was a response to her own request for a transfer from the legal department.  Moreover, as Plaintiff has admitted, the position to which she was transferred was not a demotion, and in fact provided Plaintiff with the same salary and benefits as she received in her legal position.  Finally, Plaintiff's claim of discriminatory/retaliatory discharge on the basis of her race and gender is similarly devoid of factual support.  Plaintiff cannot establish any causal link between her internal complaint and her termination from SEI almost two years later.  In fact, the termination was the result of a reduction in force that eliminated her position and others.

1

Simply put, Plaintiff has not adduced sufficient evidence to support any of her claims. On a more fundamental level, she admits facts which plainly defeat her claims. By failing to respond to Defendants' First Request for Admissions, despite having requested an enlargement of time to do so, Plaintiff has admitted conclusively the core factual assertions which SEI has advanced from the outset of this case. These admissions, which are described and cited more fully in Defendants' Statement of Undisputed Facts, establish firmly and without dispute that Plaintiff's job performance was lacking, that criticisms of her performance were well founded, that Plaintiff was not demoted, that she was no more qualified than others as to whom she claimed superior qualifications, and that she was never a victim of discriminatory animus. The admissions, coupled with certain documents and Plaintiff's deposition testimony, mandate the entry of summary judgment for Defendants.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendants incorporate their Statement of Undisputed Facts, filed contemporaneously with this Memorandum.

## III.    ARGUMENT

### A.    The Standard For Summary Judgment.

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Accordingly, summary judgment should be entered against a party who fails to offer admissible evidence sufficient to establish the existence of every element essential to that party's case on which that party bears the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 327 (1986) (the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'") (citations omitted).  Although a defendant bears the initial responsibility of asserting the basis for its motion for summary judgment, the defendant is not required to negate the plaintiff's claim.  Rather, the defendant must only point out that there is an absence of evidence to support the plaintiff's case or, alternatively, offer affirmative evidence which demonstrates that the plaintiff cannot prove his case.  <u>Lawrence v. National Westminster Bank N.J.</u>, 98 F.3d 61, 69 (3d Cir. 1996).

After the defendant has met its initial burden, the plaintiff must present concrete evidence designating "specific facts showing that there is a genuine issue for trial."  <u>Celotex</u>, 477 U.S. at 324 (citation omitted).  Although a court is to view all evidence in a light favorable to the plaintiff, the mere existence of alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  To survive a summary judgment motion, therefore, the non-moving party must come forward with specific admissible and credible evidence supporting each element essential to that party's case.  <u>Schoch v. First Fidelity Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990).  Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact.  <u>Boykins v. Lucent Tech., Inc.</u>, 78 F.Supp.2d 402, 407 (E.D. Pa. 2000).

The evidence in this case, including Plaintiff's own admissions, establishes that Plaintiff cannot meet her burden under Title VII, Section 1981 or the PHRA.  She cannot prove by a preponderance of the evidence that Defendants discriminated against her on the basis of her race and/or sex or that Defendants retaliated against her for complaining about alleged discrimination.

**B.**   <u>Plaintiff Cannot Sustain A Hostile Work Environment Claim.</u>

In order to establish a Title VII[1/] hostile work environment claim, Plaintiff must prove: (1) intentional discrimination because of her race or gender which is (2) pervasive and regular, and which (3) has detrimental effects that (4) would be suffered by reasonable person of the same race or gender in the same position; and (5) that respondeat superior liability exists. <u>See</u> <u>Tumolo v. Triangle Pacific Corp.</u>, 46 F.Supp.2d 410, 411 (E.D. Pa. 1999).

Here, the record evidence falls far short of establishing the type of "pervasive and regular" conduct necessary to support a claim for hostile work environment.  The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment" such that it becomes actionable as unlawful harassment. <u>Faragher v.</u> <u>City of Boca Raton</u>, 524 U.S. 775, 787-88 (1998).  It is only "[w]hen the workplace is permeated with discriminatory intent, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment" that liability for an employer can attach. <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 78 (1998) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).  The standard for judging hostility is "demanding," in order to "ensure that Title VII does not become a general civility code." <u>Faragher</u>, 524 U.S. at 788.

Even if Plaintiff's description of events is credited, the alleged conduct about which Plaintiff complained cannot be viewed as having created a hostile work environment.  Plaintiff

---

[1/]   Plaintiff's Complaint alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") and the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. tit. 43, § 951 <u>et seq</u>.  Courts in the Third Circuit apply the same standards to claims under Title VII, Section 1981 and the PHRA. <u>Pamintuan v. Nanticoke Memorial Hosp.</u>, 192 F.3d 378, 385 (3d Cir. 1999).

contends that when Todd Cipperman became SEI's General Counsel in January 2000, he "began a pattern and practice of discrimination against Collier based on her race (black) and gender (female) in the terms and conditions of her employment, including job assignments, approval of training, approval of continuing education courses and mistreatment of her in connection with her duties in front of her peers and coworkers." (See Complaint, ¶26).

Specifically, Plaintiff contends that Mr. Cipperman: 1) questioned Plaintiff about topics she did not understand during a presentation regarding Roth IRA (Exhibit W, p. 2); 2) disagreed with Plaintiff over contract language which resulted in Mr. Cipperman screaming at her (See Excerpts from Deposition of Courtney Collier, attached to Defendants' Statement of Undisputed Facts as Exhibit J, at pp. 101-102); 3) publicly reprimanded her (Exhibit J, at p. 102); 4) reprimanded her and questioned her in an email exchange (Exhibit J, at p. 102); 5) excluded Plaintiff from certain legal team meetings, including a meeting to draft an evaluation of Mr. Cipperman (Exhibit J, at p. 104; 6) refused to approve one continuing education class (Exhibit J, at p. 110); and 7) did not allow Plaintiff to present a website project (Exhibit J, at p. 110). Plaintiff also claims that Mr. Cipperman overloaded her with work and took responsibilities away from her. (See Exhibit W, at p. 4; Exhibit J, at p. 112).[2/] Although Plaintiff contends that these supposed indignities were motivated by discriminatory animus, she concedes that no one at SEI made any derogatory comments about her gender or race. (Statement of Undisputed Facts, ¶13). Despite her accusations, she cannot identify a factual basis for her assertion that these

---

[2/]     Plaintiff's alleged reassignment to her position as Vendor Manager cannot support her claim for hostile work environment, given the circumstances of the reassignment. See Buwana v. Regents of Univ. of Colo., No. 98-1325, 1999 WL 436267, at *2 (10th Cir. June 29, 1999) (reassignment that did not result in reduction in pay, rank, or responsibility was not hostile work environment). (See Statement of Undisputed Facts, ¶¶15-17).

criticisms and confrontations were discriminatory. (Exhibit J, at pp. 116-117).[3/]

Plaintiff has not provided evidence to satisfy the first element of the requisite *prima facie* case: proof of intentional discrimination *because of* her race or gender. "Verbal harassment, no matter how unpleasant and illwilled, is not prohibited buy Title VII if not motivated by the Plaintiff's membership in some protected group." Gharzouzi v. Northwestern Human Services, 225 F.Supp.2d 514, 534 (E.D. Pa. 2002) (noting that "conduct motivated by a bad working relationship is not prohibited by Title VII"); see Williams v. Pennsylvania State Police, 108 F.Supp.2d 460, 468 (E.D. Pa. 2000) (rejecting Plaintiff's hostile work environment claim where Plaintiff essentially alleged that she received poor performance evaluations, was the subject of three complaints and "had interpersonal conflicts with her coworkers and supervisors."); Narvarte v. Chase Manhattan Bank, No. 96 Civ. 8133, 2000 WL 547031, at *10 (S.D.N.Y. May 4, 2000) (claims of overzealous monitoring of plaintiff's arrival times and negative performance evaluations did not demonstrate discrimination on account of race).

As Plaintiff admitted at her deposition, her only basis for believing that Mr. Cipperman's treatment of her was discriminatory was her perception that others in the legal department were not subjected to the same criticisms and treatment. (Exhibit J, at pp. 116, 119). Of course, this

---

[3/]    The Third Circuit Court of Appeals has noted that both overtly discriminatory and facially neutral actions may be considered in evaluating a hostile work environment claim. Cardenas v. Massey, 269 F.3d 251, 261 (3d Cir. 2001). However, in the instant matter the complete lack of any indication that Mr. Cipperman's actions were motivated by gender or race is dispositive. See Montgomery v. City of Birmingham, No. 98-AR-2100-5, 2000 WL 1608620, *7 (N.D. Ala. Jan. 20, 2000) (low performance appraisal and denial of vacation leave did not amount to a hostile work environment on the basis of race or sex without racially or sexually derogatory comments), aff'd, 237 F.3d 636 (11th Cir. 2000); Murray-Dahnir v. Loews Corp., No. 99 Civ. 9057, 1999 WL 639699 (S.D.N.Y. Aug. 23, 1999) (allegations that the plaintiff was required to work longer work hours than white employees without adequate support staff and was subject to admonishment could not constitute a hostile work environment without racial comments).

proves nothing, other than the fact that Plaintiff's performance suffered by comparison to her peers. Plaintiff's inability to articulate a factual link between Mr. Cipperman's behavior and Plaintiff's discrimination theory is telling. Plaintiff admits that during her employment in SEI's Legal Department, she failed to perform satisfactorily as an attorney (Statement of Undisputed Facts, ¶4). It is hardly surprising, therefore, that Mr. Cipperman was critical of Plaintiff's performance. Perhaps Plaintiff disagreed or took umbrage at Mr. Cipperman's criticisms, and at Mr. Cipperman's removal of certain functions from Plaintiff's area of responsibility, but these personal disagreements and suspicions, without more, do not support accusations of discrimination. See Johnson v. Radio Shack, No. 98-1588, 1999 WL 125723, at *2 (4th Cir. Mar. 10, 1999) (Plaintiff failed to show her race was a factor in the decision not to promote her where she admitted that the relevant decisionmakers never made any comments regarding her race and there was no objective evidence that Plaintiff was "more qualified" for the positions at issue than were the individuals who were selected); Payne v. Milwaukee County, 146 F.3d 430, 434 (7th Cir. 1998) (plaintiff failed to present a *prima facie* case of failure to promote where he did not establish that he was qualified for the position or that the promoted employee was not more qualified than he was).

Even if Plaintiff could show that the conduct at issue was motivated by her race or gender, she would not be able to establish that she was a victim of "severe and pervasive" harassment. Her suggestion that she experienced a few incidents over a period of six months is insufficient to satisfy this critical element of a hostile environment claim. See Weston v. Pennsylvania, No. CIV. A. 98-3899, 2001 WL 1491132, at *12 (E.D. Pa. Nov. 20, 2001) (holding that four incidents over a three-and-a-half-year period were "at best . . . sporadic and isolated incidents of harassment, not pervasive conduct") (citations omitted); Bonora v. UGI

Utils., Inc., No. CIV. A. 99-5539, 2000 WL 1539077, at *4 (E.D. Pa. Oct. 18, 2000) (holding

that "the conduct was not sufficiently pervasive because plaintiff complains of less than ten

incidents over the course of approximately two years"); Johnson v. Souderton Area Sch. Dist.,

No. CIV. A. 95-7171, 1997 WL 164264, at *6 (E.D. Pa. Apr. 1, 1997) (holding that nine alleged

incidents of harassment over three-year period were not pervasive or regular).

In short, Plaintiff has not established that she was subjected to "severe and pervasive"

acts that were motivated by her race or gender. Accordingly, Defendants are entitled to

summary judgment on Plaintiff's claim for a hostile work environment.

C.  **Defendants Are Entitled To Summary Judgment On Plaintiff's Pay, Promotion, Transfer And Discharge Claims.**

1.  **The Applicable Legal Standard For Establishing A Claim Of Intentional Sex Or Race Discrimination or Retaliation Under Title VII, Section 1981 And The PHRA.**

In actions under Title VII, Section 1981 and PHRA, the plaintiff bears the ultimate

burden of proving intentional discrimination or retaliation by a preponderance of the evidence.

See Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  A plaintiff must

prove that the consideration of a protected criterion (i.e., race or gender) was a *determinative*

factor in the adverse employment action about which she complains.  See Hazen Paper Co. v.

Biggins, 507 U.S. 604, 610 (1993) ("Whatever the employer's decisionmaking process, a

disparate treatment claim cannot succeed unless the employee's protected trait actually played a

role in that process and had a determinative influence on the outcome."); Miller v. CIGNA

Corp., 47 F.3d 586, 595 (3d Cir. 1995).

The Plaintiff can meet this *prima facie* burden by presenting direct evidence of

discrimination, or by presenting indirect or circumstantial evidence of discrimination.  Billet v.

8

CIGNA Corp., 940 F.2d 812, 828 (3d Cir. 1991). Where, as here, there is no direct evidence of discrimination, the burden of proof is governed by the framework erected by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and clarified in St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.

If the plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to the employer, who must merely articulate a legitimate, non-discriminatory reason for the employment decision. See Burdine, 450 U.S. at 254. Once the employer has articulated a legitimate business reason for the decision, any presumption of discrimination drops from the case, and the plaintiff then must satisfy the ultimate burden of proving discrimination. See id. at 256.

The ultimate burden of persuasion remains at all times with the plaintiff, who must prove by a preponderance of the evidence that the business reason proffered by the defendant is pretextual and that the defendant intentionally discriminated against the plaintiff. See Hicks, 509 U.S. at 515-16; Burdine, 450 U.S. at 252-53. Because the plaintiff bears the burden of persuasion, a defendant is entitled to summary judgment if it can demonstrate that the plaintiff could not carry her burden of proof at trial. Where no direct evidence of discrimination exists, a defendant may demonstrate this in two ways: (1) by showing that the plaintiff is unable to establish a *prima facie* case of discrimination; or (2) if the plaintiff has successfully established a *prima facie* case, by showing that the plaintiff cannot produce sufficient evidence of pretext to rebut the asserted non-discriminatory reasons for the adverse action. See Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989).

Here, the undisputed material facts establish conclusively that Plaintiff cannot meet her burden of proof. Plaintiff simply cannot show that any of the challenged decisions made by Defendants were motivated by her race or gender, nor can Plaintiff meet her burden of establishing that Defendants' decisions to transfer Plaintiff to a new position and to terminate Plaintiff's employment were made in retaliation for Plaintiff's complaints of discrimination.

## 2.    Plaintiff Cannot Maintain A Claim For Unequal Pay.

To establish a *prima facie* case of wage discrimination under Title VII, a Plaintiff must demonstrate that male and/or white employees were compensated at a higher rate than she was paid for "substantially equal" work, and that differences in pay resulted from intentional discrimination. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087 (3d Cir. 1996); see Amro v. The Boeing Co., 232 F.3d 790, 798 (10th Cir. 2000) ("a person alleging a Title VII wage discrimination claim must show, as part of his prima facie burden, that he was paid less . . . than other similarly situated non-protected class members"). To be "similarly situated" for purposes of Title VII claims, the employees to whom the plaintiff compares herself must be similar to the plaintiff "in all relevant respects." Singh v. Wal-Mart Stores, Inc., No. Civ. A. 98-1613, 1999 WL 374184, at *7 (E.D. Pa. June 10, 1999), aff'd, 225 F.3d 650 (3d Cir. 2000); Miller v. Delaware, Dep't of Probation and Parole, 158 F. Supp.2d 406, 411 (D. Del. 2001) (to establish that he is "similarly situated" in a disparate treatment case, a plaintiff must show that his employment situation [is] nearly identical to those of the . . . employees whom he alleges were treated more favorably).

Plaintiff has admitted that her salary at SEI was appropriate, "in light of her skills and prior experience." (Statement of Undisputed Facts, ¶2). That admission eviscerates her claims for discrimination in her rate of pay. Even without that admission, Plaintiff has failed to produce the requisite evidence necessary to support a claim for discrimination in pay. Her allegations are

10

conspicuously devoid of any substance linking her pay to her race or gender. She alleges in conclusory fashion that she "was not paid equally to her male and white counterparts" and that "the failure to equally compensate women and minorities was systemic throughout the company." (Complaint, ¶40). She also alleges that SEI failed pay and/or provide wages to plaintiff and other black and female employees in the same way as white and/or female employees "with similar job performance, education, experience and background." (Complaint, ¶¶52, 58). These allegations were matched with equally vague testimony in Plaintiff's deposition, in which Plaintiff said that she believed that her "compensation was a lot less than women similarly situated in the Legal Department" and that she believed she made "the least amount of money in the Legal Department." (See Exhibit J, at pp. 86, 119). Plaintiff similarly alleges that she did not receive stock options, in contrast to some other individuals in her department, and that she was denied the opportunity to attend Leadership Club meetings. (Exhibit J, at pp. 86, 94-98, 135; Exhibit W, at p. 2).

Although Plaintiff does not hesitate to offer these bottom line conclusions, she does not identify a single person who was paid more than she, and whose position was "substantially equal." Thus, she has failed to address the critical question underlying her claim that she was paid in a discriminatory fashion. Needless to say, the question of whether an individual is "similarly situated" will depend on myriad factors, including a comparison of prior work experience, levels of responsibility, skill, and level of performance. To create even a inference of discriminatory treatment, Plaintiff must provide at least some evidence which would enable a court to compare her with others in the legal department at SEI. See Ogden v. Keystone Residence, 226 F.Supp. 2d 588, 603 (M.D. Pa. 2002) (Plaintiff could not make out prima facie case unequal pay claim under Title VII where Plaintiff admitted that she had no knowledge of

comparative employee's prior experience or other facts and thus could not establish comparator was "similarly situated"); see Harden v. Southwark, No. 99-4666, 2002 WL 31194220, *7 (E.D. Pa. Oct. 2, 2002) (lack of specificity in advancing wage discrimination claim precluded cause of action; qualifications of comparator necessary to determine whether comparator was "similarly situated"); Lemke v. International Total Services, Inc., 56 F.Supp.2d 472, 490-91 (D. N.J. 1999), aff'd, 225 F.3d 649 (3d Cir. 2000), cert. denied, 531 U.S. 1152 (2001) (plaintiff must come forward with specific information regarding the duties of alleged comparators, citing to position titles of "district managers" insufficient because "it is clear that the inquiry centers around actual job content as opposed to job titles or descriptions").

In this case, however, Plaintiff has failed to provide *any specific information* which would allow a reasonable trier of fact to find that the individuals she alleges were provided with additional compensation were "similarly situated."  Accordingly, as Plaintiff has provided no details regarding the qualifications of her alleged comparators for wage purposes, her claim for discrimination in pay must be dismissed.

### 3.  Plaintiff Cannot Maintain A Failure To Promote Claim.

In a case alleging a failure to promote an employee in violation of Title VII, a plaintiff can establish a *prima facie* case by showing that:  (1) she is a member of a protected class; (2) that she applied and was qualified for a job which was available; (3) that she was rejected; and (4) that non members of the class were treated more favorably.  Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992), cert. denied, 510 U.S. 826 (1993); see McDonnell Douglas, 411 U.S. at 802.

Plaintiff claims that she was wrongfully denied two positions: a position as Head of Operations, Mutual Fund Services and a position as Director of Workforce Development. However, Plaintiff's claims in this regard are untenable, in light of Plaintiff's own admissions

regarding her qualifications and the qualifications of the individuals chosen for these positions.

        **a.**    <u>**The Workforce Development Director Position.**</u>

Plaintiff claims that she was wrongfully denied the position of Director of Workforce Development, for which Alice Lindenauer was selected. Plaintiff alleges that she was denied the position on the basis of her race and/or gender. (Complaint, ¶35; Statement of Undisputed Facts, ¶¶18-21).

The position of Director of Workforce Development was created to encourage the development of future leadership, recruiting and diversity initiatives. (Statement of Undisputed Facts, ¶18). As described more fully in the job posting, the position required an ability to work with groups within SEI to effect change and foster development. (<u>Id.</u>, ¶18). After reviewing resumes and conducting various interviews, Alice Lindenauer was identified as the best candidate for the position, on the basis of her experience and track record in working within SEI with various groups to effect improvements. (<u>Id.</u>, ¶21).

At the outset, Defendants note that this position, which Plaintiff erroneously contends paid over $150,000 per year, would not have been much of a promotion for Plaintiff, as the salary at issue was $95,000 per year, while Ms. Collier earned $90,000 per year at that time. (Exhibit W, at p. 5 n. 6; Statement of Undisputed Facts, ¶2 n. 2). In any event, Plaintiff's claim is extinguished by her own admissions. Plaintiff admits that Ms. Lindenauer was qualified for the job, and that Plaintiff's qualifications were not superior to Ms. Lindenauer's. (Statement of Undisputed Facts, ¶20). Plaintiff's concession on this critical point dooms her promotion claim. She cannot complain about her non-selection, given that she is unable to assert that she was a superior candidate. See <u>Waldron v. S.L. Indus., Inc.</u>, 56 F.3d 491, 498 (3d Cir. 1995) (evidence of plaintiff's own view of his performance is not probative of pretext); <u>Little v. Republic Ref. Co.</u>, 924 F.2d 93, 96 (5th Cir. 1991) (plaintiff's subjective belief of discrimination cannot be

basis for judicial relief); <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 456 (4th Cir. 1989) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to establish discrimination") (citation omitted). (<u>See</u> Statement of Undisputed Facts, ¶¶18-21).

### b.    <u>Head Of Operations, Mutual Fund Services Position.</u>

Plaintiff also claims that she was wrongfully denied a position managing SEI's Mutual Funds Operations, for which James Foggo was chosen. (Complaint, ¶38; Statement of Undisputed Facts, ¶¶23-26). The position of Head of Operations, Mutual Fund Services, is responsible for the "the development and delivery of the accounting, valuation, shareholder servicing, and transfer agent services" relating to Mutual Fund Services. (Statement of Undisputed Facts, ¶23).

Like the challenge to the Workforce Development position, Plaintiff's attempt to build a claim for the Mutual Funds job position is precluded by her own admissions. Plaintiff has admitted that she was not qualified for the position, and that Mr. Foggo was better qualified than she was for the position. (Statement of Undisputed Facts, ¶25). Indeed, unlike Plaintiff, Mr. Foggo had extensive mutual fund related experience at the time that he was chosen for this position. (Statement of Undisputed Facts, ¶¶24-25).

Ms. Collier's admissions relating to the Mutual Funds position preclude her from establishing even a *prima facie* case as to this claim. She cannot meet the second prong of the test, which requires that she be qualified for the position at issue. (Statement of Undisputed Facts, ¶24). Moreover, she certainly cannot demonstrate that she was more qualified for the job than Mr. Foggo. This, in and of itself, undermines any attempt by Plaintiff to develop even an inference of discrimination in the filling of the open Mutual Funds position.

### 4.    <u>Plaintiff Cannot Maintain Her Retaliation Claims.</u>

Plaintiff contends that her internal complaints were not investigated adequately or

resolved properly, and that she was subjected to retaliation for complaining about discrimination.[4] (Complaint, ¶¶31, 33, 45). The <u>McDonnell Douglas</u> burden-shifting analysis described above applies equally to retaliation claims under the Title VII. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 278 (3d Cir. 2000). To state a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) SEI took an adverse employment action after or contemporaneous with her protected activity; and (3) there was a causal link exists between her protected activity and SEI's adverse action. <u>Id.</u>; <u>Weston v. Commonwealth of Pennsylvania</u>, 251 F.3d 420 (3d Cir. 2001) (citations omitted); <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997). As described further below, no reasonable trier of fact could conclude that Plaintiff has satisfied the elements of a *prima facie* case of retaliation, or that Plaintiff can rebut SEI's legitimate reason for her reassignment or her termination.

> a.  **Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation Because Her Reassignment To A Vendor Manager Position Was Not A Demotion.**

Plaintiff alleges that she was removed from her position in the Legal Department and reassigned to the position of Vendor Manager in retaliation for her complaint of discrimination. First, as Plaintiff admits, the reassignment to the Vendor Manager position was not a demotion. (Statement of Undisputed Facts, ¶16). Plaintiff admits further that the reassignment was a direct result of her expressed unwillingness to continue working in SEI's Legal Department. (Statement of Undisputed Facts, ¶15). These two facts are dispositive of Plaintiff's retaliatory

---

[4]    Plaintiff's claim that her internal complaint was handled improperly are belied by the clear record of SEI's prompt and thorough response to her internal complaint, as well as Plaintiff's own admission that SEI "promptly initiated an investigation" and took "reasonable steps to investigate and resolve Plaintiff's complaints of alleged discrimination." (Statement of Undisputed Facts, ¶¶10-14).

demotion claim. Indeed, in the wake of these admissions, Plaintiff fails yet again to establish a necessary element of her claim – an "adverse employment action." A plaintiff who complains about discriminatory treatment must establish that she was subjected to an "adverse employment action" which was "serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment to be adverse employment action." Robinson v. Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).

In the instant case, Plaintiff's salary and fringe benefits remained the same when she transferred to the Vendor Manager position. (Statement of Undisputed Facts, ¶16). As with Plaintiff's previous position in the Legal Department, the position of Vendor Manager carries significant responsibilities. (Statement of Undisputed Facts, ¶17).

Where, as here, there was no reduction in pay or benefits made in conjunction with the transfer at issue, courts have consistently held that no adverse employment action has occurred. See Kantner v. U.S. Postal Service; No. 88-2526, 1988 WL 100804, at *3-5 (E.D.Pa. Sept. 26, 1988) (reassigning an employee to a different position with no desk or telephone where she was given "idiot work" not considered adverse employment action); Vogel v. Honeywell, No. 88-4612, 1989 WL 48074, at *5-6 (E.D.Pa. May 5, 1989), aff'd, 888 F.2d 1383 (3d Cir. 1989) (employee offered another job with the same salary, benefits, salary grade and reporting level as his old position was not subject to adverse employment action); Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) ("Obviously a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either."); Riding v. Kauffmann's Department Stores, 220 F.Supp. 2d 442, 465-66 (W.D. Pa. 2002) (transfer from fashion

16

photographer to merchandise photographer not adverse employment action despite plaintiff's claim that transfer was "humiliating," since transfer involved no change in pay, hours of work or other terms and conditions of employment.).  The application of this rule of law is even more compelling in this case in light of Plaintiff's very clear demand that she be moved out of the Legal Department, and her inability to identify any other open position for which she was even arguably qualified.  (See Statement of Undisputed Facts, ¶15).

Although Plaintiff has suggested that she was not pleased with the transfer, and that she viewed it as a step down in her career, Plaintiff's subjective feeling in this matter are irrelevant. "Subjective feelings ... are not enough to transform the denial [of a transfer request] into an adverse employment action within the meaning of Title VII." Bunis v. Runyon, No. 94 Civ. 2063, 1997 WL 639241, at *3 (S.D.N.Y. Oct. 16, 1997); Garber v. New York City Police Dept., No. 95 Civ. 2516, 1997 WL 525396, at *4 (S.D.N.Y. Aug. 22, 1997) (holding that "purely subjective feelings about a transfer which, by objective standards, did not negatively alter the terms and conditions of his employment in any respect" have no bearing on whether an adverse employment action occurred).

Even if Plaintiff could establish a *prima facie* case of discrimination relating to her transfer to the Vendor Manager job, Plaintiff cannot establish the remaining elements of such a claim in the wake of SEI's clear articulation of a legitimate nondiscriminatory reason for the reassignment.  See Weston, 251 F.3d at 432 (noting that pretext analysis applies to retaliation claims) (citing Delli Santi v. CNA Ins. Co., 88 F.3d 192, 199 (3d Cir. 1996)).  SEI transferred Plaintiff to a position in vendor management because Plaintiff had unequivocally stated that she no longer wished to work in the Legal Department.  (Statement of Undisputed Facts, ¶15).

In Sherrod v. Philadelphia Gas Works, 209 F.Supp.2d 443 (E.D. Pa. 2002), aff'd, 2003

17

WL 230709 (3d Cir. Jan. 29, 2003), plaintiff had filed an internal complaint of race discrimination and informed PGW that she did not want to return to her prior department upon her return from leave because she did not want to work with a particular executive. In response to this statement, PGW reassigned Sherrod to a position that Sherrod disliked, and considered to be a "waste of time." Sherrod, 209 F.Supp. at 448. The Court rejected Sherrod's claim of retaliation, holding that the job reassignment could not form the basis of a retaliatory constructive discharge claim because Sherrod had requested to leave her department. Id. at 450. Plaintiff's claim is similarly deficient. Plaintiff repeatedly expressed her desire to remain at SEI in a position outside of the Legal Department. (Statement of Undisputed Facts, ¶15). Having requested a transfer away from Mr. Cipperman, SEI accommodated Plaintiff's request, and should not be punished for doing so.

> **b.** **Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliatory Discharge Because There Was No Causal Connection Between The Alleged Protected Activity And The Alleged Retaliation.**

Incredibly, Plaintiff claims that her termination from SEI was the result of retaliation for Plaintiff's internal complaint of discrimination. (Complaint, ¶45). In fact, no reasonable juror could conclude that a causal link existed between Plaintiff's alleged protected activity and her termination. Thus, Plaintiff cannot satisfy her *prima facie* obligations with respect to this claim.

As set forth above, in order to make out a prima facie case of retaliation, Plaintiff must establish that "a causal link exists between her protected activity and [SEI's] adverse action." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). However, the protected activity upon which Plaintiff relies – her internal complaints of discrimination – took place over a year and a half before Plaintiff's April 25, 2002 termination as part of a reduction in force that eliminated Plaintiff's entire department. Clearly, the timing of SEI's decision cannot support Plaintiff's effort to establish a "causal nexus."

It is important to recognize that actual causation – and not temporal proximity – is the essential element of a plaintiff's *prima facie* case of retaliation. Kachmar, 109 F.3d at 178 (3d Cir. 1997). An inference of retaliatory causation may be appropriate when the timing is "unusually suggestive" of a retaliatory motive. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997). Here, almost two years elapsed between Plaintiff's initial complaints and the termination of Plaintiff's employment. Obviously, there was insufficient temporal proximity between her complaint and her termination to establish a causal nexus. See, e.g., Johnson v. Souderton Area Sch. Dist., No. Civ. A. 95-7171, 1997 WL 164264, at *7-8 (E.D. Pa. Apr. 1, 1997) (finding time periods of four and nine months between protected activity and alleged adverse actions too large to establish causal nexus); Woods v. Bentsen, 889 F. Supp. 179, 187 n. 15 (E.D. Pa. 1995) ("[C]ourts generally hold that if at least four months pass after the protected action without employer reprisal, no inference of causation is created.").

### c.   Plaintiff Cannot Establish That Defendants' Legitimate Nondiscriminatory Reason For Her Termination Was A Pretext For Discrimination.

Moreover, even if Plaintiff could establish a *prima facie* case of retaliation, whether by temporal proximity or otherwise, SEI has unquestionably articulated a legitimate, nondiscriminatory reasons for terminating Plaintiff's employment – a reduction in force which resulted in the elimination of Plaintiff's department. (Statement of Undisputed Facts, ¶27). To overcome that articulation of a reason, Plaintiff must demonstrate that the alleged impermissible consideration – retaliation for complaining about alleged discrimination – "actually played a role in [the decision making] process and had a determinative influence on the outcome." Hazen, 507 U.S. at 610; see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 140 (2000); Miller v. CIGNA Corp., 47 F.3d 586, 595-96 (3d Cir. 1995).

To preclude summary judgment in Defendants' favor, therefore, Plaintiff must adduce

19

sufficient evidence which discredits Defendants' reasons for terminating her employment, or which shows that retaliation was more likely than not a motivating and determinative factor in that decision. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). To establish pretext, a plaintiff must do more than simply argue that the fact-finder should not believe the defendant's explanations. <u>Fuentes</u>, 32 F.3d at 765. A plaintiff must demonstrate that the employer's proffered reason is either a "post hoc fabrication or otherwise did not actually motivate the employment action." <u>Id.</u> A plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." <u>Id.</u> To survive summary judgment, a plaintiff must rather "demonstrate <u>such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions</u> in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." <u>Id.</u> (citations omitted) (emphasis added). A plaintiff "must show . . . not merely that the employer's proffered reason was wrong, but that it was *so plainly wrong* that it cannot have been the employer's real reason." <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1998) (emphasis added); <u>Fuentes</u>, 32 F.3d at 765. In fact, "an employer is not subject to liability under Title VII for terminating an employee based on a belief that the employee . . . acted improperly even if that belief was incorrect or the result of a flawed investigation." <u>Burke v. Sears Roebuck & Co.</u>, No. CIV. A. 98-4364, 1999 WL 358915, at *2 (E.D. Pa. June 2, 1999); <u>see</u> <u>Kelly v. Drexel University</u>, 94 F.3d 102, 109 (3d Cir. 1996) ("[w]e are dealing, after all, with discrimination statutes which are not intended to handcuff the managers and owners of businesses") (internal quotations and citations omitted); <u>Ezold v. Wolf, Block, Schorr and Solis-</u>

<u>Cohen</u>, 983 F.2d 509, 527 (3d Cir. 1992), <u>cert. denied</u>, 510 U.S. 826 (1993) ("[w]ithout some evidence to cast [doubt on the employers articulated reason], this Court will not interfere in an otherwise valid management decision"); <u>Storti v. First Fidelity Bank</u>, No. Civ. A. 97-5283, 1998 WL 404814, at *8 (E.D. Pa. July 16, 1998) (this court does not sit as a "super human resources office" when reviewing management decisions) (citations omitted); <u>Martin v. General Elec. Co.</u>, 891 F.Supp. 1052, 1058 (E.D. Pa. 1995) (same).

The record in the instant case lacks any evidence suggesting that SEI's articulated reasons for Plaintiff's termination are false. It is undisputed that SEI terminated Plaintiff's employment as part of a reduction in force which included the elimination of Plaintiff's department. (Statement of Undisputed Facts, ¶27).[5/] Applying the <u>McDonnell Douglas</u> framework, therefore, Defendants are entitled to summary judgment on Plaintiff's retaliatory demotion and discharge claims. Plaintiff cannot adduce evidence from which a rational fact finder could reasonably infer that Defendants' legitimate, non-discriminatory reasons for reassigning her or discharging her were a pretext for intentional discrimination. Accordingly, the Court should grant summary judgment in Defendants' favor with respect to Plaintiff's discharge claims.

---

[5/]    In her Summary of Claims, Plaintiff asserts that she "would not have been discharged had she not been transferred to a non legal position." (Exhibit W, at p. 9). This contention misses the point. Plaintiff cannot argue seriously that SEI transferred her to the Vendor Manager position in July 2000 with the intent to discharge her as part of a reduction in force almost two years later. She has offered no evidence of such a far-fetched notion, nor has she identified any facts suggesting that the decision-maker in the reduction in force was motivated by any discriminatory or retaliatory animus.

IV.     **CONCLUSION**

For the forgoing reasons, Defendants respectfully request that the Court grant their

Motion for Summary Judgment and dismiss the Complaint of Plaintiff Courtney Collier with

prejudice.

Respectfully submitted,

MICHAEL L. BANKS
JENNIFER CALABRESE BELL
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA   19103-2921
215.963.5387/5186

Dated:  May 19, 2003

22

## CERTIFICATE OF SERVICE

I, Jennifer Calabrese Bell, hereby certify that a true and correct copy of

Defendants' Motion for Summary Judgment and supporting Memorandum of Law have

been served via first class mail, postage prepaid, this 19th day of May, 2003, upon the

following:


Alan B. Epstein, Esquire
Seven Penn Center
1635 Market Street, 7th Floor
Philadelphia, PA  19103



Jennifer Calabrese Bell

Date:  May 19, 2003