IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S. COURTNEY E. COLLIER,<br><br>      Plaintiff,<br>v.<br><br>SEI INVESTMENTS COMPANY, TODD CIPPERMAN, EDWARD LOUGHLIN, RICHARD LIEB, KEVIN JOHNSTON, KEVIN ROBINS and MARK NAGLE,<br><br>      Defendants. | Civil Action No. 02-3574 |

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Michael L. Banks (PA ID No. 35052)
Jennifer C. Bell (PA ID No. 81045)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
215.963.5387/5186

Defendants SEI Investments Company ("SEI"), Todd Cipperman, Edward Loughlin, Richard Lieb, Kevin Johnston, Kevin Robins and Mark Nagle (collectively "Defendants"), by their attorneys, hereby submit this separate Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment.

I. **STATEMENT OF RELEVANT UNDISPUTED FACTS**

   A. **Plaintiff's Employment With SEI.**

   1. In February 1998, Plaintiff Courtney Collier ("Plaintiff" or "Collier") began working at SEI as a contract attorney on assignment from a separate firm that had placed her temporarily. (See Complaint, ¶21). Defendant Kevin Robins, then Senior Vice President/General Counsel for SEI, hired Ms. Collier as an SEI employee in the Legal Department effective June 1, 1998, at an annual salary of $75,000. (See Letter from K. Robins dated May 13, 1998, attached hereto as Exhibit A; Bates Nos. D0051-D0052; Complaint, ¶21).

   2. As Plaintiff admits,[1] her salary at the inception of her employment with SEI and throughout her employment with SEI was appropriate, in light of her skills and prior experience.[2] (See Defendants' First Requests for Admissions dated March 19, 2003, Nos. 2-3, attached hereto as Exhibit B).

---

[1] As set forth in detail in the Certification attached hereto as Exhibit C, Plaintiff has failed to provide any response to Defendants' First Requests for Admissions, despite having requested an enlargement of time to do so. In accordance with Federal Rule of Civil Procedure 36, these requests are deemed admitted because Plaintiff has failed to serve any written answer or objection to Defendants' First Requests for Admissions. Fed.R.Civ.P. 36(a).

[2] During her employment with SEI, Ms. Collier's base salary was increased several times. SEI raised Ms. Collier's annual salary from $75,000 to $90,000 in July 1999, and to $94,968 in July 2001. (Exhibit F, ¶¶12-15). Ms. Collier also received several bonuses: $18,150 for 1999; $18,748 for 2000; and $11,250 for 2001. (Exhibit F, ¶¶12-15).

3. In January 2000, Mr. Robins transferred to a business position in SEI's Family Wealth Unit, and Todd Cipperman became SEI's Senior Vice President/General Counsel. (See E-mail from Alfred West dated January 21, 2000, Bates No. D0135, attached hereto as Exhibit D).

4. As Plaintiff admits, during the period of time that she worked in the legal department at SEI, both before and after Mr. Cipperman became her supervisor, she failed to perform her duties satisfactorily as an SEI attorney. (Exhibit B, Nos. 4, 5).[3]

B.   **Plaintiff's Internal Complaints.**

5. SEI maintains a strong and effective policy against discrimination and/or harassment in the workplace. The policy emphasizes that "all harassment is prohibited" and provides that "all claims of harassment will be taken seriously and will be investigated." (See Harassment Policy, attached hereto as Exhibit E). The policy also emphasizes that employees who report harassment are protected against retaliation. (Exhibit E).

6. In or around June 2000, Ms. Collier approached Kevin Johnston, Process Leader, Compensation and benefits, with concerns that she was being treated unfairly by Mr. Cipperman. (Declaration of Kevin Johnston, attached hereto as Exhibit F, ¶1).

7. On June 27, 2000, Plaintiff requested that a "neutral third party" mediate between herself and Mr. Cipperman. (See e-mail dated June 27, 2003 from C.

---

[3]   While Ms. Collier has admitted that her performance as an attorney was unsatisfactory, SEI recognizes that Ms. Collier appears to disagree with some of the criticisms expressed by her superiors. These criticisms were communicated to Ms. Collier both orally and in written performance evaluations.

Collier to K. Johnston, Bates No. D0143, attached hereto as Exhibit G). Accordingly, Mr. Johnston secured the services of Dr. Susan Shively and asked her to meet with Plaintiff and Mr. Cipperman to try to facilitate ongoing discussions and to address Plaintiff's concerns. (Exhibit F, ¶3).

8. On July 12, 2000, Plaintiff sent an electronic mail message to Mr. Johnston, in which she asserted that Mr. Cipperman's unfair treatment was discriminatory and based upon her race and gender. (See E-mail dated July 12, 2000 from C. Collier to K. Johnston, Bates No. D0147, attached hereto as Exhibit H; Exhibit F, ¶5).

9. Prior to Plaintiff's July 12, 2000 e-mail, Plaintiff had not made any complaint to SEI management alleging that she had been subjected to discrimination on the basis of her race and/or gender. (Exhibit B, No. 8; Exhibit F, ¶5). Although she had complained previously that Mr. Cipperman was harsh or unfair, she did not accuse him of discrimination until the July 12 e-mail. (Exhibit B, No. 8; Exhibit F, ¶5).

10. Upon receiving Plaintiff's July 12, 2000 e-mail, SEI promptly initiated an investigation of Plaintiff's complaints. (Exhibit B, No. 9; Exhibit F, ¶¶6-9).

11. Plaintiff admits that SEI took reasonable steps to investigate and resolve her complaints of alleged discrimination. (Exhibit B, No. 10). After requesting that Plaintiff provide a written summary of her claims, SEI appointed Executive Vice President Edward Loughlin to investigate Plaintiff's complaint of discrimination. (E-mail from R. Lieb to C. Collier dated July 31, 2000, Bates No. P0039, attached hereto as Exhibit I; Exhibit F, ¶¶6-8).

12. According to Plaintiff, Mr. Loughlin's position as a member of SEI's senior management and as a member of SEI's Earnings Per Share Committee made him an appropriate individual to conduct the investigation. (Deposition of Courtney Collier, relevant pages attached hereto as Exhibit J, at p. 177). Prior to Mr. Loughlin's role in investigating Plaintiff's complaint of discrimination, Plaintiff did not have any disputes with Mr. Loughlin, and did not believe that Mr. Loughlin was biased against her on the basis of her race or gender. (Exhibit J, at p. 176).

13. Plaintiff provided a written summary to SEI in which she described her interactions with Mr. Cipperman, and her concerns about her responsibilities and position at SEI. (See Memorandum from C. Collier to R. Lieb dated July 22, 2000, Bates Nos. D0163-D0169, attached hereto as Exhibit K). Plaintiff did not allege in her written summary that she was subjected to any derogatory comments regarding her race or her sex, and Plaintiff has admitted that she was not subject to any such comments during her employment with SEI. (See Exhibit K; Exhibit J, at p. 114; Exhibit B, Nos. 6-7).

14. Mr. Loughlin performed a thorough investigation of Plaintiff's complaint, which included interviews with a number of SEI employees, including members of the Legal Department. (See Letter dated August 18, 2000 from E. Loughlin to C. Collier, Bates No. D0181, attached hereto as Exhibit L; Exhibit F, ¶8). On August 18, 2000, Mr. Loughlin completed his investigation and informed Ms. Collier that he had found no evidence of race or gender discrimination. (Exhibit F, ¶9; Exhibit L).

C.  **Plaintiff's Reassignment to Vendor Manager Position.**

15. Plaintiff admits that on several occasions in the summer of 2000, she made it clear to management at SEI that although she wanted to continue to work at the company, she would not remain in the Legal Department. (Exhibit B, No. 12; see Exhibit

4

F, ¶4; Exhibit H ("...I wish to remain at SEI, just in another position")). On July 18, 2000, SEI transferred Ms. Collier to an open position outside of the Legal Department as a Vendor Manager effective July 14, 2000. (See Letter dated July 18, 2000 from K. Johnston to C. Collier, Bates No. D0158, attached hereto as Exhibit M).

16. As Plaintiff admits, her transfer to the position was not a demotion. (Exhibit B, No. 15). Plaintiff also admits that her salary and fringe benefits remained the same when she was transferred to the Vendor Manager position. (Exhibit B, Nos. 13-14; see Exhibit F, ¶¶13-14).

17. The position of Vendor Manager carries significant responsibilities. (See Vendor Manager Position Description, Bates Nos. D0183-D0185, attached hereto as Exhibit N). As reflected in the last page of the description, SEI modified the position description to reflect Ms. Collier's specific role in that position. (See Exhibit N).

D.   **Plaintiff's Applications for Promotions.**

(i)   **Workplace Development Director.**

18. In June 2000, SEI posted an opening for the position of Director of Workplace Development. (See Job Posting, Bates Nos. D0187-D0189, attached hereto as Exhibit O). The position required an individual who would "act as a catalyst for the coordination, development and implementation of existing and future leadership, recruiting and diversity initiatives" and who would work closely with various groups to "help create and facilitate new programs." (Exhibit O). The selection of the Director of Workforce Development was made by a committee consisting of Brian Kelly, then Regional Director/Liquidity Management, Carl Guarino, Executive Vice President/Global Unit, David McLaughlin, Senior Vice President, Susan West, Vice President, Dennis McGonigle, Executive Vice President/Liquidity Management, and

5

Judith Tschirgi, Senior Vice President. (See Exhibit J, at pp. 145, 147; Personnel Action Notification for Alice Lindenauer and Selection Tracking Form, Bates Nos. D0190-D0192, attached hereto as Exhibit P).

19. Ms. Collier applied and was interviewed for the Workforce Development Director position in July 2000. (Exhibit J, at p. 153). After interviewing several candidates, including Ms. Collier, the committee selected Alice Lindenauer for the position. (See Exhibit J, at pp. 156-158; Exhibit P).

20. As Plaintiff admits, Alice Lindenauer was qualified for the position of Workforce Development Director. (Exhibit B, No. 18). Plaintiff also admits that her own qualifications for the position of Workforce Development Director were not superior to those of Alice Lindenauer. (Exhibit B, No. 19).

21. As reflected in Ms. Lindenauer's resume and application, her background on SEI's Work-Life Taskforce provided her with extensive experience in working with various groups at SEI. (See Application and Resume of Alice Lindenauer, attached hereto as Exhibit Q, Bates Nos. D0195, D0193-D0194). In fact, Ms. Lindenauer was chosen for the Workforce Development position in part because of her demonstrated record of working to achieve results by building consensus among SEI's various units and departments in projects such as the development of SEI's on-site Child Care Center. (Exhibit Q).

22. Ms. Lindenauer began working in the position of Director of Workforce Development on November 1, 2000. (Exhibit P). At that time, Ms. Lindenauer's salary was raised to $95,000 per year. (Exhibit P).

    (ii)   **Head of Operations Mutual Funds Position.**

23. In September 2000, SEI posted a notice for the position of Head of

Operations/Mutual Funds. This position was responsible for "the development and delivery of the accounting, valuation, shareholder servicing, and transfer agent services" relating to Mutual Funds Services. (See Declaration of Mark Nagle, ¶¶2-3, attached hereto as Exhibit R; Job Posting, attached hereto as Exhibit S).

24. Mark Nagle, Senior Vice President, reviewed applications and interviewed several candidates, including Ms. Collier and James Foggo for the Head of Operations position. (Exhibit R, ¶¶3-4). Based upon these interviews and the candidates' applications, Mr. Nagle determined that Mr. Foggo was best qualified for the position. (Exhibit R, ¶4; see Application of James Foggo, D0209-D0210, attached hereto as Exhibit T).

25. By Plaintiff's own admission, at the time of her application for the Head of Operations, Mutual Fund Services position, she lacked relevant experience and background working in the mutual funds area. (Exhibit B, No. 20). In contrast, Plaintiff has admitted that Mr. Foggo was qualified for the position Head of Operations for Mutual Fund Services. (See Exhibit B, No. 21). In fact, Plaintiff has admitted that her own qualifications for the position of Head of Operations for Mutual Fund Services were not superior to those of James Foggo. (See Exhibit B, No. 22).

26. Mr. Foggo began working in the position of Head of Operations, Mutual Fund Services in early October 2000. (See Employment Requisition and E-mail from M. Nagle dated October 3, 2000, Bates Nos. D0206-D0207, attached hereto as Exhibit U). At the time of his promotion, Mr. Foggo's salary was raised to $160,000 per year. (Exhibit U, D0206).

E. **SEI's Reduction In Force.**

27. As Plaintiff admits, her employment with SEI was terminated as part

7

of a reduction in force, which included the elimination of her entire department. (Exhibit B, No. 30; Exhibit R, ¶¶5-6). Mr. Nagle participated in the decisionmaking process regarding that reduction in force for his Unit. (See Exhibit R, ¶5). As part of that reduction in force, SEI Unit Leaders were asked to identify nonessential groups within their units and to eliminate such groups within their units in order to contain costs. (Exhibit R, ¶¶5-6). In conjunction with that process, Mr. Nagle made the decision to eliminate the Vendor Support Group and to terminate the employment of both of the employees who worked in that group: Karen Noyle and Courtney Collier. (Exhibit R, ¶¶5-6; Letters to Karen Noyle and Courtney Collier dated April 25, 2002, Bates Nos. D0197-D0198, D0053-D00054, attached hereto as Exhibit V).[4]

                           Respectfully submitted,

                           MICHAEL L. BANKS
                           JENNIFER CALABRESE BELL
                           MORGAN, LEWIS & BOCKIUS LLP
                           1701 Market Street
                           Philadelphia, PA  19103-2921
                           215.963.5387/5186

Dated: May 19, 2003

---

[4] Plaintiff's Objections and Responses to Defendants' Request for Production of Documents, and Plaintiff's Objections and Responses to Defendants' First Set of Interrogatories, including Plaintiff's attached Summary of Claim (without exhibits), are attached hereto as Exhibit W.

8

## CERTIFICATE OF SERVICE

I, Jennifer Calabrese Bell, hereby certify that a true and correct copy of Defendants' Statement of Undisputed Facts and accompanying exhibits has been served via first class mail, postage prepaid, this 19th day of May, 2003, upon the following:

Alan B. Epstein, Esquire
Seven Penn Center
1635 Market Street, 7th Floor
Philadelphia, PA  19103

_____
Jennifer Calabrese Bell

Date:  May 19, 2003