**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

S. COURTNEY E. COLLIER,                  :
                                         :
          Plaintiff,                     :
                                         :
     v.                                  :          Civil Action No. 02-3574
                                         :
SEI INVESTMENTS COMPANY, TODD :
CIPPERMAN, EDWARD LOUGHLIN,              :
RICHARD LIEB, KEVIN JOHNSTON,           :
KEVIN ROBINS and MARK NAGEL,            :
                                         :
          Defendants.                    :
                                         :

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This is a race and gender based discrimination and retaliation case for declaratory, injunctive, monetary and other appropriate relief brought by Plaintiff, S. Courtney E. Collier, Esquire (APlaintiff@ or ACollier@) against her former employer, SEI Investments Company (ASEI@), a multi-billion dollar investment services company, and Todd Cipperman (ACipperman@), Edward Loughlin (ALoughlin@), Richard Lieb (ALieb@), Kevin Johnston (AJohnston@), Kevin Robins (ARobins@) and Mark Nagel (ANagel@) (hereinafter collectively ADefendants@), several of SEI=s executives who aided and abetted her employers actions, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. '' 2000(e), *et seq.*, as amended by the Civil Rights Act of 1991 at 42 U.S.C. ' 1981(a) (hereinafter ATitle VII@) the Civil Rights Act of 1866, 42 U.S.C. ' 1981 (A ' 1981") and the Pennsylvania Human Relations Act, 43 P.S. ' 951 *et seq.* (APHRA@).  As a result of her race and gender, Collier was subjected to discriminatory and disparate treatment

while employed as an attorney in the legal department at SEI and was discriminatorily removed from her position as an attorney, demoted to a position of Vendor Manager and not hired/promoted to a another position more suitable to her qualifications.  Finally, Collier was adversely treated and ultimately terminated in retaliation for her asserting internal and then external complaints about racially-based and gender-based discriminatory employment practices at SEI.

Relying upon their mistaken conclusion that Plaintiff failed to serve answers to Defendants= Requests for Admissions and thereby admitted material facts, Defendants have filed the instant Motion for Summary Judgment seeking to dismiss Collier's civil action pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants' Motion should be denied in its entirety. [1]

## II.    STATEMENT OF THE CASE

### A.    Statement of Facts

The facts material to Plaintiff=s Response and Memorandum of Law in

---

[1]As noted below and fully discussed in the attached verification of counsel for Plaintiff (Exhibit AA@), Plaintiff, by and through her attorney, Alan B. Epstein, Esquire, had served answers to the requests for admissions which Defendants aver they did not receive.  To the extent that the averred non-receipt by Defendants (acknowledged by Defendants only in their Motion for Summary Judgment) can be deemed a lack of service and a resulting admission of the facts requested, Plaintiff respectfully requests that her response and the attached affidavit of counsel be deemed a Motion for the Withdrawal or Amendment of the Admissions pursuant to the provisions of Rule 36(b) of the Federal Rules of Civil Procedure.

Opposition to Defendants= Motion for Summary Judgment are set forth in her Counter-Statement of Disputed Material Facts in support of her Response in Opposition of Defendants= Statement of Undisputed Facts and Appendix of Exhibits (APlaintiff=s Counter-Statement of Disputed Material Facts) which are incorporated herein by reference. Those facts amply raise issues of fact regarding all material issues in this matter and sufficiently demonstrate that summary judgment is inappropriate.

**B.    Procedural History**

Based on the differential and retaliatory treatment by Defendants, Collier filed a charge of discrimination with the Pennsylvania Human Relations Commission (APHRC@) on January 3, 2001 which was dually filed with the United States Equal Employment Opportunity Commission (AEEOC@). (Exhibit AZ@). In her PHRC Complaint, Collier claims she was subjected to race and gender-based discrimination in connection with her employment and unlawful retaliation. Thereafter, June 4, 2002, Collier filed her Civil Action Complaint setting forth claims for race discrimination, gender discrimination and retaliation under Title VII, 42 U.S.C. '1981, and the Pennsylvania Human Relations Act.

Defendants now seek summary judgment on the basis that Plaintiff has failed to present sufficient evidence to support her claims of race and gender-based discrimination and retaliation. Collier opposes Defendants= Motion on the basis that the record is replete with evidence which shows that Plaintiff was the victim of differential treatment as a result of her race and gender, and was retaliated against because she

complained of discriminatory employment practices.

## III.    DISCUSSION

Rule of Civil Procedure 56(c) provides that summary judgment can only be entered,

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

See, e.g., Cellotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552 (1986); Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1355-56 (1986).

Summary judgment is disfavored in discrimination cases. Oldham v. West, 46 F.3d 985, 988 (8th Cir. 1995); Jalil v. Avdel Corporation, 873 F.2d 701, 707 (3d Cir. 1989); Frey v. Penn. Airlines, 859 F. Supp. 137, 144 (M.D. Pa. 1992). In an employment discrimination case, the plaintiff faces the difficult task of proving the intent or motive of the defendant. Motive and intent usually are not supported by direct evidence and most evidence is in the hands of the defendant. Jalil, supra., 873 F.2d at 707; Frey, supra., 859 F. Supp. at 144.

The party seeking summary judgment "...bears the initial responsibility of informing the district court of the basis for its motion..." and identifying such materials it "...believes demonstrate the absence of a genuine issue of material fact..." Cellotex Corp., 477 U.S. 317, 106 S.Ct. at 2552.   A fact is material only if it will affect the outcome of a

4

lawsuit, and a dispute over a material fact is genuine only if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party.@ *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986). In determining whether the movant has met its burden, the Court is required to inquire "...whether the evidence presents a significant disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* Disposition by summary judgment is inappropriate where the evidence in the record reveals a genuine issue as to a material fact. *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981).

The Supreme Court has also strongly warned that the burdens on the moving party are heavy:

> credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions and not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in his favor . . .
> Neither do we suggest that the trial court should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.

*Anderson v. Liberty Lobby*, 477 U.S. at 255. Based on this standard, it is respectfully suggested that Defendants= Motion for Summary Judgment must be denied.

> A.    **Collier Has Established A *Prima Facie* Case Of Race And Sex Discrimination With Respect To Her Treatment At SEI While In The Legal Department And Has Sufficiently Demonstrated That Defendants= Reasons For Treating Her Differently, Demoting Her, And**

**Refusing To Promote Her Were A Pretext For Discrimination**[2]

The burden for establishing a race discrimination claim under Title VII and 42 U.S.C. ' 1981 has been set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), subsequently refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 (3d Cir. 1998); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). This same burden applies equally to claims of sex discrimination. *Geraci v. Moody-Tottrup, International, Inc.*, 82 F.3d 578, 580 (3rd Cir. 1996); *Sarko v. Penn-Del Di rectory*, 968 F. Supp. 1026, 1033 (E.D. Pa. 1997); *Masonheimer v. Colonial Penn Insurance Co.*, 959 F. Supp. 698, 702, n. 1 (E.D. Pa. 1997).

---

[2]Reflective of their disregard of Plaintiff=s claims, Defendants have confused the theory of her case. This action does not involve a hostile work environment claim. Instead, it is a disparate treatment claim and the hostile treatment by Cipperman is part of that claim. Accordingly, the hostile work environment portion of Defendants= Brief will not be addressed.

Under this standard, in order to prove intentional discrimination, a *prima facie* case must first be established which raises a presumption of discriminatory intent. To establish a *prima facie* case of race and sex discrimination under Title VII and the PHRA[3] based upon disparate treatment with respect to the terms and conditions of employment, Collier must show : (1) that she is a member of a protected class (here African-American and female); (2) she was qualified for the position in question and was qualified to receive the terms and conditions of employment to which she claims she was entitled; (3) she suffered an adverse employment decision (*eg.,* she was denied those terms and conditions) and (4) other employees not in the protected class with similar qualifications were treated more favorably (*eg.,* received those terms and conditions). *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Waldron v. SL Industries, Inc.*, 56 F.3d at 494 (3rd Cir. 1995); *Sarko,* 968 F. Supp. at 1033. *See also Jalil v. Avdel Corp.*, 873 F.2d at 701 (3d Cir. 1989). Because the facts in a Title VII case will vary, the specification of the elements of the *prima facie* case will not always be applicable. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 351 (3d Cir. 1999)(*quoting McDonnell Douglas Corp. v. Green*, 411 U.S. at 802). As the Supreme Court noted:

> The central focus of the inquiry in a case such as
> this is always whether the employer is treating

---

[3]The applicable burdens of proof described apply equally to Plaintiff's claims under the PHRA because the PHRA is generally interpreted consistently with its federal counterparts. *See Kelly v. Drexel University*, 94 F.3d 102, 105 (3[d] Cir. 1996). *See also General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976); *Allegheny Housing v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 532 A.2d 315 (1987); *Hagans v. Budd Co.*, 597 F. Supp. 89 (E.D. Pa. 1984). Accordingly, for purposes of this motion, Collier will treat her PHRA claims coextensively with her claims under Title VII.

<some people less favorably than others because of their race, color, religion, sex, or national origin.' (Citation omitted). The method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.

*Id.* (*Quoting Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L. Ed.2d 957 (1978)).

Additionally, the Court of Appeals for the Third Circuit A...has not been overly demanding of the proof required for a prima facie case.@ *Jackson v. U.S..Steel Corp.*, 624 F.2d 436, 440-441 (3d Cir. 1980) (*quoting Whack v. Peabody & Wind Engineering Co.*, 595 F.2d 190, 193 n. 11 (3d Cir. 1979). Accordingly, the courts generally find that a *prima facie* case has been established. See *Dugan v. Pennsylvania Millers Mutual Insurance Company*, 871 F. Supp. 785, 790 (M.D. Pa. 1994)("a prima facie case is easily made out and rarely the focus of ultimate disagreement").

In meeting her burden of establishing a *prima facie* case, Collier may introduce direct evidence of discriminatory intent, or, when no direct evidence of intent is available, she may have the benefit of a presumption of the employer's discriminatory intent through circumstantial evidence:

The Supreme Court of the United States has indicated that it is error to require direct evidence of discriminatory intent. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 717, 103 S.Ct. 1478, 1483, 75 L.Ed.2d 403 (1983)("Aikens")("The District Court erroneously thought that respondent was required to submit direct evidence of discriminatory intent"). We

8

> recently reiterated the principle that so-called "smoking gun" evidence such as "statements by the employer to the employee that s/he was being fired because of age" are not a prerequisite to a successful ADEA action. *Maxfield v. Sinclair International*, 766 F.2d 788, 791. The plaintiff may satisfy his burden of demonstrating that his age was a determinative factor in his discharge "by producing either direct evidence of discriminatory intent or evidence from which an inference of discrimination can be drawn." *EEOC v. Hall's Motor Transit Company,* 789 F.2d 1011, 1015 (3d Cir. 1986).

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 898 (3d Cir. 1987). *See also Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987).

Upon establishing a *prima facie* case, a discrimination plaintiff enjoys a presumption that the defendant has engaged in unlawful discrimination and an inference of discrimination arises "...because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors . . . And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). Once a *prima facie* case is raised, the defendant is then obligated to articulate a "legitimate, non-discriminatory reason" for its action. *Burdine*, 450 U.S. at 254. The defendant need not prove that the reasons offered are true; the burden is one of production only. *Id.* Upon articulation of a non-discriminatory reason, the presumption of discrimination created by the *prima facie* case is deemed to have been rebutted. *Id.* at 255 n. 10.

Finally, if the defendant has satisfied the burden of production, the plaintiff is provided "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253; *Josey v. John R. Hollingsworth Corp*, 996 F.2d 632 (3rd Cir. 1993).   Under this standard, Collier can defeat a motion of for summary judgement, at the pretext stage, by Apointing to some evidence, direct or circumstantial, from which a fact finder could reasonably either: (1) disbelieve the employer=s articulated legitimate reason, [i.e., Ato cast substantial doubt upon the employer=s proffered reasons@]; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer=s action.@ *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3rd Cir. 1995).

In *Burdine*, the Supreme Court gave specific guidance to courts on the issue of whether the plaintiff must have direct evidence of the employer's bias:

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. *She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.*

450 U.S. at 256 (emphasis added).  Thus, the plaintiff's evidence rebutting the employer's stated reasons could prove pretext and thereby prove intentional discrimination, by "showing that the employer's proffered explanation is unworthy of credence." *Id.*

Additionally, in satisfying this burden, the plaintiff *is not required* to produce direct proof that the true or real reason for the employer=s action was intentional discrimination. The Third Circuit, sitting *en banc,* in *Sheridan v. E.I. DuPont De Nemours and Company,* 100 F.3d 1061 (3d Cir. 1996), specifically observed the disbelief of the employer=s proffered explanation coupled with the proofs adduced to support the plaintiff=s *prima facie* case was sufficient to sustain plaintiff=s ultimate burden:

> In deciding the "ultimate question" of whether the employer unlawfully discriminated, the [United States Supreme] Court [in *St. Mary=s Honor Center v. Hicks, 509 U.S. 502 (1993)*] stated in the following oft-quoted passage that "[t]he fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." [*Hicks, 509 U.S. at 511*]. The Court explained that "rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination," and continued: "the Court of Appeals was correct when it noted that, upon such rejection, '[n]o additional proof of discrimination is required.'" *Id.* (emphasis in the original) (*quoting Hicks*, 970 F.2d at 493).

*Sheridan,* 100 F.3d at pp. 1066-1067.

In *Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir. 1990), the Third Circuit further made clear that *the testimony of the plaintiff alone can sufficiently meet the claimant's burden at any step of the analysis:*

> We cannot agree that [plaintiff's] uncorroborated deposition testimony is insufficient to create a genuine issue on the question of discriminatory intent. As we have stated in the past, there is no

> rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion. *Jackson v. University of Pittsburgh*, 829 F.2d 230, 236 (3d Cir. 1987), *cert. denied*, 484 U.S. 1020 (1988); *See Graham v. F. B. Leopold Co., Inc.*, 779 F.2d 170, 173 (3d Cir. 1985)(plaintiff's deposition testimony could suffice to create genuine dispute about material issue).

*Weldon,* 896 F.2d at 800 (emphasis supplied). *See also Sempier,* 45 F.3d at 732; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (to discredit the employer=s articulated reason, the plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond her prima facie case).

    1.    The Evidence Sets Forth A Prima Facie Case of Race and Sex Discrimination

Applying the above standards, it is apparent that Collier has established a *prima facie* case of race and gender discrimination. First, as an African American female, Ms. Collier is a member of a two protected classes.

Second, Collier was qualified for her attorney position in the SEI legal department at the time she was demoted to the position of Manager of Vendor Programs and was entitled to all of the benefits given to the Caucasian employees in the department including equal pay opportunity, stock options and the opportunity to attend the President=s Leadership Club. (Collier Dep., Exhibit AD@, at p. 265); (Exhibit AL@); (Exhibit AM@); and (Exhibit AV@). The evidence also supports that Collier was qualified for the position of Workforce Development Director. (Collier Dep., Exhibit AD@, at pp. 402-403).

Third, the evidence establishes that Collier was treated differently in connection with the terms and conditions of her employment because Cipperman berated her in front of other employees, paid her a lower salary than her Caucasian counterparts and gave her lower merit increases, denied her stock options, and never selected her to attend the Leadership Club. (Collier Dep., Exhibit AD@, at pp. 82, 87-89, 95-99, 101-103, 106-107, 134-138, 245-250). (*See also,* Collier Aff., Exhibit AI@, & 7). She was also subjected to adverse action when she was removed from her attorney position and not hired for the position of Workplace Development Director. (Collier Dep., Exhibit AD@, at p. 197, 402-403) (*See also,* Collier Aff., Exhibit AI@, & 18).

Finally, Collier has established that other attorneys who were not African American females were treated more favorably. Cipperman did not treat white employees in the same hostile manner which he treated Collier. (Collier Dep., Exhibit AD@, at pp. 115-118, 245-250). Caucasian employees, both male and female, were given higher raises and stock options. (*Id.* at pp. 82, 87-89, 95-99)(*See also,* Collier Aff., Exhibit AI@, & 12). Christine McCullough, a Caucasian female attorney in the department, replaced Collier in her role of handling employment law matters after Collier was demoted. (Cipperman Dep., Exhibit AE@, at pp. 30-33). Ann Lindenauer, another Caucasian female, was hired for the Director of Workplace Development position even though she was less qualified than Collier. (Collier Dep., Exhibit AD@, at p. 402).

Clearly, this evidence satisfies Collier=s burden of establishing a *prima facie* case of discrimination. At a bare minimum, she has produced sufficient evidence to create a genuine issue of material fact as to whether she was treated less favorably than male

employees and Caucasian female employees in conjunction with the terms of her employment, her demotion, and her denial of promotion.  Accordingly, it is respectfully suggested that Defendants are not entitled to summary judgment.

> **2.     Defendants Have Failed To Articulate A Legitimate, Non-Discriminatory Reason For Their Actions During Ms. Collier=s Tenure In The Corporate Legal Department And Collier Has Established That The Reasons Given By Defendants For Their Differential Treatment Of Plaintiff Were Pretextual**

Having established the elements of her *prima facie* case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their decision to treat Plaintiff differently, demote her, and refuse to hire her for the position of Director of Workplace Development.  Although this is only a burden of production and not of persuasion, Defendants have clearly failed to articulate a non-discriminatory reason for their treating her differently than her Caucasian and male counterparts with respect to the terms and conditions of her employment while she was employed within the SEI legal department.

Ms. Collier has articulated, in great detail, the actions of Mr. Cipperman during his supervision of Ms. Collier and demonstrated that Defendant Cipperman treated her Caucasian and male counterparts differently and distinctly better.  (Collier Dep., Exhibit AD@, at pp. 115-119, 232-241).  She has also provided evidence that she was not paid equally to white and male attorneys employed by SEI and did not receive equivalent raises or bonuses.   (Collier Dep., AExhibit AD@, at pp. 82, 87-89, 95-99). (*See also* Exhibit AK@).

 Further, she has established that she was unjustly berated, disrespectfully treated, and not provided equal employment opportunities (*eg.* non-selection to the President=s

Leadership Club, exclusion from important meetings, assistance with her assigned duties...)(Collier Dep., Exhibit AD@, at pp. 101-103, 106-107, 134-139, 235-238, 240 245-250).  (*See also,* Collier Aff., Exhibit AI@, & & 6-8).

With respect to her demotion, Defendants contend that this new position was not a demotion and they removed Plaintiff from the legal department because she allegedly stated that she would not work with Cipperman.  (Defendants= Memorandum of Law, at p 15).They also aver that they did not hire her for the position of Workplace Development Director because they erroneously contend that Plaintiff purportedly admitted that Lindenhauer was more qualified and attempt to explain her final removal from SEI employment as part of a broad based layoff of employees. (*Id.* at p.13).  It is suggested that these undocumented reasons now articulated by Defendants are directly contrary to the evidence disclosed during discovery which establish that Collier objected to being demoted (Collier Dep., Exhibit AD@, at p. 207) and also reveal to the that only two people were laid off from employment. (Nagle Dep., Exhibit AH@, at pp. 53-54).  Therefore, these contrived reasons cannot constitute the mandatory expression of a legitimate, non-discriminatory reason for her demotion, her non-promotion to the Workforce Director position or her termination.

It is equally apparent that Collier has met her ultimate burden of establishing that Defendants= proffered reasons for its actions against Collier were motivated by her race and gender.  In addition, Collier has established that Defendants= proffered reasons for taking these adverse actions are unworthy of credence.  More specifically, as revealed in her deposition testimony and in the summary factual statement made in her discovery

15

responses, Cipperman subjected Collier to discriminatory treatment while she worked in the SEI corporate legal department.  For starters, shortly after her hire, she was asked to make a presentation on the Roth IRA legislation, and despite Collier=s preface that she was not a tax expert, Cipperman engaged in harassing questioning about unrelated tax and estate issues for not apparent reason other than to make Collier look incompetent in front of her colleagues.  (Collier Aff., Exhibit AI@, & 6).    On another occasion, Collier informed Cipperman of the possible promotion to Director of Operations in France.  In response thereto, Cipperman stated that if he were to chose anyone from legal, it would not be her.  (Collier Dep., Exhibit AD@, at pp. 106-108; Exhibit AN@).  Collier was not given any stock options at the time of her hire despite the fact that these were routinely given to other white and male employees upon hire.  In fact, Collier has never been given any stock options and she is the only SEI attorney without any stock options  (*Id.* at pp. 82, 87-89, 95-99).   She was also not given comparable raises as other individuals in the legal department.

Additionally, during the beginning of the fall of 1999, Cipperman was being groomed to take over the position of General Counsel [4] and began abusing his newly found power.  Specifically, he openly harassed and discriminated against Collier by publically berating and criticizing her work and her abilities through e-mails which were sent to the entire legal department.  He also berated Collier by yelling at her in front of her

---

[4]As further evidence of disparate treatment, it should be noted that despite having a policy that job openings are supposed to be posted and the applicants are to be interviewed for the position, this did not happen in the replacement of Robins and a white male was given a promotional position without adhering to the promotional policies.  (Exhibit AV@, at p. 3 n. 6); (Collier Dep., Exhibit AD@, at p. 406).

co-workers and in private  These criticisms were without merit. (Collier Dep., Exhibit AD@, at pp.101-103, 106-107 115-118, 245-250). (*See also* Collier Aff., Exhibit AI@, && 6, 7). In January of 2000, Cipperman attempted to take  a lot of responsibilities away from Collier and to give her work to other white attorneys in the department.  Collier advised Robins of Cipperman=s behavior. (Exhibit AV@, at p. 4).   Rather than take any remedial action, Collier was told that she needed to decide if she would be able to get along with Cipperman because he was going to be General Counsel. (*Id.*)  Accordingly, Cipperman continued his discrimination and harassment of Collier by overloading her with another colleague=s work in addition to all of her own work and refused to get her any assistance despite her repeated requests for same. (Collier Dep., Exhibit AD@ at pp. 235-238, 240).  Further, he continued to degrade Collier and her abilities in front of her colleagues as well as in private. (*Id.* at pp. 101-103, 106-107, 245-250).

On June 20, 2000, a meeting was held for all of the attorneys to evaluate Cipperman.  Collier was excluded from this meeting. [5]  (*Id.* at pp. 103-106).  Subsequent to this incident and because she was getting no help from her superiors, Collier requested a neutral third-party mediation between herself and Cipperman in an attempt to resolve this situation.  The mediation was held over a couple of days in the summer of 2000.  (Exhibit AV@, at p. 5). Prior to the internal mediation, Robins asked Collier her goal for the mediation and she advised him that she only wanted Cipperman to treat her equally to the other white and male attorneys in the department until she was able to find another job

---

[5]McCullough excluded Plaintiff from a meeting regarding certain legal issues relevant to her work.  (*Id.* at pp. 103-106)  (*See also*, Exhibit AO@).

within SEI away from Cipperman.[6] (*Id.*)  Robins made it clear to Collier that she should not take this issue any further or higher if she wanted to continue her employment with SEI. He then asked Collier if she had filed a claim against SEI which she had not at that time.  (Id.)

Collier=s complaints were not resolved during the mediation process. Thereafter, on July 12, 2000, Collier sent an e-mail to Robins and Johnston discussing the continued discrimination and harassment of her by Cipperman. (Exhibit AQ@). Feeling that the situation was hopeless, Collier decided that she needed to take this problem to a higher level so she e-mailed defendant Lieb complaining again that she was the continued victim discrimination at SEI. (Exhibit AT@). On July 18, 2000, only two days after she reported the discrimination to Lieb, Collier was called into a meeting with Johnston and Cipperman and told that she had been Areassigned.@ (Exhibit AR@).  She was replaced in her responsibilities by Christine McCullough, a Caucasian female,  who assumed the role of handling employment law matters.  ((Cipperman Dep., Exhibit AE@, at pp. 30-33).

Although Collier was told that the new position was of equal pay and status, this reassignment was, in fact, a demotion. (Exhibit AT@).  Specifically, before she reported the discrimination, Collier was a Vice President/Assistant Secretary in the Legal Department at the corporate office in Oaks, Pennsylvania.  As a result of her complaint, Collier=s new position was no longer a legal position.  Instead, the position was a newly created position as manager of the vendor programs for the Mutual Fund Services division of IS&S which required her to be physically moved from corporate headquarters to a

_____

smaller administrative office in Wayne. (Collier Dep., Exhibit AD@, at pp 173, 181-182,

197).    In this position, she was completely isolated from her colleagues.  She was also

stripped of her title of Vice President.  (*Id.*); (Collier Aff., Exhibit AI@, at &16).  To further

demean Collier, SEI assigned her to a desk located in a remote area of this building with

no windows and it stands alone behind a column so she cannot see anyone and no one

can see her.(Exhibit AV@, at p. 6).

        In addition to demoting Collier for complaining of discriminatory conduct, SEI

further retaliated against her when it denied her a promotion to the Director of Workforce

Development and selected Lindenhauer. (Collier Dep., Exhibit AD@, at p. 150, 402-403).

This position requires the Director to oversee SEI=s Affirmative Action Plan and diversity

goals, to work closely with the Recruiting & Affirmative Action Coordinator and required

knowledge of recruiting best practices and affirmative action plan implementation. (A copy

of the job description for the position of Director of Workforce Development is attached and

marked as Exhibit AAA@).  Collier was far more suited for that position than the Vendor

Manager position and was more qualified than Lindenhauer.

        Moreover, in August 2000, began to keep tabs on Collier including keeping

 track of when Collier would arrive and depart from the office, and how many days she took

off and why.   This type of action was not taken against any of the white and male

employees.   Rather, this action was clearly done in an attempt to set Collier up for

termination, furthering the retaliatory action taken by SEI.  (Exhibit AV@, at p. 7).  As further

evidence of SEI=s discrimination and retaliatory conduct, Collier noticed that in October of

2000, she was not even listed in the SEI white pages as an Aemployee@ but rather was

listed as a consultant.  (Collier Dep., Exhibit AD@, at pp.453-454).  Plaintiff was ultimately terminated pursuant to a convenient restructuring of the Anewly created@ position.

Clearly, based on the above combined with the following contradictions and discrepancies, a jury could reject Defendants= reasons for taking the above actions.  First, there were only two African American employee=s in the Legal Department which Cipperman supervised and he was instrumental in the decision to move her out of the legal department after she complained about discriminatory practices. (Cipperman Dep., Exhibit AE@, at pp. 97-98); (Johnston Dep., Exhibit AG@, at pp.66-67).  Mr. Cipperman never even significantly considered reassigning Collier to a legal position not reporting to him. (Cipperman Dep., Exhibit AE@, at p. 98).

Secondly, Defendants= reasons for demoting Collier are extremely suspicious because Collier was not Awell-suited@ for the Vendor Management Position.  It was not a legal  position.  Instead, it was an entry level position requiring her to report to a manager with substantially less experience and credentials than Collier=s. (Collier Dep., Exhibit AD@, at pp 173, 181-182); (Exhibit AV@, at pp. 5-6). The position also required a BS/BA in Finance, Marketing, Business Administration or related field with a minimum of seven years business experience and a Series 6 or 7 insurance or brokerage license -- credentials that Collier did not possess.  (A copy of the Job Description for the Vendor Manager Position is attached hereto and marked as Exhibit ABB@).

Thirdly, Defendants= purported investigation raises further doubt regarding their actions.  Specifically, Defendants= attempted to cover their improper actions and

never reviewed Collier=s allegations of discrimination.  (Loughlin Dep., Exhibit A F@, at pp.
38 - 40).  More significantly, Defendants appointed Loughlin to conduct the investigation
despite that he admittedly had no experience or training in investigative matters.  (*Id.* at 20-
24).  Indicative of his lack of experience, Loughlin only met with Cipperman for one hour
and discussed Amostly performance issues@.  (Cipperman Dep., Exhibit AE@, at pp. 114 -
115). Amazingly, Loughlin did not ask any interviewee about any of Ms. Collier=s claims of
discrimination.  (Loughlin Dep., Exhibit AF@, at p. 32).

       Perhaps most telling of Defendants= discriminatory motives  is the
overwhelming evidence establishing that the above mistreatment of Collier was part of a
pattern and practice of SEI=s discriminatory actions against female and African-American
employees as reflected *inter alia* by the following circumstances and events:

       1.    Plaintiff and other African-American employees were denied
participation in special events such as the President=s Leadership Club. (Collier Dep.,
Exhibit AD@, at pp. 136-139);

       2.    SEI, through its Corporate Events Department and the wife of
SEI=s President and CEO, selected racially offensive themes for the galas held during the
club including costume balls featuring southern oriented Civil War themes. (Lindelow Dep.,
Exhibit AX@, at p. 15); (Exhibit AY@);

       3.    Plaintiff and other females as well as African-American employees
were also denied participation on important strategic bodies such as the Vision Task Force
and no individuals of African-American dissent selected to participate in the Corporate
Vision and Strategy Team.  (Cipperman Dep., Exhibit AE@, at pp. 131, 132)(Exhibit AU@);

4.      Plaintiff and other minorities employed at SEI were not paid equally to their Caucasian counterparts.  (*See* Exhibit ᴀKᴀ); and

5.       Robins advised Collier that he did not care about affirmative action. (Collier Dep., Exhibit ᴀDᴀ, at pp. 338-339).

Based on the above incredulous explanations for the actions taken against Collier combined with the facts establishing the *prima facie* case, it is respectfully suggested that Defendants= Motion for Summary Judgment with respect to Collier=s race and gender discrimination claims be denied.

**B.    Collier Has Established A Claim For Unlawful Retaliation Under Title VII and '1981 Because She Was Demoted, Denied A Promotion And Ultimately Discharged After She Filed An Internal Complaint Of Race Discrimination And Sex Discrimination**

To prove a *prima facie* case of retaliation, plaintiff must establish that:(1) she engaged in protected activity (here complaining about race and sex discrimination); (2) after engaging in protected activity, she was subjected to adverse employment activity; and (3) there is a causal relationship between the protected activity and the adverse employment activity.   *Delli Santi v. CNA Ins. Co.*, 88 F.3d 192, 198 (3d Cir. 1996); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989), *cert denied*, 493 U.S. 1023 (1990); *Quiroga v. Hasbro, Inc.*, 934 F.2d 497 (3d Cir. 1991).

Once the plaintiff makes out a *prima facie* case of retaliation, a presumption of liability arises and the burden then shifts back to the defendants to articulate a legitimate, non-retaliatory reason for its actions.   *McDonnell Douglas Corp. v. Green*, *supra*; *Burdine*, *supra*.  If the defendants fail to articulate a legitimate reason, judgment may automatically be entered for the plaintiff at this stage of the proceedings. *St. Mary's Honor Center v. Hicks*, *supra*. If the defendants do articulate a legitimate, non-retaliatory reason for the adverse action,  the burden then shifts back to plaintiff to show that the reasons stated by defendants were merely a pretext for retaliation (*i.e.* that the reasons given lack credibility or that the evidence taken as a whole demonstrates that the reasons given were not the real reason for the employer=s actions).   *Id.* The plaintiff has the ultimate burden of proving by a preponderance of the evidence that retaliation played a role in the employer's decision-making process and was a determinative factor in the outcome of that process. *Krouse v. American Sterilizer Co.*, 126 F. 3d 494, 500 (3d Cir.

23

1997).  Evidence of the plaintiff's *prima facie* case coupled with rejection of the defendants= articulated reasons for the adverse employment action will permit the factfinder to infer retaliation even without additional proof of retaliation.  *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000).

        1.      **Collier Established A *Prima Facie* Case Of Retaliation**

        a.      **Collier Engaged In Protected Activity**

Plaintiff has satisfied the first prong of her retaliation claim because:

(1)  She complained directly to Robins about Cipperman and filed several internal complaints of race and gender discrimination to Johnston.  (Collier Dep., Exhibit AD@, at pp. 121-122, 201-202, 375);

(2)  She directly complained to Lieb that her demotion was in retaliation for her complaining about discrimination.  (Exhibit AT@); and

(3)  She filed a Charge of Discrimination with the PHRC and the EEOC on January 3, 2001.  (A copy of Plaintiff's Charge of Discrimination filed with the PHRC is attached hereto and marked as Exhibit AZ@).

It is well settled that complaining directly to an employer about perceived discrimination or threatening to file a discrimination charge against an employer is protected activity.  *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754-55 (3d Cir. 1997), *cert. denied*, 522 U.S. 1147; *Clarkson v. Pennsylvania State Police Bureau of Liquor Control Enforcement*, No. 99-783, 2000 U.S. Dist. LEXIS 14673, at *14-16 (E.D. Pa. Oct. 10, 2000).  Likewise, protected activity includes opposing discriminatory conduct by filing an employment discrimination charge or complaint with a court, the EEOC, or state agency.

*Id.* Further,  the Third Circuit recognizes that "...informal protests of discrimination, such as complaints to management, rise to the level of protected activity.@ *McGraw v. Wyeth-Aerst Laboratories, Inc.*, 1997 WL 799437 at **7-8 (E.D. Pa. 1997) (*citations omitted*).

Additionally, to be protected, the complaining person must only have a reasonable, good faith belief that a violation existed. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996); *Welch v. Maritrans Inc.*, No. 00-2606, 2001 U.S. Dist. LEXIS 629, at *25-26 (E.D. Pa. Jan. 25, 2001).  In this regard, if the belief is reasonable, a person will be protected for opposing discrimination even if the underlying assertion of discrimination or wrongdoing is not successful.  *See Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997).

### b.    Collier Suffered Adverse Employment Actions

To establish that she suffered an adverse action, Collier must only demonstrate that she endured "a materially adverse change in the terms and conditions of employment." *Torres v. Pisano,* 116 F.3d 625, 639 (2nd Cir. 1997).  Under this standard, courts only require that the employer engage in conduct which affects the plaintiff's work, working conditions, or compensation. *Id.*  In making this determination, the employer's acts should be viewed collectively and not in isolation.  *Lafate v. Chase Manhattan Bank(USA)*, 123 F. Supp. 2d 773, 778 (D. Del. 2000).

An adverse employment action for purposes of establishing a retaliation claim includes, but is not limited to, a refusal to hire, a termination, a demotion, a denial of a promotion, a suspension, a denial of benefits, and unjustified negative evaluations. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997).  *See also McKnight v.*

25

*General Motors Corp.*, 908 F.2d 104, 111 (7th Cir. 1990) (finding that a threat of retaliation constitutes adverse action). A transfer to a position which an employer knows an employee cannot do or a transfer to an undesirable work shift may also constitute an adverse job action *even if there is no reduction in pay*. *See, e.g.*, *Mondzelewski v. Pathmark Stores, Inc.,* 162 F. 3d. 778, 787 (3d. Cir. 1998)(emphasis supplied); *Dilenno v. Goodwill Industries of Mid-Eastern Pa.*, 162 F.3d 235, 236 (3d Cir. 1998). On some occasions, an employer's conduct even after the employee has left employment may qualify as an adverse action. *Durham Life Insurance Company v. Evans*, 166 F.3d 139, 158 (3d Cir. 1999).

In the present matter, Collier was subjected to three distinct forms of adverse employment action: 1) she was removed from her position as Attorney and demoted to the position of Manager of Vendor Programs (Collier Dep., Exhibit AD@, at pp. 171, 181-182, 207)(Exhibit AT@); 2) she was not hired or promoted to the position of Director of Workplace Development (Collier Dep., Exhibit AD@, at pp.147-148,)(Exhibit AV@, at p.7); and 3) she was terminated (Exhibit AV@, at p. 9). Thus, Collier has satisfied the second element of her *prima facie* case.

Selectively disregarding the above, Defendants contend that Plaintiff cannot satisfy the element of adverse action because she did not suffer a reduction in pay or benefits in her new position as Manager of Vendor Programs. (*See* Defendants' Memorandum of Law, at pp. 15-16). This argument is without substantive merit because it ignores the clear reduction of responsibilities, the denial of the opportunity to practice law, and the presence of other forms of adverse action taken against her including Defendants=

failure to hire her for the position of Director of Workforce Development which would have resulted in a salary increase, allowed Collier to utilize her legal skills, and further her career goals. (Collier Dep., Exhibit AD@, at pp. 168, 402-403). (*See also* Exhibit V@, at pp. 5-6). Collier was also terminated from employment at SEI -- an event which is undisputably an adverse action. *See Robinson*, 120 F.3d at 1300.

Moreover, Defendants reliance on cases such as *Kantner v. U.S. Postal Service*, 1988 U.S. Dist. LEXIS 10747 (E.D. Pa. September 26, 1999); *Vogel v. Honeywell*, 1989 U.S. Dist. LEXIS 4958 (E.D. Pa. May 5, 1989); and *Sherrod v. Philadelphia Gas Works*, 209 F. Supp.2d 443 (E.D. Pa. 2002) to establish that there can be no adverse employment action in situations where there is no reduction in pay or benefits is entirely misplaced. Unlike here, these cases all involve circumstances wherein the Plaintiff was claiming a constructive discharge and the courts held that a re-assignment to another job with the same salary and benefits was not sufficient to establish a constructive discharge as a matter of law. *Sherrod*, 209 F. Supp. at 451 (assignment to a job which plaintiff was dissatisfied with does not amount to a constructive discharge); *Vogel*, 1989 U.S. Dist. LEXIS at *12 (plaintiff failed to establish that her resignation was a constructive discharge when she was offered another job with the same salary, benefits, salary grade and reporting level as the old position); *Kanter*, 1998 U.S. Dist. LEXIS at *9, 14 (relocation to an assignment with no desk or phone performing work below plaintiff's intellectual capability was not sufficient to treat plaintiff's resignation as a constructive discharge). Accordingly, Plaintiff has satisfied her burden of establishing that she suffered an adverse job action as a matter of law.

27

       **c.**    **Collier Has Established A Causal Link Between Her Complaints Of Race And Sex Discrimination And The Adverse Employment Actions Taken Against Her**

To establish the causation element , Collier is only required to establish that Defendants had reason to know of her protected activities before the adverse actions occurred. *Azzaro v. County of Allegheny*, 110 F.3d 968, 973-975 (3rd Cir. 1997). "Causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive. . . ." *Jalil* , 873 F.2d at 709; *Garvey v. Dickinson College*, 775 F.Supp. 788, 796 (M.D. Pa. 1991); *Robinson v. SEPTA,* 982 F.2d 892, 894-95 (3d Cir. 1993) (holding the evidence was sufficient to demonstrate retaliation for activities that occurred two years prior to the termination). Causation may also be proved through direct evidence. *See Azzaro,*110 F.3d at 973-974.

It is firmly established that evidence of "temporal proximity between the protected activity and the termination is sufficient to establish a causal link.@ *Woodson v. Scott Paper Co.*, 109 F.3d 913, 919-920 (3rd Cir. 1997) Further, no specific time parameters are required to establish temporal proximity and raise an inference of causation. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3rd Cir. 1997) (the absence of immediacy between the cause and effect does not disprove causation). Accordingly, evidence that a substantial period of time has passed is not legally conclusive proof that there was no causal link. *Krouse*, 126 F.3d at 503. *See also Klimiuk v. ESI Lederle, Inc.*, No. 99-3315, 2000 U.S. Dist. LEXIS 15647, at * 17-18 (E.D. Pa. Oct. 25, 2000).

In addition to timing, causation can be proved by evidence of antagonism by

the employer after the employee engaged in protected activity.  *Azzaro*, 110 F.3d at

973-974 (after complaining, employee was placed on a "hit list").  Similarly, causation may

be established by a change in demeanor towards the plaintiff.  *Mroczek v. Bethlehem Steel*

*Corp.*, No. 99-4049, 2001 U.S. Dist. LEXIS 6, at * 23-24 (E.D. Pa. Jan. 3, 2001).

Moreover, where the temporal proximity between the protected activity and adverse action

is not so close as to be "unusually suggestive" of causation, timing plus other evidence

may be relied upon to demonstrate causation.  *Farrell v. Planters Lifesavers Co.*, 206 F.3d

271, 280-81 (3d Cir. 2000).  As the *Farrell* Court set forth:

> Although timing and ongoing antagonism have
> often been the basis for the causal link, our case
> law clearly has allowed a plaintiff to substantiate
> a causal connection for purposes of the *prima*
> *facie* case through other types of circumstantial
> evidence that support the inference.    For
> example, a plaintiff may establish the connection
> by showing that the employer gave inconsistent
> reasons for terminating the employee.

*Id.* (*citing Waddell v. Small Two Products, Inc.*, 799  F.2d 69, 73 (3d Cir. 1986)).

In the present matter, there is sufficient evidence of temporal proximity and

antagonism by Cipperman, Johnston, and Laughlin for a jury to determine that a causal

link existed.  Additionally, the actions of the Defendant employer were continuous from the

time of her complaints in April 2000 through her termination and were apparently refueled

by her accusatory e-mails, internal and external filings, and a private mediation before a

respected former federal judge (wherein the allegations were rehashed over a full day

conference) held before her termination.

Specifically, Plaintiff initially complained in April of 2000.  (Collier Dep., Exhibit

AD@, at pp.121-122, 375). Plaintiff followed up her verbal complaint by asserting a written complaint of discrimination based upon race and gender on July 12, 2000. (Exhibit AQ@). Six days thereafter, Plaintiff was involuntarily removed from her position as attorney in the legal department and demoted to the position of Manager of Vendor Programs. (Collier Dep., Exhibit AD@, at pp. 181-182); (*See also*, Exhibit AR@). Plaintiff repeatedly complained about her removal to the position of Manager of Vendor Programs up until the time of her termination. (Collier Aff., Exhibit AI@). At about the time of her demotion, Plaintiff submitted an application for the position of Director of Workforce Development. Lindenauer, a Caucasian female who was less qualified for the position than Plaintiff, was hired for the position in or about November 2000. (Collier Dep., Exhibit AD@, at pp. 146-148). Beginning on or about August 9, 2000, McCullough, who was then vice-president and assistant secretary, began keeping tabs on Collier including monitoring when she would arrive and department to the office as well as reasons she took off from work. (Exhibit AV@, at p. 7). Collier continued to complain about discrimination and retaliation, and filed a Charge of Discrimination with the Pennsylvania Human Relations Commission on January 3, 2001. (Exhibit AY@). Ultimately, Collier was terminated in April of 2002 approximately one year after her PHRC Complaint, shortly after the unsuccessful mediation attempt, and within months of her continuous internal complaints of retaliation. (Collier Aff., Exhibit AI@); (Exhibit AV@, at p. 9).

Viewing the above circumstances collectively in a light most favorable to Collier, a jury could determine that she was subjected to adverse job actions and ultimately terminated as a result of her protests and complaints of discrimination to Johnston, Robins,

Lieb and the PHRC.  Accordingly, Collier has established the final element of her *prima*

*facie* case of retaliation.

> **2.    Collier Has Established Sufficient Evidence Which Proves That Defendants' Reasons For Demoting Her And Ultimately Terminating Her From Employment Were A Pre-Text For Retaliation.[7]**

As with her race and sex discrimination claim, Collier can defeat summary

judgment at the pretext stage by ₳pointing to some evidence, direct or circumstantial, on

which a fact finder can infer that defendants₌ articulated reasons are unworthy of belief

and that retaliation was more likely than not a motivating or determinative cause of their

actions.₌  *Woodson*, 109 F.3d at 920; *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d

326, 331 (3d Cir. 1995).  In order to meet this burden, Collier must show enough

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions to cast

substantial doubt upon Defendants₌ proffered reasons.  If Collier meets this burden, the

fact finder may conclude that retaliation was Defendants₌ true reason for its actions.

*Shaner v. Synthes (USA)*, 204 F.3d 494, 505-06 (3d Cir. 2000).  In the Third Circuit, Collier

is not required to present additional evidence of retaliation beyond her *prima facie* case to

survive a motion for summary judgment as long as she points to some evidence to

discredit the Defendants₌ reasons.  *Brewer*, 72 F.3d at 331.

Here, Defendants contend that they removed Collier from her attorney

position because ₳Plaintiff had unequivocally stated that she no longer wished to work in

---

[7]Plaintiff's proof of her *prima facie* case of discrimination and pretext argument contained in that section also demonstrates pretext in regard to the retaliation cause of action and is incorporated into the argument on this issue by reference.

the legal department.@  (Defendants' Memorandum of Law, at p. 17).  Defendants claim

that Collier was ultimately terminated Aas part of a reduction in force@ and summarily reject

Collier's position that her job would not have been eliminated if she was kept in her legal

position or hired for the Director of Workforce Development position.  (Defendants'

Memorandum of Law, at p. 21).  As set forth in the previous section and further discussed

below, Defendants' purported reasons for their actions are full of inconsistencies and must

be rejected.

First, the contention that Collier was reassigned pursuant to her own requests

is fraught with disparities.  Plaintiff never requested that she be transferred to the position

of Manager of Vendor Programs.  In fact, this position did not even exist until the time of

her transfer.  (Nagle  Dep., Exhibit AH@, at p. 41).  Plaintiff also never stated that she did

not want to remain in the legal department.  (Collier Dep., Exhibit AD@, at p. 385).  Collier

only advised Johnston that she could not continue working with Cipperman if he continued

to treat her unfairly.  (*Id.*, at p. 204).  However, she never requested to involuntarily be

moved from the legal department to a demotional non-legal position.  (*Id.*, at p. 207).

Moreover, the Defendants' position is undermined by Collier's written complaint to Lieb

regarding the retaliatory demotion, (Exhibit AR@) and her memorandum to Johnston

refuting these very same reasons proffered by Defendants.  (Exhibit AR@).

Second, Defendants' claim that they terminated Collier as part of a reduction

in force is doubtful because Defendants never offered Collier the opportunity to apply for

any other position within the company.  Additionally, Collier was transferred to this

Aeliminated@ position in the first place in retaliation for her complaints and would not have

32

been terminated had she not been transferred out of the legal department. (Collier Aff.,

Exhibit AI@, at &18).  Further, because the position never existed, a jury could conclude

that Defendants' created the position for purposes of removing Collier and had no intention

of keeping the position long term.

> Ultimately, the determination of whether Defendants' reasons are pre-textual

is an issue for the jury and cannot be ruled upon as a matter of law.  *See, Woodson, supra.*

 (the finding of retaliation involved jury assessment of witness credibility and demeanor).

Therefore, it is respectfully suggested that Defendants' Motion for Summary Judgment with

respect to Collier's retaliation claim under must be denied.

## IV.    <u>CONCLUSION</u>

> For the foregoing reasons, Defendants= Motion for Summary Judgment

should be denied in its entirety.

Respectfully submitted,

**SPECTOR GADON & ROSEN, PC**


By:

Alan B. Epstein, Esquire
Jennifer L. Myers, Esquire
Seven Penn Center
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
215-241-8886

Attorneys for Plaintiff

Dated: