**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

S. COURTNEY E. COLLIER,             :
                                    :
            Plaintiff,              :
                                    :
      v.                            :     Civil Action No. 02-3574
                                    :
SEI INVESTMENTS COMPANY, TODD :
CIPPERMAN, EDWARD LOUGHLIN,         :
RICHARD LIEB, KEVIN JOHNSTON,       :
KEVIN ROBINS and MARK NAGEL,        :
                                    :
            Defendants.             :
                                    :

**PLAINTIFF'S COUNTER-STATEMENT OF UNDISPUTED FACTS
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**SPECTOR GADON & ROSEN, P.C.**

Alan B. Epstein, Esquire
Jennifer L. Myers, Esquire
Attorneys for plaintiff

Seven Penn Center
1635 Market Street, 7th Floor
Philadelphia, PA  19103
215-241-8888

Pursuant to Local Rule 56.1, Plaintiff, S. Courtney E. Collier ("Plaintiff" or "Collier"), by her attorneys, hereby submits her separate Counter-Statement of Disputed Material Facts in support of her Response in Opposition to the Motion for Summary Judgment and Statement of Undisputed Facts filed by Defendant SEI Investments Company ("SEI"), Todd Cipperman ("Cipperman"), Edward Loughlin ("Loughlin"), Richard Lieb ("Lieb"), Kevin Johnston ("Johnston"), Kevin Robins ("Robins") and Mark Nagle ("Nagle") (hereinafter collectively "Defendants"). Defendants' Statement of Relevant Undisputed Facts is premised upon their erroneous and self-serving conclusion that Plaintiff has failed to provide any response to Defendants' First Request for Admissions.

As set forth in detail in the Certification of Alan B. Epstein, Esquire, which is attached hereto and marked as Exhibit "A", Plaintiff timely served her response to Defendants' First Request for Admissions by mail on April 24, 2003. (A true and correct copy of Plaintiff's Answers to Defendants' Request for Admissions is attached hereto and marked as Exhibit "B").[1] Accordingly, Plaintiff has not admitted any of the facts relied upon by Defendant in support of their Motion for Summary Judgment. Based on the following Statement of Disputed Material Facts, Defendants cannot meet their burden in establishing the absence of material facts in dispute.

I.      **STATEMENT OF RELEVANT UNDISPUTED FACTS** [2] These deposition portions

_____

[1] Plaintiff's counsel initially verified Plaintiff's Answers to Defendants' Request for Admissions. A written Verification was thereafter executed by the Plaintiff and presented to Defendants' counsel on May 22, 2003. (A true and correct copy of Plaintiff's Verification is attached as Exhibit "C").

[2] In support of her Counter-Statement of Undisputed Material Facts, Plaintiff has attached copies of referenced portions of the following depositions:
    1.      Deposition of S. Courtney Collier, Esquire ("Collier Dep.");
    2.      Deposition of Todd Cipperman ("Cipperman Dep.");
    3.      Deposition of Edward Loughlin ("Loughlin Dep.");
    4.      Deposition of Kevin Johnston ("Johnston Dep."); and

are marked respectively as Exhibits "D", "E", "F", "G" and "H").  Ms. Collier has also prepared an Affidavit ("Collier Aff."), which is attached hereto and marked as Exhibit "I".

### A.    Plaintiff's Employment With SEI

1.      Admitted.  It is admitted that Plaintiff began working at SEI as a contract attorney on assignment from a separate firm that her placed her under SEI's direction and control temporarily.  It is also admitted that Defendant Robins, who was then Senior Vice-President/General Counsel for SEI, hired Plaintiff as an SEI employee in the legal department at an annual salary of $75,000.  Plaintiff was offered a permanent position of employment by letter dated May 13, 1998.  (A copy of Plaintiff's letter of hire by Kevin P. Robins dated May 13, 1998, is attached hereto and marked as Exhibit "J").

2.      Admitted in part.  It is admitted that Plaintiff's salary at the inception of her employment with SEI was appropriate, in light of her skills and prior experience. Plaintiff did complain during her employment that she was not paid equally to her peers and has been provided a survey of SEI employees that demonstrate that she and other minority employees were paid less than their white counterparts.  (A copy of that survey is attached and marked as Exhibit "K").

3.      Admitted.  It is admitted that Mr. Robins transferred to a business position in SEI's family law unit in January, 2000 and Todd Cipperman became SEI's Senior Vice-President/General Counsel.

4.      Denied.  Plaintiff denies that she failed to perform her duties satisfactorily as an SEI attorney during the period of time that she worked in the legal department at SEI, both before and after Mr. Cipperman became her supervisor.  Plaintiff denied these facts in her Answers to Defendants' Request for Admissions.  (*See* Exhibit "B").  Contrary to Defendants' contentions, Plaintiff received favorable performance appraisals

---

5.      Deposition of Mark Nagle ("Nagle Dep.").

in 1998 and 1999, prior to the time that Cipperman became her immediate supervisor.

(A copy of performance appraisals prepared in June, 1998 and June 30, 1999 are

attached hereto and marked respectively as Exhibits "L" and "M"). In fact, Mr. Loughlin

even admitted that Plaintiff received a rating of Very Good in organization and

administrative effectiveness, and she was rated Excellent in the areas of team work,

initiative and resourcefulness, communications, attitude and cooperation.  (Loughlin

Dep., Exhibit "F", at pp. 26, 28).

> Q.    The overall performance levels were either at
>        the top of good or the base of very good, were
>        they not?
>
> A.    Correct.

(*Id.*).  Moreover, Plaintiff received positive feedback from various of her clients at SEI,

especially with respect to her work in the area of employment law and Robins

specifically advised Plaintiff that she was performing well. [3] (Collier Dep., Exhibit "D", at

p. 264);(Collier Aff., Exhibit "I").

**B.    Plaintiff's Internal Complaints**

5.    Denied as stated.  Plaintiff admits only that SEI maintained a policy

against discrimination and/or harassment in the workplace.  SEI Investments'

harassment policy is a writing which speaks for itself and Plaintiff denies Defendants'

characterization of the policy to the extent it conflicts with the terms of the policy

attached to Defendants' Statement of Undisputed Facts as Exhibit "E".  Plaintiff denies

that SEI maintained an effective policy against discrimination and/or harassment in the

workplace because she was discriminated against by Cipperman.  Specifically,

---

[3] Although Plaintiff recognized that Lori White was not happy with her, Ms. White's view was on a
personal level as a result of Plaintiff taking on more employment matters and exploring the
opportunity to work on the France project.  Plaintiff testified that Ms. White was not "unhappy
with [her] work on a professional level" and "that she had no issues with [her] work
performance...." (Collier Dep., Exhibit "D", at pp. 301-303).

Cipperman was disrespectful and hostile towards the Plaintiff while he did not treat other employees in the same manner. (Collier Dep., Exhibit "D", at pp. 115-118, 245-250). (*See also* Plaintiff's memorandum to Richard Lieb dated July 22, 2000 regarding unfair discriminatory treatment by Todd Cipperman which is attached hereto and marked as Exhibit "N"). Cipperman publicly berated Collier, unjustly criticized her work and criticized her abilities through e-mails which were unnecessarily and improperly sent to the entire legal department. (Collier Dep., Exhibit "D", at pp. 101-103, 106-107, 245-250). (*See also,* Collier Aff., Exhibit "I", ¶ 7). Cipperman also inequitably gave assignments to Collier and overloaded her with work while denying her requests for assistance. (Collier Dep., Exhibit "D" at pp. 235-238, 240). Cipperman similarly denied Collier stock options which were given to other individuals in the department and she was not given comparable raises as other individuals in the legal department. (Collier Dep., "Exhibit "D", at pp. 82, 87-89, 95-99). Cipperman excluded Plaintiff from a meeting amongst the attorneys in the department to perform his evaluation and Christine McCullough ("McCullough") excluded Plaintiff from a meeting regarding certain legal issues relevant to her work. (*Id.* at pp. 103-106) (*See also*, a copy of a memo from Plaintiff to McCullough dated July 7, 2000 regarding legal team meeting, which is attached hereto and marked as Exhibit "O"). Additionally, Cipperman moved Plaintiff to a secluded corner rather than allowing her to move her office to an area closer to her team members. (See Exhibit "N"). Cipperman further harassed Plaintiff by hostilely interfering with her attempts to build an employment website and berated the Plaintiff by telling her that she would never be selected to work on a company project in France. (Collier Dep., Exhibit "D", at pp. 106-108; Exhibit "N").

Plaintiff also denies that employees who report harassment are protected against retaliation. To the contrary, Plaintiff was involuntarily transferred and demoted to a non-legal position in retaliation for her complaining about discrimination and ultimately terminated. (Collier Dep., Exhibit "D", at pp. 181-182, 195-198).

6.     Denied as stated.  Collier made her initial internal complaint to Kevin Johnston, who was then the Senior Vice-President of the family wealth department, in April 2000 and she also complained to Robins.  (Collier Dep., Exhibit "D", at pp.121-122, 375).  Collier again asserted a verbal complaint to Johnston about the discriminatory treatment she had been receiving in or about June or July of 2000. (*Id.* at pp. 201-202);(Collier Aff., Exhibit "I").  Collier thereafter sent an e-mail to Johnston complaining about unfair treatment and a hostile work environment, and requested "that a neutral third party mediate this ugly situation."  (*See* E-mail to Kevin B. Johnston which is attached hereto and marked as Exhibit "P").  Collier sent another e-mail to Johnston on July 12, 2000 reasserting that she believed the treatment was discriminatory based on her race and gender.  (A copy of the July 12, 2000 E-mail from Collier to Johnston is attached hereto and marked as Exhibit "Q").

7.     Admitted.  It is admitted that Plaintiff requested "a neutral third party" to mediate between herself and Cipperman and that Johnston secured the services of Dr. Susan Shively.

8.     Admitted.  It is admitted that Plaintiff sent an electronic e-mail message to Mr. Johnston, in which she asserted that Mr. Cipperman's unfair treatment was discriminatory and based upon her race and gender.

9.     Denied.  Plaintiff asserted verbal complaints to Johnston regarding the discriminatory treatment prior to the July 12, 2000 memorandum.    (Collier Dep., Exhibit "D", at pp.201-202, 375).

10.     Denied.  Plaintiff denies that SEI promptly initiated an investigation of her complaints.  To the contrary, Collier was involuntarily transferred to a non-legal position after she complained on July 18, 2000 and Ed Loughlin did not begin his investigation until some time after August 8, 2000 when he returned from travel.  (See a copy of the July 18, 2000 letter to Collier from Johnston which is attached hereto and marked as Exhibit "R").  (*See also*, Memo to Johnston from Collier, dated July 18, 2000 and Memo

6

to Collier from Lieb, dated July 31, 2000, which are attached hereto and marked as Exhibit "S").  It is further denied that Loughlin ever investigated her Complaints.  To the contrary, he only sought to affirm the unfounded allegations of Plaintiff's poor work performance.  (Collier Dep., Exhibit "D", at pp. 171-172, 380-381).

11.    Admitted in part; denied in part.  It is admitted that Plaintiff was asked to provide a written summary of her claim and that SEI appointed executive vice-president Edward Loughlin to investigate her complaint of discrimination.  It is denied that SEI took reasonable steps to investigate and resolve Plaintiff's complaints of alleged discrimination.  To the contrary, instead of investigating Plaintiff's Complaints, Loughlin accused Plaintiff of engaging in wrongful behavior and did not gather information in order to conduct a thorough investigation.  (Collier Dep., Exhibit "D", at pp. 171-173, 380-381).

> Q.    What else are you critical of Mr. Laughlin for?
> A.    Again, for the fact that he spent most of his time, if not all of it, investigating me and my performance, rather than my allegations of discrimination.

(*Id.* at p. 380). Loughlin even admitted that he never spoke to anyone and specifically asked them about the nature of Collier's discrimination claims.  (Loughlin Dep., Exhibit "F", at p. 32).

12.    Denied as stated.  Plaintiff only admits that Loughlin was a member of SEI's senior management and that it was appropriate for a member of SEI's Earnings Per Share Committee to conduct the investigation.  Plaintiff also admits that she testified that she did not have any disputes with Mr. Loughlin and did not believe that he was biased against her on the basis of her race or gender **"at that time"**.  (Collier Dep., Exhibit "D", at pp. 176-177).  Plaintiff denies that Loughlin was the appropriate individual to conduct her investigation.  Loughlin was an executive vice-president responsible for institutional investors and had an accounting background, not human resources.

(Loughlin Dep., Exhibit "F", at pp. 6-12). He had no training in the areas of employment law or personnel matters. More significantly, he had no training in conducting investigations regarding employee grievances:

> Q.    Have you undergone any other form of training
>        to permit you training in the area of
>        investigation of employee grievances?
>
> A.    No.
>
> Q.    Other than Courtney Collier's investigation,
>        have you ever been assigned at SEI to
>        investigate employee grievances of any type?
>
> A.    No.
>
> Q.    Other than the seminar at SEI on sexual
>        harassment, have you ever attended any
>        courses, workshops or other training sessions
>        specifically involving the issue of gender based
>        or racial discrimination?
>
> A.    Not that I recall.

(*Id.*, at pp. 11-12). Further, Loughlin did not review any materials regarding the manner in which he should conduct an investigation or receive any form of advice from individuals outside SEI regarding the investigative process prior to conducting his investigation. (*Id.*, at pp. 22-23).

13.    Admitted.

14.    Admitted in part; denied in part. It is admitted only that on August 18, 2000, Loughlin completed his investigation and informed Plaintiff that he had found no evidence of race or gender discrimination. It is specifically denied that Loughlin performed a thorough investigation of Plaintiff's Complaint. Plaintiff unequivocally testified during her deposition that Loughlin did not conduct a thorough investigation and instead attempted to discover negative information regarding her rather than speak to individuals who she identified that would support her position. (Collier Dep., Exhibit "D",

at pp. 171-172, 380-381).  Loughlin never spoke to anybody regarding the nature of Collier's discrimination claims.  (Loughlin Dep., Exhibit "F", at p. 32).  Loughlin only spoke with Collier on one occasion for approximately one hour and never asked her to provide any witnesses regarding her allegations.  (*Id.*, at pp. 35-36).  (*See also* Collier Aff., Exhibit "I").  Loughlin also never discussed Collier's allegations regarding discrimination with Cipperman when they met, nor did he discuss Collier's allegation regarding discrimination with any other of the individuals he interviewed.  (Loughlin Dep., Exhibit "F", at pp. 38-40).  Instead, he solely focused on performance reviews and salary history rather than Collier's claims.  (*Id.*, at p. 24).  Moreover, Loughlin never discussed Collier's dissatisfaction with being removed from her position as a lawyer, nor her complaints of retaliation.  (*Id.*, at pp. 56-59).

    15.    Admitted in part; denied in part.  It is admitted only that Plaintiff was transferred to the non-legal position of Manager of Vendor Programs on July 18, 2000 to be effective July 24, 2000, not July 14, 2000.  Plaintiff denies that the position of Vendor Manager was "an open position".  To the contrary, this position never existed prior to her transfer and she was one of the first individuals to assume this role at SEI.  (Nagle Dep., Exhibit "H", at p. 41).  Plaintiff also specifically denies that she made it clear to management at SEI that she could not remain in the legal department.  (Collier Dep., Exhibit "D", at p. 385).    In sharp contrast, Plaintiff told Johnston that she did not want to continue working with Cipperman if he continued to treat her unfairly.  However, she stated that she could remain in the legal department if Cipperman would treat her fairly in the same manner as everyone else in the department.  (*Id.* at p. 204).  Plaintiff did not want to involuntarily be moved from the legal department.  (*Id.* at p. 207).  Although Plaintiff did state that she wanted to transfer in another department on one occasion, she was referring to a promotional position that was commensurate to her skills, education and experience where she could utilize her legal skills and fulfill her career goals.  (*Id.* at p. 212).

16.      Admitted in part; denied in part.  It is admitted only that Plaintiff's salary and fringe benefits remained the same when she was transferred to the Vendor Manager position.  It is specifically denied that Plaintiff's transfer to the position of Vendor Manager was not a demotion.  Plaintiff never made any such admission.  To the contrary, Plaintiff specifically advised Lieb that she believed that the position was a demotion and in retaliation for her complaining about discrimination.  (A copy of memoranda from Plaintiff to Lieb dated July 16, 2000 and July 18, 2000 are attached hereto and marked collectively as Exhibit "T").  In this position, Plaintiff lost her title as Vice-President and was completely prevented from serving in the capacity of an attorney.  (Collier Dep., Exhibit "D", at p. 197).  Collier was also transferred to a remote office three miles from company headquarters and grouped with primarily entry-level employees.  (*Id.*, at pp 173, 181-182).  Collier had to report to a manager with substantially less experience and credentials than her. In fact, Collier was relegated herself to the status of an entry-level employee as she now was required to log and maintain time attendance and employment records.  (Cipperman Dep., Exhibit "E", at pp. 124-125).

17.      Denied as stated.  It is admitted only that SEI modified the position description to reflect Ms. Collier's specific role in that position.  However, the demotional position carried non-legal responsibilities and was entry level in its nature.  (Collier Dep., Exhibit "D", at p. 197).

D.      **Plaintiff's Application for Promotions**

i.      **Workplace Development Director**

18.      Admitted.

19.      Admitted.

20.      Denied.  Plaintiff specifically denies that Alice Lindenauer ("Lindenauer") was qualified for the position of Workforce Development Director and that her own qualifications for the position of Workforce Development Director were not superior to

those of Lindenauer.  (Collier Dep., Exhibit "D", at p. 402).  To the contrary, as a lawyer with employment law experience and experience in affirmative action, Plaintiff was better qualified for the position.  Additionally, Plaintiff possessed a superior demeanor as compared to Lindenauer who had an explosive temper and often used profanities. (*Id.*, at p. 150).

21.    Denied.  The position of Director of Workforce Development required an individual with equal employment opportunity (EEO) and affirmative action experience. (Collier Dep., Exhibit "D", at pp. 402-403).  As a lawyer with an employment background, Plaintiff was more qualified for the position than Lindenauer whose background is in business management.  (*Id.* at p. 403). (*See* also, copy of Alice Lindenauer's resume  which is attached hereto and marked as Exhibit "U").  Moreover, Lindenauer did not have any experience in affirmative action.  (*Id.*).

22.    Admitted.

### ii.    Head Of Operations Mutual Funds Position

23-26.  Based on the information disclosed during discovery, Plaintiff has decided not to pursue her claim with respect to Defendants' failure to hire her for the position of Head of Operations Mutual Funds Position.

### E.    SEI's Reduction In Force

27.    Admitted.

## II.    COUNTER-STATEMENT OF RELEVANT DISPUTED MATERIAL FACTS

1.    SEI currently employs approximately 1,742 people and only ten percent of the ten percent SEI employees that are minorities are of African-American dissent. (*See* Summary Narrative Factual Statement attached to Plaintiff's Answers to Defendants' First Set of Interrogatories, a copy of which is attached hereto and marked as Exhibit "V").

2.    Collier was the lowest paid attorney in the legal department and was paid less than men in the department.  (Collier Dep., Exhibit "D", at pp. 86, 135).

3.     Collier's transfer to the position of Manager of Vendor Programs was entirely involuntary.  (Johnston Dep., Exhibit "G", at p. 70).

4.     Indicative of the demotional status after the transfer to Vendor Manager, as of October 20, 2000, she was listed as a consultant of SEI and not an employee. (Collier Dep., Exhibit "D", at pp. 450-451); (Exhibit "V").  (*See also*, a memorandum to Nagle and Katherine Stanton from Collier dated October 28, 2000, which is attached hereto and marked as Exhibit "W").

5.     During Plaintiff's employment, she was never invited to attend the President's Leadership Club.  Leadership Club is meeting of senior people in the company and non-senior employees from various department who are selected to attend.  (Collier Dep., Exhibit "D", at pp. 134-138; Cipperman Dep., Exhibit "E", at p. 143).  Selection to the Leadership Club is deemed a fringe benefit as it involves an all expense paid vacation for the employee selected and his/her family. (Exhibit "V").

6.     Cipperman only selected Caucasian employees in the legal department to attend the Leadership Club.  (Collier Dep., Exhibit "D", at pp. 136-139).

7.     The theme for the Leadership Club, which was selected by the SEI corporate events department and the wife of SEI president and CEO, Al West ("West"), were discriminatory and insensitive to African-American employees.  (*See* Exhibit "V"). (*See also*, deposition of Terri Ann Lindelow  ("Lindelow Dep.), which is attached hereto and marked as Exhibit "X").  Specifically, in 1999, the theme of the costume event held during the club was "Come as Favorite American"  and West came dressed as Robert E. Lee.  (Lindelow Dep., Exhibit "X", at pp. 12-14).

8.     In 2001, there was a southern oriented Civil War theme for the costume gala during the leadership club event and the club was held on a "plantation" in Machez, Mississippi.  A photograph of the club party held in 2001 depicting SEI employees insensitively dressed in antebellum and confederate army costumes was taken acknowledging the all black choir which sang spirituals to the attending SEI employees.

(A copy of the  photograph of is attached hereto and marked as Exhibit "Y").(*See also* Lindelow Dep., Exhibit "X", at p. 15; Cipperman dep., Exhibit "E", at pp. 146-147).

9.     Plaintiff and other females as well as African-American employees were also denied participation on important strategic bodies such as the Vision Task Force. [4] ( Exhibit "V").  In fact, Cipperman admitted that there were no individuals of African-American dissent selected to participate in the Corporate Vision and Strategy Team. (Cipperman Dep., Exhibit "E", at pp. 131, 132).

10.     As further indication of the general discriminatory animus driving the action of SEI, Robins advised Collier that he did not care about affirmative action. (Collier Dep., Exhibit "D", at pp. 338-339)

11.      The attached survey demonstrates that Plaintiff and other minorities were not paid equally to their Caucasian counterparts.  (*See* Exhibit "K").

                              Respectfully submitted,
                              **SPECTOR GADON & ROSEN, P.C.**


                    By:
                              Alan B. Epstein, Esquire
                              Jennifer L. Myers, Esquire
                              Attorneys for plaintiff

                              Seven Penn Center
                              1635 Market Street, 7th Floor
                              Philadelphia, PA  19103
                              215-241-8888

Dated:

---

[4] The Vision Task Force was convened to address challenges such as diversity in SEI leadership and review of SEI culture relating to gender. (Exhibit "V")