## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**S. COURTNEY E. COLLIER,**

                **Plaintiff,**

      v.                                          **Civil Action No.  02-3574**

**SEI INVESTMENTS COMPANY, TODD CIPPERMAN, EDWARD LOUGHLIN, RICHARD LIEB, KEVIN JOHNSTON, KEVIN ROBINS and** MARK **NAGLE,**

                **Defendants.**

## ORDER

      **AND NOW,** this _____ day of _____ **,2003,** upon consideration of Defendants' Motion in Limine for the exclusion of certain evidence, and any response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED.**  Plaintiff is precluded from offering testimony, evidence or argument concerning:

      1.      Allegations by current or former employees of SEI that SEI discriminated against them;

      **2.**      A confidential compensation analysis performed by SEI in 1999;

      **3.**      Evidence relating to the composition of SEI's Vision Task Force and the invitees to SEI's 2001 Leadership Club.

      **4.**      Evidence, including a photograph, relating to the theme of a costume event held during SEI's 2001 Leadership Club.

                        BY THE COURT:

                        _____

                        Savage, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S. COURTNEY E. COLLIER,<br><br>                              **Plaintiff,**<br><br>                    v.<br><br>SEI INVESTMENTS COMPANY, TODD<br>CIPPERMAN, EDWARD LOUGHLIN,<br>RICHARD LIEB, KEVIN JOHNSTON,<br>KEVIN ROBINS and MARK NAGLE,<br><br>                              **Defendants.** | Civil Action No.  02-3574      ʋ |

## DEFENDANTS' MOTION *IN LIMINE*

Defendants SEI Investments Company ("SEI"), Todd Cipperman, Edward Loughlin, Richard Lieb, Kevin Johnston, Kevin Robins and Mark Nagle (collectively "Defendants"), by their attorneys, Morgan, Lewis & Bockius, LLP, hereby move in limine for an Order in the form attached precluding Plaintiff from introducing at trial any testimony, evidence or argument (1) relating to allegations by other current or former employees of SEI that SEI discriminated against them; (**2**) relating to a confidential compensation analysis performed by SEI in 1999; (3) relating to the make up of SEI's Vision Team and the invitees to SEI's **2001** Leadership Club and (**4**) evidence, including a photograph of an event held during SEI's **2001** Leadership Club, relating to the theme of and costumes worn at certain Leadership Club events. The grounds upon which the instant Motion in Limine is based are as follows:

1.      Defendants have reason to believe that Plaintiff will attempt to offer at trial the testimony of other current and/or former employees of SEI who may contend that they were discriminated against while employed at SEI.  The allegations of such individuals involve different managers and decision-makers from those involved in this case, and arise from job

performance histories that are unique to those other individuals. Such evidence is entirely irrelevent to Plaintiffs individual disparate treatment claim and will lead to the confusion of issue before the jury. Moreover, its probative value is far outweighed by the prejudicial effect upon Defendants and the additional trial time that would result from the admission of such evidence.

2.      Defendants have reason to believe that Plaintiff will attempt to offer at trial testimony or other evidence concerning the compensation paid to certain **SEI** employees, as reflected in a confidential compensation analysis prepared in **1999,** in an attempt to demonstrate that the salaries of women and minorities at **SEI** were disproportionately low. Such evidence is irrelevent and statistically insignificant in view of the fact that there is no evidence concerning the relevant experience or qualifications of the individuals listed in the compensation analysis.

3.      Defendants have reason to believe that Plaintiff will attempt to offer at trial testimony or other evidence concerning the demographic composition of **(1)** members of **SEI's** Vision Team and **(2)** invitees to **SEI's** 2001 Leadership Club, in an attempt to demonstrate that a disproportionately low number of minority employees were invited to participate in **SEI's** Vision Task Force and **SEI's** Leadership Club. However, the evidence that Defendants expect Plaintiff to offer in this regard is in no way probative of Plaintiffs individual claims. Moreover, the evidence that Plaintiff may proffer simply consists of raw data regarding the individuals who were ultimately chosen for these groups, and does not provide any information as to the process or criteria used to select these particular individuals.

4.      Defendants have reason to believe that Plaintiff will attempt to offer at trial a photograph purportedly taken during an event that was part of **SEI's 2001** Leadership Club, and to introduce other evidence relating to a costume party held during Leadership Club

2

trip. This evidence is completely unrelated to Plaintiffs claims. Moreover, the evidence, particularly the photograph, is unfairly prejudicial and cumulative.

**WHEREFORE,** for the foregoing reasons, and those contained in the accompanying Memorandum of Law, Defendants respectfully request that this Court enter an Order barring Plaintiff from introducing the aforementioned testimony and evidence.

Respectfully submitted,

MICHAEL L. BANKS
JENNIFER CALABRESE BELL
MORGAN, LEWIS & BOCKIUS LLP
**1701** Market Street
Philadelphia, PA  **19103-2921**
**215.963.5387/5186**

Dated:  June **16,2003**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

.

S. COURTNEY E. COLLIER,

                **Plaintiff,**

     v.

SEI INVESTMENTS COMPANY, TODD
CIPPERMAN, EDWARD LOUGHLIN,
RICHARD LIEB, KEVIN JOHNSTON,
KEVIN ROBINS and MARK NAGLE,

             **Defendants.**

Civil Action No.  02-3574

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION *IN LIMINE*

## I.    INTRODUCTION AND RELEVANT FACTUAL BACKGROUND

Plaintiff was employed in SEI's Legal Department as in-house counsel, and later served in a Vendor Management position. These are the only two jobs that Plaintiff held at SEI. At the inception of Plaintiffs employment in the Legal Department, Plaintiff was supervised primarily by Kevin Robins, who was then SEI's General Counsel.

In January 2000, Mr. Cipperman became SEI's General Counsel and Plaintiffs direct supervisor. On July 12, 2000, Plaintiff lodged an internal complaint of discrimination with SEI, through Kevin Johnston, Process Leader, Compensation and Benefits. In her internal complaint, Plaintiff alleged that Mr. Cipperman was discriminating against her on the basis of her sex and race. SEI promptly investigated Plaintiffs allegations, appointing Edward Loughlin, an Executive Vice President at SEI, to lead the investigation. On August 18, 2000, Mr. Loughlin completed his investigation and informed Ms. Collier that after reviewing her complaint he found no evidence of race or gender discrimination.

On July **18, 2000,** after Ms. Collier indicated that she could no longer work in the legal department and that she wished to transfer into another job, SEI transferred her to the position of Vendor Manager.  Shortly before that, in June **2000,** Ms. Collier had applied for a position at SEI as a Workforce Development Director.  Ms. Collier was interviewed but not selected for that position, which was given to Alice Lindenauer.

Ms. Collier worked in the Vendor Manager position for approximately **21** months.  In April of **2002,** Ms. Collier's position in Vendor Management was eliminated as part of a broader reduction in force at **SEI,** and Ms. Collier's employment with SEI was terminated.

Plaintiff contends that Defendants discriminated and retaliated against her on the basis of her race and/or sex in violation of Title VII of the Civil Rights Act of **1964, 42** U.S.C. **$1981,** and the Pennsylvania Human Relations Act."    Specifically, Plaintiff claims that during her employment with **SEI** she was removed from her position in the Legal Department, and effectively demoted to a non-legal job (the Vendor Manager position), because of her race and gender, and because of complaints that she made about alleged discriminatory treatment.  Plaintiff also claims that she **was** denied a promotion to the position of Director of Workforce Development because of discrimination and retaliation.  Finally, Plaintiff claims that that termination of her employment in April 2002 as part of a larger reduction in force, was actually motivated by retaliation against her for filing her internal complaint.

Defendants have reason to believe that Plaintiff will attempt to introduce at trial evidence that has nothing to do with Plaintiffs alleged demotion, or any of her claims in this case,

---

**1/**    Defendants have moved for summary judgment.  As of the filing of this Motion in Limine, the summary judgment motion is still pending.

including evidence relating to other current and former SEI employees who may contend that they have been discriminated against at SEI.

Their claims, of course, are not at issue here. Defendants also have reason to believe that Plaintiff will attempt to introduce at trial confidential compensation analysis performed at SEI in 1999. Not only is the bulk of this document unrelated in any way to Plaintiffs former position in SEI's legal department, but the small portion that does relate to the legal department contains information regarding legal department salaries during a period of time when, as Ms. Collier has admitted, she did not believe that she was being discriminated against. Moreover, the compensation analysis is in no way probative of the issue of whether Ms. Collier or anyone else at SEI was fairly compensated at SEI. It provides only raw data concerning employees' titles and salaries, and does not take into account important variables such as experience, responsibilities, or level of performance.

In addition, Defendants believe that Plaintiff will attempt to utilize evidence relating to the composition of SEI's Vision Task Force and the composition of the group of invitees to SEI's Leadership Club to establish that minorities are unrepresented in those groups. However, the raw data provided by the list of members and invitees of these groups is not probative to Plaintiff's claims, and will be unfairly prejudicial to Defendants. Similarly, SEI believes that Plaintiff will attempt to introduce a photograph of an event that took place during SEI's 2001 Leadership Club trip and other evidence relating to theme of that event. This evidence also lacks probative value and will be unfairly prejudicial and cumulative to Defendants.

## II.  ARGUMENT

### A.  The Legal Evidentiary Standard.

Under Federal Rules of Evidence 401 and 402, evidence that is not relevant should be excluded at trial. Federal Rule of Evidence 401 states that: "'Relevant evidence' means evidence

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Because [Rule 401] makes evidence relevant 'if it has a tendency to prove a consequential fact,' it follows that evidence is irrelevant only when it has no tendency to prove a consequential fact." Blancha v. Raymark Indus., 972 F.2d 507, 514 (3d Cir. 1992) (citation omitted).

Rule 403 of the Federal Rules of Evidence provides that even relevant evidence may be excluded if it is unduly confusing, misleading, or unfairly prejudicial. The rule calls for a balancing test: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, **or** needless presentation of cumulative evidence." Fed. R. Evid. 403. **A** trial court has broad discretion to exclude evidence under Rules 402 and 403, and will only be reversed for an abuse of that discretion. Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc), cert. denied, 117 **S.** Ct. 2532 (1997).

**B.      The Court Should Exclude Evidence Regarding The Subjective Beliefs Of Other SEI Employees That They Were Subjected to Discrimination.**

Throughout discovery, Plaintiff has alluded to alleged discrimination against other employees. The Court should preclude Plaintiff from introducing evidence of such alleged discrimination, because it is irrelevant to Plaintiffs claims and unfairly prejudicial. Specifically, in Plaintiffs opposition to Defendants' Motion for Summary Judgment, Plaintiff makes numerous references to "discriminatory actions" against unnamed female and African-American employees. See Pls. Mem. of Law at p. 20. In addition, in Plaintiffs responses to Defendants' Interrogatories, Plaintiff listed a number of individuals, who she asserted, "can attest to the

4

pattern and practice of discrimination and harassment against minority and female employees." See Plaintiffs Objections and Answers to Defendants' First Set of Interrogatories Directed to Plaintiff at No. 3, attached hereto as Exhibit A. Plaintiff has also referred to two former SEI attorneys: Deirdre Callahan and Cynthia Parrish. According to Plaintiffs Affidavit in Opposition to Defendants' Motion for Summary Judgment, "Cipperman additionally harassed Cynthia Parrish, who was another African-American female attorney in the group, and indicated to her at one point that he was going to hire a Compliance Attorney who would report to her on compliance matters, but he would pay the attorney reporting to her more than he would pay her as the supervisor.'' Affidavit of Courtney Collier, dated June **4,2003,** attached hereto as Exhibit B. As to Ms. Callahan, Plaintiff has produced documents relating to Ms. Callahan's complaints regarding SEI's Leadership Club and has identified Ms. Callahan in several documents as a potential witness. See Email from Deirdre Callahan to Richard Deak, dated February 10,2001 **(P00225),** attached hereto as Exhibit C.

In this individual race and sex discrimination and retaliation action, Plaintiff bears the ultimate burden of proving by a preponderance of evidence that **she** was the victim of intentional race and/or sex discrimination. In order to prevail, Plaintiff must demonstrate that the reasons articulated by SEI for the employment decisions at issue were a mere pretext for intentional race or gender discrimination, **and** that the real reason for the employment decision was impermissible race or gender bias or retaliation. St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. **2742,2752 (1993).** In a case such as this, the focus of the Court and the jury must be upon the reason articulated by the employer for the adverse employment actions.

Courts routinely bar the testimony of co-workers regarding alleged discrimination perpetrated against them in individual disparate treatment cases. Courts have reasoned that the

fact that another person claims to have suffered discrimination during his or her employment makes it no more or less likely that the plaintiff suffered discrimination. Haskell v. Kaman Corp., 743 F.2d 113, 122 (2d Cir. 1984) (former employees' testimony about the circumstances of their terminations is not relevant to plaintiffs individual claim of disparate treatment); Franco-Rivera v. Chairman of Bd. of Dirs. of FDIC, 751 F. Supp. 13, 14 n. 1 (D.P.R. 1990) (same).

Even if testimony from other employees concerning their personal experiences with SEI had any nominal relevance to Plaintiffs disparate treatment claim, the Court should nonetheless preclude the evidence pursuant to Rule 403. Any possible relevance of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay associated with the introduction of such evidence. For example, in Plemer v. Parson-Gilbane, 713 F.2d 1127, 1138-39 (5th Cir. 1983), the court held that evidence of another employee's complaint alleging sex discrimination and unequal pay (the same allegations leveled by the plaintiff) was properly excluded under Rule 403 because its "attenuated relevance" was far outweighed by its tendency to create disputes over collateral issues unrelated to the plaintiffs case. As the Plemer court explained, when a defendant is forced to dispute or explain evidence regarding unrelated charges of discrimination, "'new issues will arise as to the occurrence of the instances and the similarity of conditions, new witnesses will be needed whose cross examination and impeachment may lead to further issues; and ... thus the trial will be unduly prolonged.'" Id. at 1139 n. 11 (citation omitted).

Likewise, in Moorehouse v. Boeing Co., 501 F. Supp. 390, 392 (E.D. Pa.), aff'd, 639 F.2d 774 (3d Cir. 1980), the plaintiff sought to introduce the testimony of five former employees regarding the circumstances surrounding their own layoffs in support of his claim of age

discrimination. The,court excluded the evidence on the grounds of confusion of the issues and

unfair prejudice. Id. at 392. Following a jury verdict for the employer, the plaintiff moved for a

new trial, arguing, *inter alia*, that the court had improperly excluded the testimony of the former

employees. Id. at 391-92. Denying the plaintiffs motion, the Court held that unfair prejudice,

confusion of issues, misleading the jury, undue delay, waste of time and needless presentation of

cumulative evidence would have resulted had the employees been permitted to testify. The court

reasoned:

> Had the Court permitted each of the proposed witnesses to testify about
> the circumstances surrounding his own layoff, each, in essence, would
> have presented a *prima facie* case of age discrimination. Defendants
> then would have been placed in the position of either presenting the
> justification of each witnesses' layoff or of allowing the testimony to
> stand unrebutted. This latter alternative, of course, would have had an
> obvious prejudicial impact on the jury's consideration of [plaintiffs]
> case. To have pursued the former option, defendants would have been
> forced, in effect, to try all six cases together with the attendant confusion
> and prejudice inherent in that situation.

Id. at 393 (footnote omitted). See also Sorba v. Pennsylvania Drilling Co., 648 F. Supp.

292, 293 (W.D. Pa. 1986) (excluding evidence concerning discharges of two former co-workers

where "[alllowing evidence of these incidents would require the trying of three discrimination

cases"); rev'd on other grounds, 821 F.2d 200 (3d Cir. 1987), cert. denied, 484 U.S. 1019 (1988);

McWhorter v. City of Birmingham, 906 F.2d 674, 679 (1 lth Cir. 1990) ("the admission of

testimony relating to other police officers' grievances against [the police chief] could have

resulted in a series of mini-trials centering on the employment history of each officer");

McCleland v. Montgomery Ward & Co., No. 95 C 23, 1995 WL 571324, at *3-*4 (N.D. Ill.

Sept. 25, 1995) (excluding under Rules 402 and 403 sexual harassment complaint brought by

other employee because, inter *alia*, the conduct of which the co-worker complained occurred six

7

.

months before plaintiffs alleged harassment and would necessitate a "trial within a trial" on an

issue collateral to plaintiffs claim). <u>Goff v. Continental Oil Co.</u>, 678 F.2d 593, 596-97 (5th Cir.

1982) (concluding, in claim of individualized disparate treatment, that testimony of other

employees regarding their treatment by the employer was irrelevant: "[a]ll the witnesses could

have testified to was their own individualized dealings with [the employer] .... Because this

testimony would not have related to the issue of whether [the plaintiff] suffered discrimination,

the court did not err in refusing to admit this testimony"); <u>Schrand v. Federal Pac. Elec. Co.</u>, 851

F.2d 152, 156 (6th Cir. 1988) (probative value of testimony of terminated employees

substantially outweighed by danger of unfair prejudice); <u>Weir v. Litton Bionetics, Inc.</u>, 43 Fair.

Emp. Prac. Cas. (BNA) 663, 1987 WL 12354 at *2 (D. Md. Mar. 16, 1987) (co-plaintiffs not

permitted to testify at each others separate trials because of "potential dangers of jury confusion

and prejudice to the defendant").

If evidence regarding alleged discrimination against other employees is introduced at trial

it would lead to a "trial within a trial" on those claims. Accordingly, Defendants respectfully

request that the Court preclude such evidence.

Finally, under Rule 404(b), the Court should exclude testimony regarding the

circumstances surrounding these employees' claims of discrimination. Such testimony would

amount to no more than anecdotal evidence of an alleged proclivity to discriminate to show

action in conformity therewith. Rule 404(b) plainly prohibits the use of such "character"

evidence. <u>Coletti v. Cudd Pressure Control</u>, 165 F.3d 767, 776 (10th Cir. 1990); <u>McCluney v.</u>

<u>Joseph Schlitz Brewing Co.</u>, 728 F.2d 924, 929 (7th Cir. 1984).

**C.     The Court Should Exclude Evidence Relating To A Confidential Compensation Analysis Performed By SEI In 1999.**

Based on Plaintiffs response to Defendants' Motion for Summary Judgment, it appears that Plaintiff intends to introduce into evidence information relating to a confidential compensation analysis'' performed by SEI in 1999, apparently in an effort to demonstrate a disparity between the salaries paid to minority and non minority employees. **See** Confidential Analysis, P0032 1-POO326, P0033 1-POO349, attached hereto as Exhibit D. The compensation analysis consists of a list of Job Codes and names, along with salaries for each listed individual. **See** Exhibit D. In addition, for each department, the analysis provides a "min average" salary and a "non min" average salary. **See** Exhibit D.

Presumably, Plaintiff intends to have the jury speculate about the significance of this data, and to conclude that SEI paid equally qualified and experienced individuals different amounts based upon whether their minority or non minority status. However, the compensation analysis at issue is a wholly inadequate barometer of intentional race discrimination and should be precluded by the Court.

At the outset, it is important to note that much if not all of analysis is completely irrelevent to Plaintiffs claims. Plaintiff has explicitly admitted that she was compensated fairly during her employment with SEI. **See** Defendants' First Requests for Admissions, No. 2,

---

2/     Plaintiff has also produced numerous documents related to SEI's Affirmative Action Program. Defendants have no reason to believe Plaintiff intends to introduce those documents, which would likewise be irrelevent to Plaintiffs claims. However, if Defendants are notified that Plaintiff does intend to utilize such documents at trial, they would object to their admission at trial and seek leave of Court to move to exclude the documents.

attached hereto as Exhibit E; Plaintiff's Answers to Defendants' Requests for Admissions, No. 2, attached hereto as Exhibit F.

Moreover, the document is not related to any time period at issue in this litigation. Plaintiff has testified repeatedly that she was satisfied with her initial treatment and salary at **SEI.** See Deposition of **S.** Courtney E. Collier, at 270-73, attached hereto as Exhibit G.  Plaintiffs claims center around the time between September 1999, when Todd Cipperman began to transition to the position of General Counsel, and July 2000, when Plaintiff was transferred to the Vendor Manager job.  See Collier Dep. at 100-107. This compensation analysis was clearly based upon salaries in effect before June 1999, when Plaintiffs salary was raised to $90,000 per year.  The document in question lists Plaintiff's salary as $75,000 per year.  See Personnel Action Forms dated 05/98 and 07/99 (D0034, D0035), attached hereto as Exhibit **O;** Exhibit D.

In addition, the analysis covers many different **SEI** departments, including the Legal Department, where Plaintiff was employed at the time.  See Exhibit D.  Salary data relating to departments outside of those that Plaintiff worked in at a particular time is completely irrelevent to Plaintiffs individual claims, as the individuals in those departments are supervised by different individuals, have different titles and literally may have nothing in common with Plaintiff except general employment at one time at SEI.   See Lamphere v. Brown University, 685 F.2d 743, 746-47 (1st Cir. 1982).

Putting aside these threshold problems, the "analysis" at issue is severely flawed.  Even if the analysis were timely and pertained only to the legal department and individuals who held the same title as Plaintiff, the analysis has little probative value.  While competent statistical evidence may be admissible to prove intentional discrimination in limited circumstances not present here, courts have adopted rigorous standards for the admission of such data in disparate

treatment cases.  To be admissible, the Court must find that the methodology and the

"explanatory power" of the statistical evidence is "sufficient to permit an inference of

discrimination."  Simpson v. Midland-Ross Corp., 823 F.2d 937, 943-44 (6th Cir. 1987).  If the

statistical evidence which the plaintiff wishes to introduce does not permit an inference of

discrimination, the evidence is irrelevant and should be excluded.  Id.

  Courts routinely find that statistical evidence has no probative value when the proffered

data do not take into account variables which may affect certain disparities.  Thus, to be

admissible, a plaintiff must demonstrate a disparity between similarly situated individuals for

reasons that are not explained by non-discriminatory criteria, such as experience, skill,

differences in responsibilities and other factors.  See Mayor of Philadelphia v. Educational

Equality League, 415 U.S. 605, 620-21 (1974) (rejecting "simplistic percentage comparisons" as

proof of discrimination).  Where, as here, individuals listed from each department in the

compensation analysis have different job responsibilities, qualifications and levels of experience,

any attempt to draw an inference of discrimination based upon raw disparities between salaries

should be rejected . See Mazus v. Dept. of Trans., 629 F.2d 870, 875 (3d Cir. 1980) ("statistical

comparisons, if they are to have any worth, must be between comparable groups and free from

variables which would undermine the reasonableness of discrimination inferences to be drawn");

Doan v. Seagate Tech., Inc., 82 F.3d 974, 979 (10th Cir. 1996), cert. denied, 117 S.Ct. 684

(1997) (excluding plaintiffs statistical evidence because it did not attempt to eliminate

nondiscriminatory explanations for disparities).

  The "statistical" evidence offered by Plaintiff simply is not probative of discriminatory

intent or unlawful compensation policies.  Plaintiff has failed demonstrate that the raw data

reflecting names and salaries of employees are indicative of any discriminatory animus.  See

Exhibit D. Plaintiff has failed to adduce any evidence as to the job responsibilities, qualifications or experience levels of the individuals listed on the compensation analysis. See Exhibit D. Instead, Plaintiff focuses solely upon the raw numbers from an irrelevant time period, and completely ignores legitimate, non-discriminatory explanations for any alleged disparities. In short, Plaintiffs "statistical" evidence utterly fails to establish that SEI gave preferential treatment to nonminorities. Accordingly, Defendants respectfblly request that the Court preclude Plaintiff from introducing this "statistical" evidence at trial.

**D.    The Court Should Exclude All Evidence Relating To The Composition Of SEI's Vision Task Force And The Composition Of The List Of Invitees To SEI's Leadership Club.**

Defendants anticipate that Plaintiff will attempt to introduce evidence relating to the composition of SEI's Vision Task Force and the composition of a list of Invitees to SEI's 2001 Leadership Club. See List of Vision Task force participants, Bates No. P00259; attached hereto as Exhibit H; Email from A. West to SEI Corporate Headquarters offices dated February 9, 2001 and attached list of Leadership Club invitees, Bates Nos. P00220-P00224, attached hereto as Exhibit I. These lists reflect those employees who play leadership roles at SEI. Plaintiff has made notations on both of these lists relating to her belief regarding the ethnic or racial origin of each of the members/invitees. See Exhibit H; Exhibit I. Defendants anticipate that Plaintiff will attempt to use these lists to show that minorities are underrepresented in these groups.

However, the lists that Plaintiff has produced are not probative of the issues in Plaintiffs case. This cases is not about whether women or minorities as a whole are represented appropriately at SEI. To the contrary, this is an individual discrimination and retaliation case involving very specific events and allegations. Plaintiff has never alleged that she should have been chosen for SEI's Vision Team nor has asserted that she should have been invited to a

Leadership Club meeting.  Indeed, these lists do not provide any information about Plaintiff, or why Plaintiff was not chosen to participate in the Leadership Club.

Even if the general data regarding the Leadership Club and the Vision Team were relevant to Plaintiffs claims, these lists only include raw data.  **See** Exhibit H; Exhibit I.  They do not contain any information regarding the general decisionmaking process for these two groups or the pool of individuals that were considered for membership in these two groups.  **See** Exhibit H; Exhibit I.

Moreover, the lack of probative value to Plaintiffs claims is far outweighed by the potential prejudice to Defendants in this matter if Plaintiff is allowed to introduce these two lists. The data provided in the lists provides no information regarding the selection process for these groups and may mislead the jury into making an assumption about the selection process on the basis of incomplete information.

      **E.**      **The Court Should Exclude All Evidence Relating To A Photograph Of An Event Held During SEI's 1999 Leadership Club Trip.**

Plaintiff has also focused upon another aspect of Leadership Club during the discovery period of this litigation, repeatedly referencing a photograph taken at one event during SEI's 2001 Leadership Club trip in Mississippi.  **See** Photograph, Bates No. P0609, attached hereto as Exhibit J.  The photograph, which depicts a cocktail hour outside of the Dunleith Plantation in Natchez, Mississippi, includes images of Leadership Club invitees in traditional antebellum costumes, several groups of entertainment, including children performing a traditional local pageant dance, and a group of church choir singers in a balcony above the main event.  **See** Deposition of Terry Ann Lindelow, at 26-29, portions of which are attached hereto as Exhibit K; Deposition of Mark Nagle, at 83-84; portions of which are attached hereto as Exhibit L;

13

Deposition of Kevin Johnston at 88, portions of which are attached hereto as Exhibit M;

Deposition of Todd Cipperman at 143-147, portions of which are attached hereto as Exhibit N.

Defendants anticipate that Plaintiff will attempt to use the photograph to suggest that the theme of the event depicted in the photograph was insensitive to minorities because some of the attendees wore pre-Civil War southern clothing, or because members of the church choir on the balcony were African-American. As explained by Defendants without contradiction, however, the event was not planned by any of the decision-makers about whom Ms. Collier has complained. The party was held in an evening during a river boat tour that was assembled by an outside tour operator. It occurred almost nine months after Ms. Collier was transferred out of the Legal Department, and has no bearing on any of her claims. **See** Plaintiffs Response to Defendants' Motion for Summary Judgment. Although Plaintiff has focused much attention on the costumes worn by SEI employees, these costumes are in no way reflective of any kind of a corporate policy, as participants picked their own costumes for the event to coincide with an antebellum theme. **See** Lindelow Dep., at 13; Nagle Dep., at 92-93.

In short, both the composition of the 2001 Leadership Club and the photograph have no relevance to Plaintiffs claims. **See** Exhibit J. Evidence regarding the theme of the Leadership Club party that Plaintiff did not attend is even more irrelevant.

However, admission of the photograph and related evidence would be unfairly prejudicial to Defendants and potentially inflammatory. Although the Federal Rules of Evidence allow for the admission of photographs, they may be excluded if their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Adams v. Pro Transportation, No. 8:00CV558, 2002 WL 801911, at *1 (D. Neb. Jan.

14

9,2002) (citing Rule **403).**  Here, the photograph at issue, coupled with Plaintiffs

characterizations, could unfairly prejudice Defendants by suggesting falsely that SEI embraces a

pre-Civil War southern mentality.  <u>See</u> Exhibit J.  Defendants should not be punished for holding

a corporate function on a Mississippi riverboat.  **Any** attempt to link that to an allegation of

racism is unfair, inflammatory and illogical.  Accordingly, the photograph, is both unfairly

prejudicial and cumulative and should be excluded.  <u>See</u> Exhibit J.

**111.**    **CONCLUSION**

For any and all of the foregoing reasons, Defendants respectfully request that the Court

grant their motion to exclude: (1) evidence concerning allegations by other current or former

employees of SEI that SEI discriminated against them; (2) evidence relating to a confidential

compensation analysis performed by SEI in 1999; (3) evidence relating to the composition of

SEI's Vision Task Force and composition of the list of invitees to SEI's 2001 Leadership Club

trip; and **(4)** a photograph and other evidence relating to an event held during SEI's 2001

Leadership Club and the theme of that event.

Respectfully submitted,

MICHAEL L. BANKS
JENNIFER CALABRESE BELL
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
**2 15.963.5387/5186**

Dated:  June 16,2003

## CERTIFICATE OF SERVICE

I, Jennifer Calabrese Bell, hereby certify that a true and correct copy of

Defendants' Motion in Limine, and supporting Memorandum of Law, has been served

via hand delivery, this 16th day of June, 2003, upon the following:

>
> Alan B. Epstein, Esquire
> Seven Penn Center
> 1635 Market Street, 7th Floor
> Philadelphia, PA  19103

_____
Jennifer Calabrese Bell

Date:  June 16, 2003