## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

S. COURTNEY E. COLLIER,

                         **Plaintiff,**

     v.

SEI INVESTMENTS COMPANY, TODD
CIPPERMAN, EDWARD LOUGHLIN,
RICHARD LIEB, KEVIN JOHNSTON,
KEVIN ROBINS and MARK NAGLE,

                        **Defendants.**

Civil Action No.  02-3574

### DEFENDANTS' PRE-TRIAL MEMORANDUM

Defendants SEI Investments Company ("SEI"), Todd Cipperman, Edward Loughlin,

Richard Lieb, Kevin Johnston, Kevin Robins and Mark Nagle (collectively "Defendants"), by

and through their counsel, hereby submit their Pre-Trial Memorandum, in accordance with Rule

16.1 (c ) of the Local Rules of Civil Procedure of the United States District Court for the Eastern

District of Pennsylvania and this Court's November 20, 2002 Scheduling Order.

### I.     NATURE OF THE ACTION AND BASIS ON WHICH THE JURISDICTION OF THE COURT IS INVOKED

Plaintiff Courtney Collier ("Plaintiff") claims that Defendants discriminated against her

on the basis of her race and/or gender and retaliated against her for filing an internal complaint of

discrimination by denying her a promotion, transferring her to a new position and ultimately

terminating her employment with SEI.  In Count I, Ms. Collier alleges that SEI violated Title VII

of the Civil Rights Act of 1964 by discriminating and retaliating against her on the basis of her

race.  In Count II, Ms. Collier alleges that Defendants violated 42 U.S.C. §1981 by

discriminating and retaliating against her on the basis of her race.  In Count III, Ms. Collier

alleges that Defendants violated the Pennsylvania Human Relations Act by discriminating and retaliating against her on the basis of her race. In Count IV, Ms. Collier alleges that SEI violated Title VII of the Civil Rights Act of 1964 by discriminating and retaliating against her on the basis of her sex. Finally, in Count V, Ms. Collier alleges that Defendants violated the Pennsylvania Human Relations Act by discriminating and retaliating against her on the basis of her sex.

This Court has subject matter jurisdiction over Plaintiff's Title VII claim pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, it has jurisdiction over Plaintiff's Section 1981 claim pursuant to federal question jurisdiction pursuant to 28 U.S.C. § 1331, and it has jurisdiction over Plaintiff's PHRA claim pursuant to 28 U.S.C. § 1367.

## II.    BRIEF COUNTER-STATEMENT OF FACTS

The facts established to date in this litigation, including several critical admissions made by Plaintiff as a result of her failure to provide timely or adequate responses to Defendants' Requests for Admissions,[1] demonstrate that Plaintiff cannot sustain her claims for race and gender discrimination or retaliation.

The evidence at trial will show that: (1) Plaintiff's transfer to the position of Vendor Manager was not a demotion. It was motivated not by discrimination or retaliation, but by

---

[1]    As set forth in detail in Defendants' Opposition to Plaintiff's Motion for Withdrawal or Amendment of Admissions, notwithstanding Plaintiff's assertion that Plaintiff timely served responses to Defendants' Requests for Admissions, there are serious questions about whether Plaintiff's contentions in this regard are credible. Accordingly, because Plaintiff likely failed to provide timely responses and the responses that were eventually provided did not meet the basic criteria of Rule 36, all of the facts set forth in Defendants' Requests for Admissions should be deemed admitted. Alternatively, Defendants have requested that the Court order an expert examination of the computer on which Plaintiff's counsel typed the responses, so that questions about the date of the creation of the document can be answered.

Plaintiff's own repeated requests to leave the Legal Department; (2) SEI responded appropriately and effectively to Plaintiff's complaints of discrimination; (3) SEI's selection of Alice Lindenauer for the position of Director of Workforce Development was made solely on the basis of Ms. Lindenauer's qualifications; (4) the termination of Plaintiff's employment as part of a reduction in force that included the elimination of Plaintiff's department was wholly unrelated to her race or gender, or her previous internal complaint of discrimination.

### A.    Plaintiff's Employment In SEI's Legal Department

Plaintiff began to work for SEI in February 1998 as a contract attorney, i.e, she was employed by an outside company and placed with SEI on a temporary assignment. In June 1998, Kevin Robins, then Senior Vice President/General Counsel for SEI, hired Ms. Collier as an SEI employee to work in the Legal Department. Ms. Collier's responsibilities included legal oversight of marketing and employment issues. For her first year and a half at SEI, she was supervised jointly by Lori White, who was an attorney in the Legal Department, and Mr. Robins.

In January 2000, Mr. Robins transferred to a business position in SEI's Family Wealth Unit, and Todd Cipperman became SEI's Senior Vice President/General Counsel. Both before and after Mr. Cipperman became Plaintiff's supervisor, Plaintiff had numerous performance problems. For example, Ms. Collier displayed poor judgment and an inability to balance business concerns and legal risks in giving legal advice. Additionally, Ms. Collier had difficulty working with others and often neglected important responsibilities in order to do work that she preferred.

Mr. Cipperman and others in the Legal Department addressed these various performance issues with Plaintiff in a constructive and professional matter, in an effort to improve the quality of Ms. Collier's work. However, Plaintiff refused to accept these constructive criticisms, often

reacting in an angry and accusatory fashion. In July 2000, Ms. Collier accused Mr. Cipperman of discrimination.

**B.    Plaintiff's Internal Complaint of Discrimination**

On July 12, 2000, Ms. Collier lodged an internal complaint of discrimination with SEI, through Kevin Johnston, then Process Leader, Compensation and Benefits. As soon as SEI received this complaint, it immediately took steps to investigate Ms. Collier's allegations. First, SEI requested that Ms. Collier provide details of her allegations, so that her complaint could be properly investigated. On July 22, 2000, Ms. Collier provided a detailed summary of her allegations of discrimination. SEI then appointed Edward Loughlin, an Executive Vice President at SEI, to investigate the specific allegations in Ms. Collier's summary. Mr. Loughlin interviewed Ms. Collier, Mr. Cipperman, Mr. Robins, Mr. Johnston and Ms. White. On August 18, 2000, Mr. Loughlin completed his investigation and informed Ms. Collier that he had found no evidence of race or gender discrimination.

**C.    Plaintiff's Transfer To The Position of Vendor Manager**

On July 18, 2000, SEI transferred Plaintiff to a position of Vendor Manager effective July 24, 2000. Although Plaintiff characterizes this transfer as a "demotion," it is undisputed that the Vendor Manager position involved no reduction in pay, benefits or responsibilities for Ms. Collier. In any event, the decision to transfer Ms. Collier was in no way motivated by discrimination or retaliation. Instead, it was made in direct response to Plaintiff's repeated statements to several SEI managers – both orally and in e-mails – that she was unwilling to continue to work in SEI's Legal Department.

### D.    Plaintiff's Application For The Position of Director of Workforce Development

In June 2000, Ms. Collier applied for the position of Workforce Development Director. This new position involved managing and developing SEI's existing and future leadership, recruiting and diversity initiatives.  The selection of the Director of Workforce Development was made by a committee consisting of Brian Kelly, Regional Director/Liquidity Management, Carl Guarino, Executive Vice President/Global Unit, David McLaughlin, Senior Vice President, Susan West, Vice President, Dennis McGonigle, Executive Vice President/Liquidity, and Judith Tschirgi, Senior Vice President. Ms. Collier applied and was interviewed for the Workforce Development Director position in July 2000.  After interviewing several candidates including Ms. Collier, the committee selected Alice Lindenauer for the position.

The committee chose Ms. Lindenauer for the position on the basis of Ms. Lindenauer's prior experience and qualifications.  At the time of her application, Ms. Lindenauer had worked at SEI since 1994 as the Business Manager of SEI's Liquidity Management Unit.  In addition, Ms. Lindenauer had served on SEI's Work-Life Taskforce since 1995, working on various SEI programs and services relating to improving the work life of SEI employees.  Significantly, Ms. Lindenauer had led an effort to establish SEI's on-site Child Care Center, and subsequently served as the Work-Life Taskforce Liaison to the Center.  In short, Ms. Lindenauer's experience in working cooperatively and effectively with various groups at SEI, and her proven success record in establishing SEI's Child Care Center, made her the clear choice for the Workforce Development position.

Significantly, Plaintiff has never offered any evidence suggesting that at the time that she applied for the position of Director of Workforce Development any of the relevant decisionmakers were even aware that Plaintiff had made an internal complaint of discrimination,

or that Mr. Cipperman had influenced the decision.  Nevertheless, she complains that she was denied the position for retaliatory reasons.

### E.  Plaintiff's Termination As Part of A Reduction In Force

In April 2002, SEI initiated a reduction in force to reduce costs.  Mark Nagle, Senior Vice President, Mutual Funds Sales and Services, was asked to review the departments under his supervision and identify areas that were non essential.  Mr. Nagle determined that the Vendor Management department, in which Plaintiff was employed, should be eliminated.  Mr. Nagle's decision to eliminate the Vendor Management Department (almost two years after Plaintiff's internal complaint of discrimination) was made solely on the basis of economic considerations relating to the group.  Plaintiff and the other Vendor Manager were terminated from employment as a result of this economic decision.

## III.  MONETARY DAMAGES AND OTHER RELIEF SOUGHT

Plaintiff claims an entitlement to back pay, front pay and compensatory damages. Defendants submit that there is no basis for Plaintiff's discrimination and retaliation claims and that no monetary or equitable relief should be awarded.

With respect to Plaintiff's claim for front pay damages in the amount of $65,000 per year until age 65, Plaintiff has not provided any foundation or analysis for this figure.

## IV.  WITNESSES EXPECTED TO BE CALLED BY DEFENDANTS

### A.  Liability Witnesses

1.  Todd Cipperman
    SEI Investments Company
    One Freedom Valley Road
    Oaks, Pennsylvania  19456
    Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:        Mr. Cipperman is expected to testify about Plaintiff's employment in SEI's legal department, including Plaintiff's performance during that period. Mr. Cipperman is also expected to testify about the decision to transfer Plaintiff to a Vendor Manager position. In addition, if Jean Durante and Deidre Callahan are permitted to testify on Plaintiff's behalf, Mr. Cipperman will testify as to his interactions with Ms. Durante and Ms. Callahan.

      2.     Kevin Johnston
             SEI Investments Company
             One Freedom Valley Road
             Oaks, Pennsylvania  19456
             Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:        Mr. Johnston is expected to testify about Plaintiff's employment in SEI's legal department, including Plaintiff's performance during that period. Mr. Johnston is also expected to testify about Plaintiff's internal complaint of discrimination and about the decision to transfer Plaintiff to a Vendor Manager position.

      3.     Edward Loughlin
             SEI Investments Company
             One Freedom Valley Road
             Oaks, Pennsylvania  19456
             Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:        Mr. Loughlin is expected to testify about his investigation of Plaintiff's internal complaint of discrimination.

      4.     Kevin Robins
             SEI Investments Company
             One Freedom Valley Road
             Oaks, Pennsylvania  19456
             Contact through: Michael L. Banks, Esquire  (215) 963-5387

<u>Nature of Expected Testimony</u>:     Mr. Robins is expected to testify about Plaintiff's employment in SEI's legal department, including Plaintiff's performance during that period. Mr. Johnston is also expected to testify about his involvement with Plaintiff's internal complaint of discrimination.

     5.     Mark Nagle
            SEI Investments Company
            One Freedom Valley Road
            Oaks, Pennsylvania 19456
            Contact through: Michael L. Banks, Esquire  (215) 963-5387

<u>Nature of Expected Testimony</u>:     Mr. Nagle is expected to testify about his interactions with Plaintiff during her employment with SEI. Mr. Nagle is also expected to testify about his decision to eliminate the Vendor Manager department in April 2002.

     6.     Richard Lieb
            SEI Investments Company
            One Freedom Valley Road
            Oaks, Pennsylvania 19456
            Contact through: Michael L. Banks, Esquire  (215) 963-5387

<u>Nature of Expected Testimony</u>:     Mr. Lieb is expected to testify about his involvement in the investigation of Plaintiff's internal complaint of discrimination and about his involvement in Plaintiff's transfer to the position of Vendor Manager.

     7.     Lori White
            SEI Investments Company
            One Freedom Valley Road
            Oaks, Pennsylvania 19456
            Contact through: Michael L. Banks, Esquire  (215) 963-5387

<u>Nature of Expected Testimony</u>:     Ms. White is expected to testify about Plaintiff's performance during her employment in SEI's legal department. Ms. White is also

expected to testify about her involvement in the investigation of Plaintiff's internal complaint of discrimination.

        8.    Carl Guarino
              SEI Investments Company
              One Freedom Valley Road
              Oaks, Pennsylvania 19456
              Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:      Mr. Guarino is expected to testify about the decision to select Alice Lindenauer for the position of Director of Workforce Development.  Mr. Guarino is also expected to testify as to his assessments of Plaintiff's performance during her employment in the Legal Department.

        9.    Alice Lindenauer
              SEI Investments Company
              One Freedom Valley Road
              Oaks, Pennsylvania 19456
              Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:      Ms. Lindenauer is expected to testify about her application and qualifications for the position of Director of Workforce Development.

        10.    Joseph Ujobai
              SEI Investments Company
              One Freedom Valley Road
              Oaks, Pennsylvania 19456
              Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:      Mr. Ujobai is expected to testify as to his interactions with Plaintiff concerning a potential position with SEI's operations in France.

        11.    Terry Ann Lindelow
              SEI Investments Company
              One Freedom Valley Road
              Oaks, Pennsylvania 19456
              Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:    If Plaintiff is permitted to offer evidence regarding SEI's Leadership Club, Ms. Lindelow is expected to testify as to the planning of SEI's Leadership Club events.

12.    Richard Deak
       SEI Investments Company
       One Freedom Valley Road
       Oaks, Pennsylvania 19456
       Contact through: Michael L. Banks, Esquire  (215) 963-5387

Nature of Expected Testimony:    If Deidre Callahan is allowed to testify on Plaintiff's behalf, Mr. Deak is expected to testify about his interactions with Ms. Callahan, Ms. Callahan's performance at SEI,  and the termination of Ms. Callahan's employment with SEI.

**B.    Damages Witnesses**

1.    Ernest Jones
      Philadelphia Workforce Development Corporation
      13th Floor, 1617 John F. Kennedy Blvd.
      Philadelphia, PA  19103
      (215) 963-2100

Nature of Expected Testimony:    Mr. Jones is expected to testify as to Plaintiff's performance during her employment with the Philadelphia Workforce Development Corporation and the circumstances surrounding Plaintiff's termination from PWDC in April 2003.

2.    Jacquelyn Smalley
      Philadelphia Workforce Development Corporation
      13th Floor, 1617 John F. Kennedy Blvd.
      Philadelphia, PA  19103
      (215) 963-2100

Nature of Expected Testimony:    Ms. Smalley is expected to testify as to Plaintiff's performance during her employment with the Philadelphia Workforce Development Corporation and the circumstances surrounding Plaintiff's termination from PWDC in April 2003.

3.  Jennifer Brown
    The Access Group
    1411 Foulk Road
    Box 7430
    Wilmington, DE  19803-0430
    (302) 477-4000

<u>Nature of Expected Testimony</u>:    Ms. Brown is expected to testify as to Plaintiff's

performance during her employment with Access Group Corporation and the circumstances

surrounding Plaintiff's termination from Access Group.

4.  Daniel Lau
    The Access Group
    1411 Foulk Road
    Box 7430
    Wilmington, DE  19803-0430
    (302) 477-4000

<u>Nature of Expected Testimony</u>:    Mr. Lau is expected to testify as to Plaintiff's

performance during her employment with Access Group Corporation and the circumstances

surrounding Plaintiff's termination from Access Group.

5.  Dr. Alvin Turner
    1701 Augustine Cut Off
    Wilmington, DE  19803
    (302) 656-7224

<u>Nature of Expected Testimony</u>:    Dr. Turner may be called to testify as to information

obtained during his counseling sessions with Plaintiff.

6.  Dr. Marvin Berman
    600 Germantown Avenue
    Plymouth Meeting, PA  19444
    (610) 940-0488

<u>Nature of Expected Testimony</u>:    Dr. Berman may be called to testify as to

information obtained during his counseling sessions with Plaintiff.

11

## V.    EXHIBITS EXPECTED TO BE OFFERED BY DEFENDANTS

| Exhibit No. | Description | Date | Bates Nos. |
|---|---|---|---|
| 1 | SEI Harassment Policy | | D0136 |
| 2 | Assigned Counsel Resume: C. Collier | 2/11/1998 | D0045 |
| 3 | SEI employee non-disclosure and non-complete agreement | 5/13/1998 | D0040 |
| 4 | SEI Personnel Action Notification: C. Collier | 5/29/1998 | D0034 |
| 5 | SEI Personnel Personal Action Notification: C. Collier | 7/20/1999 | D0035 |
| 6 | SEI Employment Offer: from Kevin Robins, to C. Collier | 5/13/1998 | D0051 |
| 7 | Notice of Reassignment: from Kevin Johnston to C. Collier | 7/18/2000 | D0158 |
| 8 | Description of Vendor Manager position and C. Collier's role | | D0183 |
| 9 | Notice of employment termination: from Maria Rinehart, to C. Collier; Separation of employment agreement and general release | 4/25/2002 | D0053 |
| 10 | Personnel Action Notification: K. Noyle | 4/26/2002 | D0196 |
| 11 | Notification of employment termination: from M. Rinehart to K. Noyle | 2/25/2002 | D0197 |
| 12 | Memo in regards to T. Cipperman's appointment as General Counsel: from K. Johnston | 1/21/2000 | D0135 |
| 13 | Performance appraisal for C. Collier | 6/1998 | D0081 |
| 14 | Performance appraisal for C. Collier 7/98-6/99 | 6/30/1999 | D0088 |
| 15 | Performance appraisal for C. Collier 6/98-5/99: by L. White | 6/1999 | D0095 |
| 16 | "Memorandum" and Performance Appraisal – Career Discussion | | D0100 |
| 17 | Performance Appraisal of C. Collier 6/99-6/00, by T. Cipperman with attached career discussion | 6/20/2000 | D0105 |
| 18 | Performance Appraisal of L. White 6/98-6/99 | 6/8/1999 | D0115 |
| 19 | Performance Appraisal of L White: explanations for evaluation from 6/8/99 | 6/8/1999 | D0120 |

| Exhibit No. | Description | Date | Bates Nos. |
|---|---|---|---|
| 20 | Performance Appraisal of L. White 6/98-6/99 | 2/24/1999 | D0123 |
| 21 | Performance Appraisal of L. White 7/98-6/99 | 6/30/1999 | D0130 |
| 22 | Series of emails concerning the "Waiver of Rights Under Stock Purchase Agreement and the Consulting and Client Liaison Agreement" with attached Advanced Commissions Agreement | 3/30-31/2000; 7/29/1999 | D0237 |
| 23 | Email from C. Collier to K. Robins Subject: Confidential | | P006 |
| 24 | Email correspondence between C. Collier and T. Cipperman re: "advanced level ADA course" | 3/23/2000 | P008 |
| 25 | Email correspondence between T. Cipperman and C. Collier re: Immigration outscore | 7/13/2000 | P0016 |
| 26 | Email Correspondence between C. Collier and C. McCullough re: legal team meetings | 7/7/2000 | P0011 |
| 27 | Email from L. Kondziela to T. Cipperman and C. Collier, Subject: Bi-weekly meeting | 7/19/2000 | P0024 |
| 28 | Series of emails, Subject: Personnel-related legal questions | 9/29/1999-9/30/1999 | P0001 |
| 29 | Notes from K. Johnston (6/21/00-7/11/00) | 6/20/2000 | D0139 |
| 30 | Email from C. Collier to K. Johnston re: important | 6/27/2000 | D0143 |
| 31 | Email from T. Cipperman to C. Collier re: Legal Team | 6/27/2000 | D0144 |
| 32 | Email from C. Collier to T. Cipperman re: Legal Team | 6/27/2000 | P 0010 |
| 33 | Email from C. Collier to K. Johnston re: Complaint | 7/12/2000 | D0147 |
| 34 | Transcription of voicemail from C. Collier to K. Johnston | 7/16/2000 | D0156 |
| 35 | Email from C. Collier to R. Lieb re: Confidential | 7/16/2000 | P 0017 |
| 36 | Email from R. Lieb to C. Collier re: Response | 7/17/2000 | P 0018 |
| 37 | Email from C. Collier to R. Lieb re: Response | 7/18/2000 | P 0019 |

| Exhibit No. | Description | Date | Bates Nos. |
|---|---|---|---|
| 38 | Letter from K. Johnston to C. Collier re: Reassignment | 7/18/2000 | P 0020 |
| 39 | Email from C. Collier to R. Lieb re: Demotion | 7/18/2000 | D0159 |
| 40 | Email from C. Collier to K. Johnson re: The letter of "Reassignment" | 7/18/2000 | D0160 |
| 41 | Email from R. Lieb to C. Collier re: The letter of "Reassignment" | 7/19/2000 | D0161 |
| 42 | Email from K. Johnston to C. Collier re: reply to your email of 7/18/2000 | 7/20/2000 | D0162 |
| 43 | Memo from C. Collier to R. Lieb re: Unfair/Discriminatory Treatment by Todd Cipperman | 7/22/2000 | D0163 |
| 44 | "Final" Memo from C. Collier to R. Lieb re: Unfair/Discriminatory Treatment by Todd Cipperman | 7/22/2000 | P 0032-0038 |
| 45 | Email from R. Lieb to C. Collier | 7/31/2000 | P 0039 |
| 46 | Notes of Edward Loughlin | | D0171-180 |
| 47 | Email from E. Loughlin to C. Collier re: Confidential Complaint Investigation | 8/18/2000 | D0181 |
| 48 | Letter from C. Collier to A. West, E. Loughlin, and R. Lieb | 8/31/2000 | D0182 |
| 49 | Transcription of voice mail from C. Collier re: the separate meetings set up for Courtney and Todd on 7/10/2000 with Dr. S. Shively at SEI | 7/7/2000 | D0146 |
| 50 | Email from C. Stanton to MGT-LGL Team re: Courtney's gone home… | 7/12/2000 | D0148 |
| 51 | Transcription of voice mails from Dr. S. Shively | 7/13/2000 and 7/14/2000 | D0149 |
| 52 | Email from K. Johnston to C. Collier re: Mtg. reminder | 7/13/2000 | D0150 |
| 53 | Email from E. Thomson to MGT-LGL Team re: Courtney has an appt… | 7/13/2000 | D0151 |
| 54 | Email from T. Cipperman to K. Johnston and C. Collier re: Mtg. reminder | 7/13/2000 | D0152 |
| 55 | Email from C. Collier to T. Cipperman and K. Johnston re: Mtg. reminder Fri 7/14/00 w Dr. Shively | 7/13/2000 | D0153 |

| Exhibit No. | Description | Date | Bates Nos. |
|---|---|---|---|
| 56 | Email from C. Collier to K. Johnston and T. Cipperman re: Mtg. reminder Fri 7/14/00 w Dr. Shively | 7/13/2000 | D0154 |
| 57 | Email from T. Cipperman to K. Johnston re: Accepted: continuing discussion re: resolution | 7/15/2000 | D0155 |
| 58 | Email from C. Collier to K. Johnston re: Accepted: continuing discussion re: resolution | 7/17/2000 | D0157 |
| 59 | Letter from Dr. S. Shively to K. Johnston re: mediation | 7/31/2000 | D0170 |
| 60 | Email from C. Guarino to SEI Corporate HW Offices and SEI Remote Offices re: Career Opportunity: Workforce Development Director | 6/16/2000 | D0186 |
| 61 | SEI Career Opportunity: Workforce Development Director position description | | D0187-0189 |
| 62 | Personnel Action Notification for A. Lindenauer | 8/18/2000 | D0190-0192 |
| 63 | Cover letter from A. Lindenauer to Reviewing Team of SEI Investments | 6/28/2000 | D0193 |
| 64 | A. Lindenauer resume and Internal Application Form | | D0194-0195 |
| 65 | Resume submitted by C. Collier to Spector Gadon & Rosen, P.C. | | P 0043-0046 |
| 66 | C. Collier faxed resume | | |
| 67 | C. Collier resume | | P 00727-00729 |
| 68 | Letter from C. Collier to HR Representative re: employment as an Employee Relations Consultant | 8/30/2001 | P 00757 |
| 69 | Letter from C. Collier to Mr. Hartzell re: employment as a Human Resources Consultant | 9/17/2001 | P 00758 |
| 70 | Letter from C. Collier to Ms. Harris re: employment as a Human Resources Director | 9/17/2001 | P 00759 |
| 71 | Letter from C. Collier to Ms. Wright re: employment as General Counsel | 9/27/2001 | P 00760 |
| 72 | Letter from C. Collier to Ms. Cohen re: employment as a Human Resources Director | 9/27/2001 | P 00777 |

| Exhibit No. | Description | Date | Bates Nos. |
|---|---|---|---|
| 73 | Letter from C. Collier to Ms. Hartung re: employment as a Human Resources Executive | 10/1/2001 | P 00778 |
| 74 | Letter from C. Collier to Assistant Executive Director re: employment as a staff attorney | 10/2/2001 | P 00779 |
| 75 | Letter from C. Collier to Ms. Mitchell re: employment as a Employee Relations Manager | 10/5/2001 | P 00780 |
| 76 | Letter from C. Collier to General Counsel re: employment as a General Counsel | 10/8/2001 | P 00781 |
| 77 | Letter from C. Collier to Mr./Ms. Burnett re: employment as a Staff and Labor Relations Manager | 10/10/2001 | P 00786 |
| 78 | Letter from C. Collier to Ms. Sodroski re: employment as an Assistant Disciplinary Counsel | 12/6/2001 | P 00770-00771 |
| 79 | Letter from C. Collier re: employment as a Labor and Employment Attorney | 3/4/2002 | P 00726 |
| 80 | Letter from C. Collier to Mr./Ms. McGroh re: employment as a Vice President of Human Resources | 3/18/2002 | P 00722 |
| 81 | Letter from C. Collier to Mr./Ms. McKeon re: employment as a Director of Human Resources | 3/18/2002 | P 00742 |
| 82 | Letter from C. Collier re: employment as a Human Resources Compliance Officer | 3/18/2002 | P 00743 |
| 83 | Letter from C. Collier to Ms. Dempsey re: employment as a Vice President of Human Resources | 3/18/2002 | P 00744 |
| 84 | Letter from C. Collier re: employment as a State Health Policy Manger | 4/22/2002 | P 00745 |
| 85 | Letter from C. Collier re: employment as an Assistant Vice President of Employee Relations | 4/23/2002 | P 00747 |
| 86 | Letter from C. Collier re: employment as an Assistant Director of Human Resources | 5/9/2002 | P 00748 |

| Exhibit No. | Description | Date | Bates Nos. |
|---|---|---|---|
| 87 | Letter from C. Collier re: employment as a Human Resources Business Partner | 5/14/2002 | P 00749 |
| 88 | Letter from C. Collier to Joel re: employment with Vanguard | 5/23/2002 | P 00750 |
| 89 | Letter from C. Collier to Ms. Martinez-Helfman re: employment as Vice President of Operations | 5/24/2002 | P 00751-00752 |
| 90 | Letter from C. Collier to Ms. McCabe re: employment as a Human Resources Director | 5/28/2002 | P 00753 |
| 91 | Letter from C. Collier re: employment as a Vice President of Human Resources | 5/28/2002 | P 00754 |
| 92 | Letter from C. Collier re: employment as a Directory of Human Resources | 6/6/2002 | P 00755-00756 |
| 93 | Letter from C. Collier to Ms. Harris re: employment as an in-house Workers' Compensation Attorney | 11/26/2002 | P 00767 |
| 94 | Letter from C. Collier re: employment in an in-house position | 12/3/2002 | P 00768-00769 |
| 95 | Letter from C. Collier re: employment as an in-house Employment Attorney | 12/13/2002 | P 00772 |
| 96 | M. Berman's Treatment Notes for C. Collier for appointments from 2/20/01 through 5/1/03 | | Berman 00001 |
| 97 | A. Turner's Client Record of C. Collier from 4/7/97 through 2/3/98 | | TURNER 00001-3 |
| 98 | A. Turner's Progress Notes for C. Collier from 4/7/97 through 2/3/98 | | TURNER 00004-7 |
| 99 | A. Turner's Initial Assessment of C. Collier | 4/21/97 | TURNER 00008-9 |
| 100 | Reduced copy of the first page of A. Turner's Individual Client Information Questionnaire and of DSM-IV Diagnosis | 4/7/97 4/21/97 | TURNER 00010 |
| 101 | A. Turner's Individual Client Information Questionnaire | 4/21/97 | TURNER 00011-14 |

| Exhibit No. | Description | Date | Bates Nos. |
|---|---|---|---|
| 102 | Faxed copy of Termination Agreement and General Release and letter from J. Brown for The Access Group re: Recommendation for employment | 8/12/97 | AG 0211-15 |
| 103 | Access Group Performance Evaluation for C. Collier | 2/25/97 | AG 0100-10 |
| 104 | Confidential Memorandum to C. Collier from D. Lau re: Elimination of Your Position | 4/4/97 | AG 0076-77 |
| 105 | Statement of Jennifer Brown re: C. Collier's performance | 4/7/97 | AG 0007 |
| 106 | Faxed Letter from C. Collier to Alan Epstein, Esq. re: attendance record | 1/25/01 | P 00313-14 |
| 107 | Email from C. Collier to Mark Nagle and Kathryn Stanton cc: Maria Rinehart re: Consultant? | 10/18/00 | P 0236 |

## V.    ESTIMATE OF DAYS REQUIRED FOR TRIAL

Defendants estimate that one week will be required for the trial of this case.

## VI.    SUMMARY OF ANTICIPATED IMPORTANT LEGAL ISSUES

### 1.    General Burdens of Proof Relating To Plaintiff's Claims of Discrimination And Retaliation

A plaintiff must prove that the consideration of a protected criterion (i.e., race or gender) was a *determinative* factor in the adverse employment action about which she complains. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). A Plaintiff can meet this *prima facie* burden by presenting direct evidence of discrimination, or by presenting indirect or circumstantial evidence of discrimination. Billet v. CIGNA Corp., 940 F.2d 812, 828 (3d Cir. 1991). Where there is no direct evidence of discrimination, the burden of proof is governed by the framework erected by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and clarified in St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

If the plaintiff succeeds in establishing a *prima facie* case, the burden then shifts to the

employer, which must merely articulate a legitimate, non-discriminatory reason for the

employment decision. Once the employer has articulated a legitimate business reason for the

decision, any presumption of discrimination drops from the case, and the plaintiff then must

satisfy the ultimate burden of proving discrimination.  See Texas Dep't. of Community Affairs v.

Burdine, 450 U.S. 248, 254 256 (1981).  The ultimate burden of persuasion remains at all times

with the plaintiff, who must prove by a preponderance of the evidence that the business reason

proffered by the defendant is pretextual and that the defendant intentionally discriminated against

the plaintiff.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993).

To establish pretext, a plaintiff must do more than simply argue that the fact-finder

should not believe the defendant's explanations. Fuentes v. Perskie, 32 F.3d 759, 763, 765 (3d

Cir. 1994).  A plaintiff must demonstrate that the employer's proffered reason is either a "post

hoc fabrication or otherwise did not actually motivate the employment action."  Id.

### 2.    Plaintiff's *Prima Facie* Failure to Promote Burden

To state a *prima facie* case of failure to promote, Plaintiff must demonstrate that  (1) she

is a member of a protected class; (2) that she applied and was qualified for a job which was

available; (3) that she was rejected; and (4) that non members of the class were treated more

favorably. Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992),

cert. denied, 510 U.S. 826 (1993).

### 3.    Plaintiff's Prima Facie Retaliation Burden

To state a *prima facie* case of retaliation, Plaintiff must demonstrate that:  (1) she

engaged in a protected activity; (2) SEI took an adverse employment action after or

contemporaneous with her protected activity; and (3) there was a causal link exists between her

protected activity and SEI's adverse action. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 278

(3d Cir. 2000). The <u>McDonnell Douglas</u> burden-shifting analysis described above applies

equally to retaliation claims under the Title VII. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271,

278 (3d Cir. 2000).

### 4. Plaintiff's Burden To Establish An Adverse Employment Action In Connection With Her "Demotion" Claim.

Where there is no reduction in pay or benefits made in conjunction with the transfer at

issue, courts have consistently held that no adverse employment action has occurred. <u>See</u>

<u>Kantner v. U.S. Postal Service</u>, No. 88-2526, 1988 WL 100804, at *3-5 (E.D.Pa. Sept. 26, 1988).

### 5. Plaintiff's Burdens In Maintaining An Unequal Pay Claim

To establish a *prima facie* case of wage discrimination under Title VII, a Plaintiff must

demonstrate that male and/or white employees were compensated at a higher rate than she was

paid for "substantially equal" work, and that differences in pay resulted from intentional

discrimination. <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1087 (3d Cir. 1996). To

create an inference of discriminatory treatment, Plaintiff must provide at least some evidence

which would enable a court to compare her with others in the legal department at SEI. <u>See</u>

<u>Ogden v. Keystone Residence</u>, 226 F.Supp. 2d 588, 603 (M.D. Pa. 2002). Differences in

compensation are not discriminatory if they result from any one or more of the following: a

seniority system, a merit system, a system which measures earnings quantity or quality of

production, or any factor other than sex. <u>See</u> <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188

(1974).

6.    **Plaintiff's Burden to Mitigate Her Damages**

Plaintiff had a duty to use reasonable diligence to mitigate her damages and any damages

awarded should be reduced by any amount lost by Plaintiff as a result of her own failure to

mitigate damages.  See Tai Van Le v. Univ. of Pa., 321 F.3d 403, 407 n.2 (2003) ("[I]nterim

earnings or amounts earnable with reasonable diligence by the person or persons discriminated

against shall operate to reduce the back pay otherwise allowable.").  A Plaintiff who is

terminated from a subsequent position for substandard performance has not exercised

"reasonable diligence" to mitigate her damages and therefore is not entitled to front pay.  Reiner

v. Family Ford, 146 F. Supp. 2d 1279, 1287-88 (M.D. Fla. 2001) (finding that plaintiff in gender

discrimination/harassment suit not entitled to front pay).

VII.    **SPECIAL ISSUES**

A.    **Defendants' Objections To Plaintiff's Exhibits**

1.    **P-70 - Affirmative phases**

**P-71 - SEI Investments Company Executive Order 11246 Affirmative
Action Program for Minorities and Women, dated August 1, 1998
through July 1, 1999.**

In their Motion in Limine, Defendants noted that Plaintiff had produced documents

relating to SEI's Affirmative Action plans. As of the filing of that Motion, it was unknown

whether Plaintiff would seek to introduce the Affirmative Action Plans as an exhibit, since they

were not used in depositions.  Now that Plaintiff has identified these documents as trial exhibits,

Defendants object to these exhibits.  The Affirmative Action Plans do not contain information

relevant to any of Plaintiff's claims.  Further, the information contained in these exhibits relates

to a period of time from August 1, 1998 through July 31, 1999, during which Plaintiff admits that

she was treated fairly.  The data included in these exhibits is not probative of the issues

underlying Plaintiff's individual discrimination and retaliation claims.  Indeed, those claims

involve very specific events and allegations, rather than suggestions of any company-wide

discrimination against minorities or women.  Even if such information did have some probative

value, it would be far outweighed to the potential prejudice to Defendants in this matter if

Plaintiff is allowed to introduce these documents.  If the Court desires additional briefing

regarding Defendants' objections to these exhibits, as noted in Defendants' Motion in Limine,

Defendants will (with the Court's permission) file a supplemental Motion in Limine.

2.    **P-53 - Email correspondence to SEI Corporate HQ Offices and SEI Remote Offices from Alfred West regarding 2000 Leadership Club Invitees, dated February 9, 2001.**

**P-54    Email correspondence to SEI Corporate HQ Offices and SEI Remote Offices from Alfred West regarding 2002 Leadership Club, dated October 18, 2000.**

**P-55 - Vision Team Meeting and SEI change process, dated October 11, 2000.**

**P-56 - Email correspondence to SEI Corporate HQ Office and SEI Remote Offices from Alfred West regarding corporate vision and organizational changes, dated November 9, 2000.**

**P-57 - Letter regarding Vision Team and EPS Committee Developments, dated November 21, 2000.**

**P-58 - SEI Vision, dated November 21, 2000.**

**P-59 - SEI Vision Task Force Objectives, dated November 21, 2000.**

**P-60 - SEI Leadership Introduction, dated November 21, 2000.**

**P-61 - SEI Unit/position description, dated November 21, 2000.**

**P-62 - SEI Vision Task Force Participants, dated November 21, 2000.**

**P-63 - Questions and answers regarding SEI Vision, dated November 21, 2000.**

**P-64 - Vision Team Meeting (moving to the new organization), dated January 5, 2000.**

**P-65 - Letter from Al regarding business leadership roles and attachment of positions.**

Defendants object to these exhibits, which relate to the composition of SEI's Vision Task Force and SEI's 2001 Leadership Club.  See Section II.D. of Defendants' Motion in Limine. Defendants expect that Plaintiff will attempt to show that women and/or minorities were underrepresented in SEI's Vision Task Force and SEI's 2001 Leadership Club.  However, the composition of SEI's Vision Task Force and SEI's 2001 Leadership Club is not probative of the issues of Plaintiff's individual discrimination and retaliation case.  Even if such information did have some probative value, it would be far outweighed by the potential prejudice to Defendants in this matter if Plaintiff is allowed to introduce this information.  Moreover, the lists of individuals only include raw data, without any information regarding the general decisionmaking process for these two groups, the statistical significance of the data, or the pools of individuals who were considered for membership in these two groups.

If the Court finds that Plaintiffs should not be allowed to introduce the lists, the remaining documents noted above merely discuss the goals, strategies and outcomes of the processes.  Such other documents are not relevant, and would only confuse a jury.  See F.R.E. 402 and 403.

    3.    **P-68   SEI Compensation Analysis**
               **P-69   SEI Compensation Analysis Summary**

Defendants object to these exhibits on the grounds more fully set forth in Section II.C. of their Motion in Limine.  In particular, these exhibits do not contain information relevant to any

of Plaintiff's claims. Further, the information contained in these exhibits is not related to any time period in this litigation and includes information regarding departments in which Plaintiff did not work at the time. Moreover, the exhibits should not be admitted because the raw data that Plaintiff proposes to use as statistical data has no probative value.

4.    **P-85    Photograph of 2001 Leadership Club party.**

Defendant objects to this exhibit, as more fully set forth in Section II.E. of their Motion in Limine, which is a photograph of an event held during SEI Investments' 2001 Leadership Club trip. Defendants anticipate that Plaintiff will use the photograph to suggest that the theme of the event depicted in the photograph was insensitive to minorities because some of the attendees wore antebellum clothing, or because members of the church choir on the balcony were African-American. This photograph has no relevance to Plaintiff's claims because there is no allegation in this matter that any of the individuals whom Plaintiff claims discriminated against her were responsible for planning the event, and in fact, each participant at the event chose his/her own costume. Moreover, this photograph was taken almost nine months after Plaintiff was transferred out of the Legal Department and has no bearing on her claims. Even if this photograph is determined to have some probative value, the relevance would be far outweighed by the potential prejudice to Defendants.

B.    **Defendants' Objections to Plaintiff's Witnesses**

1.    **Annie Collier and Dr. Bradley Beyer**

In her Pre-Trial memorandum, for the first time, Plaintiff identified Annie Collier and Bradley Beyer as witnesses, stating that both individuals have "knowledge and can testify to the emotional damages sustained by Plaintiff as a result of the defendants' conduct."

Defendants object to calling at trial Annie Collier and Bradley Beyer, both of whom were never previously identified by Plaintiff.[2/]  This Court should preclude Plaintiff from calling any witness who was not disclosed in a timely fashion.  Allowing their testimony, without notice having been given before the close of discovery, would result in serious prejudice to the Defendants.  Under Federal Rule of Civil Procedure 26, Plaintiff had a duty to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information."  Fed. R. Civ. P. 26(a)(1)(A).  Moreover, Plaintiff's disclosure obligation did not evaporate upon initial identification of persons with pertinent information.  Rule 26 goes on to provide that a "party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired."  Fed. R. Civ. P. 26(e); *see also* <u>Havenfield v. H&R Block, Inc.</u>, 509 F.2d 1263, 1272 (8th Cir.), *cert. denied*, 421 U.S. 999 (1975) (amendments to interrogatory answers are mandated by the Federal Rules, are to be made seasonably, and any information withheld which prejudices the opposing party can properly be denied admission into evidence at trial); 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice and Procedure</u>: Civil 2d § 2013 (1994).  Under Federal Rule of Civil Procedure 37, these witnesses should not be permitted to testify at trial.  "A party that without substantial justification fails to . . . amend a prior response to

---

2/    Defendants also object to Dr. Beyer's testimony to the extent that Plaintiff is calling Dr. Beyer as an expert witness.  Under the Court's November 20, 2002 Scheduling Order, the time for identification of expert witnesses has long passed.  Plaintiff did not identify any expert witnesses at that time and Plaintiff should not be allowed to identify an expert witness at this late date.  Allowing Plaintiff to do so with greatly prejudice Defendants, who have not had no notice that Plaintiff intended to use an expert witness.

25

discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed. . . . " Fed. R. Civ. P. 37(c)(1).

Plaintiff ignored her duty to provide this critical information to Defendants. Her belated attempt to introduce new witnesses is prejudicial to Defendants because it had no opportunity to take discovery as to these witnesses. Defendants cannot prepare for this additional testimony (whatever that may be) since these witnesses were named for the first time after the close of discovery. As a result, defense counsel has little or no idea what they would say if called at trial, no ability to test the credibility of their trial testimony against earlier deposition testimony; and, at best, limited ability to investigate the validity of what they may seek to testify to or to locate and have available rebuttal witnesses and documents. Should the Court allow Ms. Annie Collier and/or Dr. Beyer to testify at trial, Defendants respectfully request that they be allowed to depose these witnesses and to obtain any relevant documents from them before trial.

### 2.    Alfred West

Plaintiff's Pre-trial Memorandum indicates that Plaintiff intends to call SEI Investments Company President and Chief Executive Officer Alfred West. Plaintiff's Pre-trial Memorandum states that she intends to call Mr. West to testify as to "the discriminatory practice and animus of Defendants, including the discriminatory treatment of African Americans in connection with the President's Leadership Club." As set forth in more detail in Defendants' Motion in Limine, Sections II.D and II.E, and above as to Plaintiff's proposed Exhibits P-53, P-54, and P-85, evidence regarding SEI's Leadership Club has little or no probative value to Plaintiff's claims and would be highly prejudicial to Defendants. Moreover, Plaintiff's identification of Mr. West, SEI's highest ranking officer, is little more than an attempt to harass Defendants. Plaintiff has

never indicated that she ever met Mr. West, much less that he directly made any decisions regarding her employment at SEI.

### 3.    Deidre Callahan and Jean Durante

Plaintiff's Pre-trial memorandum indicates that Ms. Callahan and Ms. Durante will testify at trial regarding "SEI and its discriminatory practices relating to Plaintiff specifically, and women and minorities generally." To the extent that Ms. Callahan and Ms. Durante will testify about alleged discrimination against SEI employees other than Ms. Collier, their testimony should be excluded. As set forth in detail in Defendants' Motion in Limine, such evidence is entirely irrelevent to Plaintiff's individual disparate treatment claim and will lead to the confusion of issue before the jury. Moreover, its probative value is far outweighed by the prejudicial effect upon Defendants and the additional trial time that would result from the admission of such evidence.

### C.    **Pending Motions**

#### 1.    **Defendants' Motion for Summary Judgment**

On May 19, 2003, Defendants filed a Motion for Summary Judgment, seeking the dismissal of Plaintiff's complaint with prejudice. Plaintiff filed an opposition to Defendants' Motion on June 5, 2003 and Defendants filed Motion for Leave to File Reply Brief In Further Support of Their Motion for Summary Judgment on June 18, 2003. Defendants' Motion for Summary Judgment is currently pending before the Court.

#### 2.    **Plaintiff's Motion for Withdrawal or Amendment of Admissions**

On June 5, 2003, Plaintiff submitted a Memorandum of Law in opposition to Defendants' Motion for Summary Judgment. In addressing Defendants' position that the facts set forth in Defendants' Requests for Admissions should be deemed admitted because of Plaintiff's failure to

serve timely answers, Plaintiff requested that the Court consider the memorandum as a Motion for the Withdrawal or Amendment of the Admissions.  See Plaintiff's Opposition to Defendants' Motion for Summary Judgment, at p. 2, n. 1.  Defendants filed an Opposition to Plaintiff's Motion for Withdrawal or Amendment of Admissions on June 16, 2003, in which Defendants contended that the matters in Defendants' Requests should be deemed admitted because of Plaintiff's untimely and insufficient responses to Defendants' First Request for Admissions.  The motions relating to the Responses to Defendants' Request for Admissions are currently pending before the Court.

### 3.    Defendants' Motion in Limine

Defendants filed a Motion in Limine on June 16, 2003, seeking to preclude Plaintiff from offering certain testimony or evidence.  Defendants' Motion in Limine is currently pending before the Court.

Respectfully submitted,

MICHAEL L. BANKS
JENNIFER CALABRESE BELL
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA   19103-2921
215.963.5387/5186

Dated:  June 23, 2003

## CERTIFICATE OF SERVICE

I, Jennifer Calabrese Bell, hereby certify that a true and correct copy of Defendants' Pre-

Trial Memorandum has been served via hand delivery, this 23rd day of June, 2003, upon

the following:

> Alan B. Epstein, Esquire
> Seven Penn Center
> 1635 Market Street, 7th Floor
> Philadelphia, PA  19103


_____
Jennifer Calabrese Bell

Date:  June 23, 2003